No. 26-4150

# In the United States Court of Appeals for the Fourth Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

MICHAEL INOFUENTES,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Eastern District of Virginia

### JOINT APPENDIX

### VOLUME ONE (PAGES 1-40)

| Jacqueline R. Bechara, Lauren P. Halper, & Laura D. Withers OFFICE OF THE U.S. ATTORNEY (EDVA) 2100 Jamieson Avenue Alexandria, VA 22314 (703) 299-3759 | Brent E. Newton 19 Treworthy Road, Gaithersburg, MD 20878 (202) 975-9105 |
|---|---|
| *Counsel for Plaintiff-Appellee* | *Counsel for Defendant-Appellant* |

# TABLE OF CONTENTS

**VOLUME ONE**

Transcript Excerpts of Motions Hearing Before the Honorable Patricia Tolliver Giles on August 19, 2025 (Including Detailed Oral Rulings Denying (1) Motion to Suppress Cell Phone Evidence, and (2) Motion to Suppress Defendant's Custodial Statements) ...................................................................................JA0001

District Court's Written Order Denying Defendant's (1) Motion to Suppress Cell Phone Evidence, and (2) Motion to Suppress Defendant's Custodial Statements (filed August 21, 2025)...................................................................JA0017

Excerpt of September 10, 2025 Trial Proceedings (District Court's Denial of Appellant's Hearsay Objection) ...................................................................JA0018

Excerpt of District Court's Ruling at Jury Charge Conference (September 10, 2025) ...............................................................................................................JA0021

Judgment in a Criminal Case (filed February 26, 2026) ...........................JA0034

**VOLUME TWO**

District Court's Docket Sheet...................................................................JA0041

Defendant's Opposed Motion to Suppress Cell Phone Evidence (filed April 17, 2025)...............................................................................JA0084

Defendant's Memorandum of Law in Support of Defendant's Opposed Motion to Suppress Cell Phone Evidence (filed April 17, 2025)................................JA0086

  Exhibit 1: DHS Secondary Inspection Reports .......................................JA0110

  Exhibit 2: Report of Investigation ...........................................................JA0136

  Exhibit 3: Transcript Excerpt .................................................................JA0139

  Exhibit 4: Text Messages........................................................................JA0142

  Exhibit 5: Detention Notice.....................................................................JA0145

i

Exhibit 6: DHS iPhone report......................................................................JA0148

Superseding Indictment (filed on April 24, 2025)......................................JA0154

Government's Response in Opposition to Defendant's Motion to Suppress Cell Phone Evidence (filed on May 1, 2025) ......................................JA0158

    Exhibit 1: Wall Street Journal Article ......................................JA0196

    Exhibit 2: Financial Records ......................................JA0206

    Exhibit 3: DHS COB Person Encounter List ......................................JA0207

    Exhibit 4: Text Messages......................................JA0221

    Exhibit 5: DHS Report of Investigations......................................JA0229

Defendant's Reply in Support of His Opposed Motion to Suppress Cell Phone Evidence (filed on May 9, 2025) ......................................JA0232

Defendant's Opposed Motion to Suppress His Custodial Statements (filed on June 20, 2025) ......................................JA0253

Defendant's Memorandum of Law in Support of His Opposed Motion to Suppress His Custodial Statements (filed on June 20, 2025)......................................JA0255

    Exhibit 1: November 1, 2025 Transcript......................................JA0273

    Exhibit 2: Ballard Email Correspondence......................................JA0301

    Exhibit 3: Barone Email Correspondence ......................................JA0304

Government's Response in Opposition to Defendant's Motion to Suppress Custodial Statements (filed on July 7, 2025)......................................JA0307

    Exhibit 2: DHS Statement of Rights......................................JA0338

Defendant's Reply in Support of His Opposed Motion To Suppress     (filed July 14, 2025)......................................JA0340

    Exhibit 1: Michael Inofuentes' Interview Audio Transcription......................................JA0350

Defendant's Notice of Supplemental Authority in Support of His Motion to Suppress (filed August 6, 2025) ......................................JA0353

ii

Exhibit A: *Gilmore v. Georgia Dep't of Corrections* ..............................JA0356

Government's Response to Defendant's Notice of Supplemental Authority in Support of his Motion to Suppress Cell Phone Evidence (filed August 6, 2025)...............................................................................JA0395

Full Transcript of Motions Hearing Before the Honorable Patricia Tolliver Giles on August 19, 2025 (Including Detailed Oral Rulings Denying (1) Motion to Suppress Cell Phone Evidence, and (2) Motion to Suppress Defendant's Custodial Statements) ................................................................................JA0399

**VOLUME THREE**

Full Transcript (Continued) of Motions Hearing Before the Honorable Patricia Tolliver Giles on August 19, 2025 (Including Detailed Oral Rulings Denying (1) Motion to Suppress Cell Phone Evidence, and (2) Motion to Suppress Defendant's Custodial Statements)..............................................................JA0541

Defendant's Exhibits at Motions Hearing Before the Honorable Patricia Tolliver Giles on August 19, 2025

    Exhibit 4: Email Chain .........................................................................JA0645

    Exhibit 8: Text Messages.....................................................................JA0648

Government's Proposed Jury Instructions (filed September 2, 2025)……………………………………………….....  JA0649

Defendant's Memorandum on Jury Instructions (filed September 4, 2025) ......................................................................... JA0657

Excerpt of Transcript of Pretrial Hearing Before the Honorable Patricia Tolliver Giles on September 8, 2025....................................................................JA0666

Transcript of Trial Day 1 Before the Honorable Patricia Tolliver Giles on September 9, 2025 ...............................................................................JA0675

Testimony of Angie Del Cuadro

Direct Examination by Ms. Halper ........................................................JA0696

Cross Examination by Mr. Armstrong ....................................................JA0707

Testimony of Miranda Ballard

Direct Examination by Ms. Halper ........................................................JA0730

Cross Examination by Mr. Armstrong ....................................................JA0771

Admitted Government Exhibits from Trial Day 1 before the Honorable Patricia Tolliver Giles on September 9, 2025

Exhibits 101-103: Photos of WhatsApp chat – "menor" .........................JA0796

Exhibits 104-108: Photos of WhatsApp chat – "March 27, 2024" ..........JA0799

Exhibit 111: Photo of WhatsApp Contact Entry ....................................JA0804

Exhibit 200: Stipulation No. 2 .............................................................JA0805

Exhibit 501: CBP Travel Records .........................................................JA0807

Exhibit 603: Stipulation No. 1 .............................................................JA0811

Transcript of Trial Day 2 Before the Honorable Patricia Tolliver Giles on September 10, 2025 ...............................................................................JA0812

Testimony of Miranda Ballard

Cross Examination by Mr. Armstrong ....................................................JA0831

Redirect Examination by Ms. Halper .....................................................JA0856

Recross Examination by Mr. Armstrong..................................................JA0870

Testimony of Samantha Fisher

Direct Examination by Ms. Withers .......................................................JA0871

Cross Examination by Mr. Armstrong ....................................................JA0928

Redirect Examination by Ms. Halper .....................................................JA0977

Testimony of Horacio Javier Albornoz Mendoza

Direct Examination by Mr. Burne ..........................................................JA0991

Testimony of Angie Del Cuadro

Direct Examination by Mr. Armstrong....................................................JA0998

Cross Examination by Ms. Halper..............................................JA1028

Admitted Government Exhibits from Trial Day 2 Before the Honorable Patricia Tolliver Giles on September 10, 2025

Exhibit 201A: WhatsApp Messages (English Translation) .....................JA1035

**VOLUME FOUR**

Admitted Government Exhibits (Continued) from Trial Day 2 Before the Honorable Patricia Tolliver Giles on September 10, 2025

Exhibit 201A (Cont.): WhatsApp Messages (English Translation).........JA1041

**VOLUME FIVE**

Admitted Government Exhibits (Continued) from Trial Day 2 Before the Honorable Patricia Tolliver Giles on September 10, 2025

Exhibit 201A (Cont.): WhatsApp Messages (English Translation).........JA1541

Exhibit 204A: WhatsApp Messages (English Translation) .....................JA1796

Exhibit 205A: MV1 WhatsApp Voice Note ..........................................JA1850

Exhibit 206A: MVl Voice Note (English translation)............................JA1852

Exhibit 208A: Money Transaction and WhatsApp Messages..................JA1854

Exhibit 209: Excerpt WhatsApp Messages ...........................................JA1878

Exhibit 213: Excerpt WhatsApp Messages (3/13/24) ............................JA1906

Exhibit 215: Excerpt WhatsApp Messages (3/16/24) ............................JA1907

Exhibit 216: Excerpt WhatsApp Messages (3/7/24) ..............................JA1909

Exhibit 217: Excerpt WhatsApp Messages (3/8/24) ..............................JA1918

Exhibits 218-21: Excerpt WhatsApp Messages (3/9/24) .......................JA1919

Exhibit 225: Excerpt WhatsApp Messages (3/10/24) ............................JA1928

Exhibit 226: Excerpt WhatsApp Messages (3/24/24) ............................JA1931

Exhibit 227: Excerpt WhatsApp Messages (4/1/24) ..............................JA1932

Exhibit 228: Excerpt WhatsApp Messages (4/1/24) ..............................JA1934

Exhibit 229: Excerpt WhatsApp Messages (9/22/24) ............................JA1939

Exhibit 230: Excerpt WhatsApp Messages (10/3/24) ..............................JA1948

Exhibit 231: Excerpt WhatsApp Messages (3/26/2024-3/27/24).............JA1949

Exhibit 232: Disappearing messages -- WhatsApp .................................JA1965

Exhibit 233: Excerpt - WhatsApp messages (4/19/2024 - 4/28/2024).....JA1966

Exhibit 237: Excerpt - WhatsApp messages (3/4/2024) .........................JA1968

Exhibit 239: Metadata - Photo of MVl topless.......................................JA1972

Exhibit 241: Metadata of Photo of MV1 ................................................JA1973

Exhibit 243: Metadata of Photo of MV1 ................................................JA1974

Exhibit 245: Metadata of Photo of MVl..................................................JA1975

Admitted Defense Exhibits from Trial Day 2 Before the Honorable Patricia Tolliver Giles on September 10, 2025

Exhibits 1-47: WhatsApp Messages ......................................................JA1976

## VOLUME SIX

Admitted Defense Exhibits from Trial Day 2 Before the Honorable Patricia Tolliver Giles on September 10, 2025

Exhibits 47 (Cont.): WhatsApp Messages...............................................JA2041

Exhibits 48-62: WhatsApp Messages.....................................................JA2042

Exhibit 100: Picture of Interview Room - Miami Int. Airport .................JA2066

Exhibit 101: Picture of Hallway to
Interview Room – Miami Int. Airport .....................................................JA2067

Transcript of Trial Day 3 Before the Honorable Patricia Tolliver Giles on September 11, 2025 .......................................................................JA2068

Testimony of Michael Inofuentes
Direct examination by Mr. Armstrong ....................................................JA2081

Cross-examination by Ms. Halper...........................................................JA2144

Redirect examination by Mr. Armstrong.................................................JA2212

vi

Admitted Defense Exhibits from Trial Day 3 Before the Honorable Patricia Tolliver Giles on September 11, 2025

   Exhibits 69-72: Map Images.................................................................JA2280

Transcript of Trial Day 4 before the Honorable Patricia Tolliver Giles on September 12, 2025 ..................................................................JA2284

Government's Trial Exhibit List (filed September 12, 2025) .....................JA2294

Defense Trial Exhibit List filed (September 12, 2025) ..............................JA2302

Jury Note (filed September 12, 2025).......................................................JA2309

Jury Verdict in a Criminal Case (filed September 12, 2025) ......................JA2311

Defendant's Notice of Appeal (filed March 10, 2025)...............................JA2313

## VOLUME SEVEN (SEALED)

Exhibit 3 (Incident/Investigation Report) to Government's Response in Opposition to  Defendant's Motion to Suppress Custodial Statements filed on July 7, 2025................................................................................JA2315

Sealed Admitted Government Exhibits from Trial Day 1 before the Honorable Patricia Tolliver Giles on September 9, 2025

   Exhibit 109: MV1 Photo of picture in WhatsApp
   (MV1 and defendant)...............................................................JA2320

   Exhibit 110: Photo of picture in WhatsApp
   (MV1 in defendant's bed)...........................................................JA2321

   Exhibit 112: Photo of Contact Entry .......................................JA2322

   Exhibit 113: Photo of MV1 Cedula Number.............................JA2323

   Exhibit 202A: WhatsApp Messages
   (with English Translation) .........................................................JA2324

   Exhibit 203A: WhatsApp Messages
   (with English Translation) .........................................................JA2339

Exhibits 210-212: Photos of MV1...............................................JA2359

Exhibits 222-224: Photos of MV1...............................................JA2362

Exhibits 235-236: Photos of MV1...............................................JA2365

Exhibit 240: Photo of MV1 ........................................................JA2367

Exhibit 242: Photo of MV1 ........................................................JA2368

Exhibit 601: MV1's Birth Certificate (English Translation)....................JA2369

Sealed Admitted Defense Exhibits from Trial Day 3 Before the Honorable Patricia Tolliver Giles on September 11, 2025

Exhibit 64: Photograph .............................................................JA2371

## VOLUME EIGHT (DIGITAL MEDIA)[1]

Admitted Government Digital Media Exhibits from Trial Day 1 before the Honorable Patricia Tolliver Giles on September 9, 2025

Exhibit 302: Audio Clip M-003 of MIA Interview................................JA2372

Exhibit 304: Audio Clip M-004 of MIA Interview................................JA2373

Exhibit 305: Audio Clip M-006 of MIA Interview................................JA2374

Exhibit 307: Audio Clip M-008 of MIA Interview................................JA2375

Exhibit 308: Audio Clip M-009 of MIA Interview................................JA2376

Exhibit 309: Audio Clip M-010 of MIA Interview................................JA2377

Exhibit 311: Audio Clip M-012 of MIA Interview................................JA2378

Exhibit 312: Audio Clip M-013 of MIA Interview................................JA2379

Exhibit 313: Audio Clip M-014 of MIA Interview................................JA2380

Exhibit 316: Audio Clip M-017 of MIA Interview................................JA2381

Exhibit 317: Audio Clip M-018 of MIA Interview................................JA2382

---

[1] Exhibits are in MP3 and WMA file format. A virus detection program, Webroot Secure Anywhere CE 26.2, has been run on the electronic files and no virus was detected.

Admitted Government Digital Media Exhibits from Trial Day 2 Before the
Honorable Patricia Tolliver Giles on September 10, 2025

Exhibit 403: Audio Clips of Dulles Interview..........................................JA2383

Exhibit 404: Audio Clips of Dulles Interview..........................................JA2384

Exhibit 405: Audio Clips of Dulles Interview..........................................JA2385

Exhibit 406: Audio Clips of Dulles Interview..........................................JA2386

Exhibit 407: Audio Clips of Dulles Interview..........................................JA2387

Exhibit 409: Audio Clips of Dulles Interview..........................................JA2388

Exhibit 410: Audio Clips of Dulles Interview..........................................JA2389

Exhibit 411: Audio Clips of Dulles Interview..........................................JA2390

Exhibit 412: Audio Clips of Dulles Interview..........................................JA2391

Exhibit 413: Audio Clips of Dulles Interview..........................................JA2392

**VOLUME NINE (SEALED DIGITAL MEDIA)**

Exhibit 1 (CD/DVD) to Government's Response in Opposition to
Defendant's Motion to Suppress
Custodial Statements filed on July 7, 2025 ...............................................JA2393

Sealed Digital Media Admitted Government Exhibits from Trial Day 2 Before
the Honorable Patricia Tolliver Giles on September 10, 2025

Exhibit 214: Video – MV1 and defendant ...............................................JA2394

ix

*1*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **Plaintiff,** | : | Criminal Action |
| | : | No.  1:25-cr-00005-PTG-1 |
| **v.** | : | |
| | : | |
| **MICHAEL JAIME INOFUENTES,** | : | August 19, 2025 |
| | : | 10:00 a.m. |
| | : | |
| | : | |
| **Defendant.** | : | |
| | : | |
| ............................. | : | |

**TRANSCRIPT OF SENTENCING PROCEEDINGS
BEFORE THE HONORABLE PATRICIA TOLLIVER GILES,
UNITED STATES DISTRICT COURT JUDGE**

APPEARANCES:

For the United States:   **Lauren Pomerantz Halper, Assistant
U.S. Attorney**
UNITED STATES ATTORNEY'S OFFICE
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314
703-299-3700
Email: Lauren.halper@usdoj.gov

**Laura D. Withers, Assistant U.S.
Attorney**
UNITED STATES ATTORNEY'S OFFICE
Eastern District of Virginia 2100
Jamieson Avenue
Alexandria, VA 22314
703-838-2623
Email: Laura.withers@usdoj.gov

*214*

should be I think basic to anyone who goes to law school.  And so the only reference to the Eleventh Circuit Law, the only relevance at all, is:  Did she think she was acting in compliance of the Eleventh Circuit law?  And I think that on that point, the training material goes a long way in absolutely rebutting that argument.  She was told time and time again all throughout the training that there are real problems with border searches, and it has to be for one specific or two specific or three specific purposes, border guns.  And the case law from around the country is pushing back on this idea that if the Eleventh Circuit has it, anything goes.  And it's even being pushed back by the AUSAs in her own district.  If the law was so settled, there wouldn't be AUSAs asking for warrants and testifying and not having evidence on that point, I think is improper.  Thank you.

THE COURT:  All right.  First, I'm going to start off by making certain findings based on the evidence that was received today.

First, in reference to how this investigation began, and that is it started in April of 2024 with HSI Special Agent Ballard investigating an individual by the name of Stefan Correa.  And the investigation was related to -- it began by receiving information that someone was traveling from Colombia for the purposes or traveling to Colombia for the purposes of having sex with children.  And since that time the investigation expanded to include others.

*215*

But during her investigation of Mr. Correa, Special Agent Ballard received or issued -- or caused to be issued, rather, an administrative subpoena for the transaction history of individuals to whom Mr. Correa sent money. And one of those individuals was Subject Number 1.

Now, they also obtained, I believe -- their investigation in relation to Subject 1 and Mr. Correa reflected messages that were -- revealed a sexual relationship, that there were sexual messages between the two that were also commercial in nature. This is between Mr. Correa and Subject Number 1. They also had information that the relationship between the two had begun when Subject Number 1 was a minor.

From there, they looked for other individuals who had sent money to Subject Number 1, and that is when they received information via an administrative subpoena from -- issued to Western Union that reflected payments, and those payments were between Mr. Inofuentes, and they were payments made to Subject Number 1 occurring in October of 2023. I believe there were five payments that began around October 17th and continued through October 25th, all in 2023.

From there, Special Agent Ballard, based on her training and experience and being familiar with these types of investigations involving minors in -- being used for commercial sex acts, believed that or knew that at times individuals who are aging out of being minors and involved in these types of

*216*

arrangements, sometimes that they received finder's fees.  And based on the messages between Subject Number 1 and Correa, she believed that Subject Number 1 was someone who aged out, and based on the payments, suspected that these could potentially be finder's fees paid between Mr. Inofuentes and Subject Number 1.  She had no direct evidence of that.  That was basically a suspicion, but based on that she obtained the defendant's travel history and criminal history.  And that travel history reflected extensive travel between -- for Mr. Inofuentes to Medellín, Colombia.  The trips were of varying durations, but they were frequent, and there were 14 in the year of 2024.

She also obtained information that Mr. Inofuentes, who is affiliated with a toy company for children in El Salvador, and so she saw that as showing some access to -- further access to children.

So, based on the payments to Subject Number 1, who was someone who had been identified as being involved in sex trafficking and related in a investigation involving the commercial sex acts with children, based on those payments, based on frequent travel history, including the frequent and the recent travel history, including two in the month of November, also the affiliation with the toy company, also with the criminal history that reflected a domestic violent charge -- which is slim here, it was a dismissed charge -- but based on the totality of all of that, she notified CBP that he would be traveling.  And she

*217*

specifically contacted the human trafficking group and asked them to assist with doing a -- or facilitating a border search.

Now, once he arrived at Miami Airport, he was taken from the primary area to a secondary area. Once there, he was first questioned briefly by Customs and Border Patrol Agent de Oliviera. I'm so sorry if I'm mispronouncing your name. There were questions about the purpose of his trip, and also questions to -- that would go to admissibility and as to what he was bringing into the country.

She also took custody of his phones at that time. She provided the phone to HSI Agent Ballard, at which time Agent Ballard conducted an inspection of the phone. Mr. Inofuentes had been in the lobby area, but when he was -- the questioning with Agent Oliviera started, I believe that's when he was moved to the interview room.

Then Agent Ballard -- at that point Agent Ballard and Task Officer Vargas entered the room.

Now, in terms of what happened with respect to the search of the phone, Agent Ballard is not a Spanish speaker, native Spanish speaker. She did conduct several searches on the phone. The testimony today was that she looked at not only WhatsApp, but she looked at -- and she couldn't remember all of the messaging platforms that she looked at, but it was more than just WhatsApp. She looked at the photographs on the phone. There was testimony with respect to one of the messages a voice note was played.

*218*

What is clear in all of that is, at no time was there an extraction or an analysis of the phone that involved a computer software that is analyzed or that is intended to analyze a hard drive.  That did not take place.

So the question here is whether or not this search was a routine manual search at the border or whether it was something that was a forensic search, which is nonroutine.

Now, there is a dispute between the parties on whether or not the Eleventh Circuit law applies to this search or whether Fourth Circuit law applies to this search.  I'm going to apply Fourth Circuit law here.  I find that it is the most restrictive in looking and analyzing this.

And in looking at the Fourth Circuit law, the Fourth Amendment requires that governmental searches and seizures to be reasonable.  And in most cases they require warrants based on probable cause, but in the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement.  And here the issue is whether or not this falls into the border exception in looking at the search and what happened with the phone.

At the border or its functional equivalent, like an international airport, government agents may conduct routine searches and seizures of persons and property without a warrant or any individualized suspicion.  Routine searches of a person and effects of the entrants are not subject to any requirement of

*219*

reasonable suspicion, probable cause, or a warrant.

Now, when you have a forensic search of a phone, that is a nonroutine border search and that requires something of an individualized suspicion. So the question here is: What did this search consist of?

I don't find that this was a forensic search here. It was not a forensic search. That's what the Court is finding.

You know, and I hear what you are saying, Mr. Armstrong, and what has been echoed in these cases about the privacy that is at stake with people's phones. They do contain a lot of information, but that fact has been recognized by many courts, including the Fourth Circuit, and even in recognizing that, it still drew the distinction between what is -- you know, it being one rule for forensic searches and another one for the routine manual ones. Even with that understanding, and it is the privacy interest and risk that we are all exposed to, and I recognize that, but even with that, when you are at an international border, it is something different, and the courts recognize that.

A forensic search is a powerful tool. It's capable of not only viewing data that a user has intentionally saved on a digital device, but it's also, you know, unlocking password protective files, restoring deleted materials, and retrieving images viewed on websites -- a website.

It is something more than what happened here. By the agents just reviewing the phone and putting phrases, no matter

*220*

how many, in the search bar of a phone that we all have on every phone in here.

So I don't find -- I do find that this search was routine, and therefore reasonable suspicion is not required. But, to be candid, even if reasonable suspicion was required here, they met it. On these facts they met it. The standard is not probable cause here. It's reasonable suspicion. And you have the payments. You have this recent and frequent travel, international travel to a source country, source city, the fact that the individual that the payments were being made to was someone who was identified as being involved in this investigation involving minors being used.

And it's a different investigation, and I want to be clear. Mr. Correa's activities are not Mr. Inofuentes' activities. They are different. But when you are speaking to what reasonable suspicion can be, agents' training and experience does come into play, because it sheds light on conduct of an individual. And when you have the payment as well as the recent and frequent travel, that's enough here.

And so for those reasons I'm going to deny your motion to suppress the search. Your exceptions are preserved.

Let's move to the motion in regards to the statement.

MR. ARMSTRONG: Thank you, Your Honor. I think that we filed in this motion as well fairly, you know, robust papers, both factually and legally, drawing on, again, Fourth Circuit

*239*

And so I think that is the classic promise of leniency. It's the classic deception that we cite to from a number of the cases in our papers.

And with that, we rest on our papers, Your Honor, unless you have any other questions.

THE COURT:  I don't.

MR. ARMSTRONG:  Thank you.

THE COURT:  All right.  So, I've already given -- provided findings with regard to what first happened at the airport.  Once Mr. Inofuentes, Agent Ballard, and Task Force Officer Vargas were in the interview room -- and just for purposes of the record, in terms of the in-custody findings -- it's clear here that he was isolated.  He's in an interview room with two agents.  The interview lasted -- you all indicate it was approximately an hour and 50 minutes, but I believe that was like the first recording. It also continued in two other portions of it, according to the files that were provided, and so I think in total duration he was in that interview room for the duration of about three hours, according to the timing on the file that I listened to.

He was not in handcuffs.  He was not under formal arrest, but it's clear that when you think about what -- and in looking at the totality of the circumstances and we look at was his freedom from action curtailed to a degree associated with formal arrest.  Even though he's not formally placed under arrest, he's entered this interview room.  It's far beyond the context of an

*240*

admissibility determination at this point. And it's going into other areas that exposes him to other criminal implications, you know, pursuant to this investigation.

And so I think in considering the totality of the circumstances, it's clear that he was in custody here for these purposes.

Now, we look to the substance of the *Miranda* warnings in this case, and those were provided pursuant to a statement of rights form and waiver, which is attached and which was provided and identified as Government's Exhibit Number 5. It's Document 98.2 on the docket. And when you listen, as I said earlier, to the recording, and even in reading the transcript as written, there does not appear to be any trickery there whatsoever.

To the contrary, when it seems that Mr. Inofuentes is moving too quickly through these statements of what his rights are, the agents slow him down, and they ask him to read each line and initial if he understands.

"Before we ask you any question, it is my duty to advise you of your rights. The first one, you have the right to remain silent."

"Number 2" -- and then his initials are there -- "anything you say can be used against you in a court of law or other proceedings." His initials are there.

"You have the right to consult an attorney before making

any statement or answering any questions."  Again, his initials.

"And you have the right to have an attorney present with you during questioning."  His initials.

"If you cannot afford an attorney, one will be appointed for you before any questioning, if you wish."  His initials are there.

"If you decide to answer questions now, you still have the right to stop the questioning at any time or to stop the questioning for the purpose of consulting an attorney."  And his initials are there as well.

And then for the waiver, "I have read or someone has read to me the statement of my rights, and I understand what my rights are.  At this time I'm willing to answer questions without a lawyer present," and he signs and dates that.

They made sure that he understood those, and he was attempting to blow past them.  And when they said here, "We want to make sure you understand everything," and when you listen to the recording, it is clear that Agent Ballard and Task Force Officer Vargas are speaking across each other or, you know, at the same time.  But what she is saying is, "We want to make sure you understand everything for your own protection."  And he is saying, "Read each one.  Let's do this.  Read each one, and then put your initials at the end of it."

There's nothing -- there's no trickery there.  It's the direct opposite of it.  And so I find that the waiver there was

*242*

knowing, intelligent, and voluntary.  [As read]:  "I'm looking at two distinct dimensions:  One, where it said voluntary in the sense that it was the product of free and deliberate choice rather than intimidation, coercion, or deception; and two, whether the waiver was made with a full awareness of both the nature of the right being abandoned and the consequence of the decision to abandon it."  And the conduct here meets both.

And when looking at -- and I also have to consider the characteristics of this individual before me, Mr. Inofuentes. He's 44 years old.  This is someone who is educated.  According to his -- in the course of his statement he indicated he attended the New England Conservatory and the Florida International University.  His occupation, he has two professions.  He's both a professional musician, as well as a student advisor for Strayer University, advising students on their -- on a number of things. There's nothing, in terms of his background, that would suggest that he was somehow unable to intelligently, knowingly waive these rights, to understand the rights, and to then waive them.

The government also speaks that this is -- and he doesn't have any lengthy criminal history.  I'm not trying to apply that at all, but this is someone also, according to the pleadings which indicate a prior arrest, then this is someone who would have had his rights read to him at least once before.  So there's nothing to suggest that there was anything here that would prevent him from understanding his rights and then waiving them.

*243*

Nothing to suggest that the waiver was procured through any kind of deceit or misleading statements.

Now I move to this last part, which is the crux, I think, of your argument when you talk about there were certain made during the course of this interview that were evidence of deceit, namely the statements about the interview being routine box checking exercise, the suggestion that the *Miranda* rights only apply to the questions about drugs. And I do want to state specifically for purposes of my findings, there is no authority that you cited or that I am aware of that would suggest that *Miranda* warnings are subject specific. They are not. And here it's also clear that -- because there was some testimony about this -- that it was a suggestion that the *Miranda* warnings were limited to questioning regarding drug smuggling. They were not.

The recording indicates Special Agent Ballard said that she wanted to question him about specific -- particular problem sets. It's an S on it. The drug smuggling was an example, but it wasn't -- there was no indication that that was going to be all that they were going to be discussing, but even if it was, like I said, *Miranda* rights are not subject specific.

Also, the cases that you cite in your brief, Mr. Armstrong, that talk about where the courts find that their officers did mischaracterize the rights, and therefore the defendants did not knowingly -- and knowingly waive their rights, were cases where they -- agents attempted to -- they really did

*244*

mischaracterize the right and suggest that the entire right that the defendant had or that he was waiving was only to one -- in the *Clark* case I believe it was only to have the attorney present at that time. But here there wasn't any kind of mischaracterization of the scope of the *Miranda* rights.

The agents might have made statements referring to box checking, but that in no way suggested -- that did not in any way overborne, I believe, or I find, you know, Mr. Inofuentes' ability to provide a voluntary statement at that point. I find that this was not a mischaracterization about the consequences of waiving his rights. They told him very -- very plainly at the outset via the form, "What you say can be used against you." Nothing in anything that they said would suggest that they were attempting to mischaracterize it. To say to be honest is accurate. You don't have to provide a statement, but once you do, to be honest. But they never directed him to provide one. And even the statements regarding "Spit it out," "Say it plainly, or say with plain English," if you look at the context of and consider it in the context of the interview, those were in response to meandering statements, statements that were -- because throughout the interview, sometimes Mr. Inofuentes would answer one way, then he would answer another way. He was contradicting himself at different parts, and to say, you know, that is normal conversation when someone is speaking to you in that way, that is a normal way to respond, but it does not in any

way suggest that he still does not have the right to be silent. And the fact is, he clearly appreciated the fact that he had the right to still remain silent, because even after making certain statements that could arguably be considered incrim- -- incriminating, he still says -- and this is an hour and 21 minutes into the interview -- "I could just plead the Fifth."  So this is someone who knows and appreciates the rights that he has and the fact that he can invoke them at any moment.

So, even though you point to certain statements that you take issue with, none of them rise to the level of, like, promises or threats, promises of leniency that the Fourth Circuit has found to have led to involuntary statements.

So, accordingly, I find that -- but I do want to backtrack a little bit, because I did already mention, in terms of the totality of circumstances, and in considering whether or not statements are voluntary, I have to consider the defendant's individual characteristics and background, the setting in which the statement occurred and then the details of the interrogation. And I've already made findings in reference to Mr. Inofuentes and his education and appreciation for his -- or understanding of his *Miranda* rights.

But in terms of the tone of the interview, I want to note that it began as very informal and relaxed.  And I do recognize that at certain portions the questioning became more pointed, but it was not to the point that it would overcome any kind of free

*246*

will on his part.  And as I said, like during the portion of the interview, and it was after the interview had specifically turned to the issue of child exploitation, Mr. Inofuentes said explicitly, "I could say I plead the Fifth," but then he continues on answering more questions.  So, he is someone who fully understood his rights, his ability to waive them, and the fact that he could still invoke it, but he decided not to.

So, for all of these reasons, I find that Mr. Inofuentes knowingly, intelligently, and voluntarily waived his *Miranda* rights and that suppression's not warranted here.  So, your motion is denied and your exceptions are preserved.

Okay.  Is there anything further today?

MS. HALPER:  No, Your Honor, not from the government.

THE COURT:  Okay.

MR. ARMSTRONG:  No, Your Honor.

THE COURT:  Okay.  All right.  Then we're adjourned.

(Proceedings adjourned at 5:22 p.m.)


**C E R T I F I C A T E**


I, Scott L. Wallace, RDR-CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


/s/ Scott L. Wallace                    8/26/25
-----------------------------      ----------------
**Scott L. Wallace, RDR, CRR              Date**
**Official Court Reporter**

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | 1:25-cr-5 |
| | ) | |
| MICHAEL JAIME INOFUENTES, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

## ORDER

This matter is before the Court on Defendant's Motion to Suppress evidence obtained through a search of Defendant's iPhone (Dkt. 60) and Defendant's Motion to Suppress His Custodial Statements (Dkt. 92). For the reasons stated from the bench and below, the Court finds that (1) Defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights and his statements during the interview were voluntarily; and (2) that the manual search of Defendant's phone was a routine search at the border. Even if the search of Defendant's phone was non-routine, the Court finds that the search was based on reasonable suspicion that "b[ore] some nexus to the purposes of the border search exception." *United States v. Aigbekaen*, 943 F.3d 713, 723 (4th Cir. 2019). Specifically, the search was based on reasonable suspicion of the commission of a transnational crime. Accordingly, it is hereby

**ORDERED** that Defendant's Motions are **DENIED**.

Entered this 21st day of August, 2025
Alexandria, Virginia

_____ /s/
Patricia Tolliver Giles
United States District Judge

JA0017

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

```
--------------------------------x
                                :
UNITED STATES OF AMERICA        : Criminal Action No.:
                                : 1:25-cr-5
                                :
        v.                      :
                                :
MICHAEL JAIME INOFUENTES,       : September 10, 2025
                                :
            Defendant.          :
--------------------------------x
```

TRANSCRIPT OF JURY TRIAL
BEFORE THE HONORABLE PATRICIA T. GILES,
UNITED STATES DISTRICT COURT JUDGE

A P P E A R A N C E S

FOR THE GOVERNMENT:    LAUREN HALPER, AUSA
                       LAURA D. WITHERS, AUSA
                       United States Attorney's Office
                       2100 Jamieson Avenue
                       Alexandria, VA 22314

FOR THE DEFENDANT:     SCOTT ARMSTRONG, ESQ.
                       McGovern Weems, PLLC
                       1050 15th Street NW, Suite 1030
                       Washington, DC 20005

                       CHRISTIAN R. BURNE, ESQ.
                       Greenberg Traurig, LLP
                       1750 Tysons Boulevard, Suite 1000
                       McLean, VA 22102

                       CHARLES E. JAMES, Jr.
                       Williams Mullen
                       200 South 10th Street, Suite 1600
                       Richmond, VA 23219

OFFICIAL U.S. COURT REPORTER:    MS. TONIA M. HARRIS, RPR
                                 United States District Court
                                 401 Courthouse Square
                                 Tenth Floor
                                 Alexandria, VA 22314

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

United States v. Inofuentes

72

to admit and publish those listed exhibits.

MR. ARMSTRONG:  No objection.

THE COURT:  They are received.

(Government's Exhibit Nos. 210 to 212, 214, 222 to 224, 235 to 236, 239, 240 to 243, and 245, 238 and 244, were admitted into evidence.)

MS. WITHERS:  All right.

BY MS. WITHERS:

Q.   Third, I'm going to direct your attention to -- I'm sorry, I need the disk binder.

To Government's Exhibits 205 and 206.  205 and 206.

You got them?

A.   Yes.

Q.   Okay.  Do you recognize these exhibits?

A.   Yes, I do.

Q.   How do you recognize them?

A.   They are CDs that I had previously listened to and initialed.

Q.   And what are they?

A.   They are audio clips from the WhatsApp chat.

Q.   And looking at Government's Exhibit 205A and 206A, are those the translations that we talked about yesterday of 205 and 206?

A.   Yes.

MS. WITHERS:  Your Honor, at this time, I would

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

United States v. Inofuentes

73

move, with standing permission to publish, Government's Exhibits 205, 205A, 206 and 206A.

MR. ARMSTRONG:  Your Honor, we have an objection to 205A and, of course, I think it's hearsay.  It's being offered for the truth of the matter asserted.

THE COURT:  Is it his statement?

MR. ARMSTRONG:  No, it's Laura's.

THE COURT:  Pardon me?

MR. ARMSTRONG:  It's Laura's.

THE COURT:  Overruled.

MR. ARMSTRONG:  It's a stand-alone voice memo of Laura communicating.  Just to be clear.

THE COURT:  I understood that.

MR. ARMSTRONG:  Thank you, Your Honor.

THE COURT:  Overruled.

BY MS. WITHERS:

Q.   All right.  So I'm going to ask you questions kind of in buckets as we go so we can kind of hopefully keep track of where we are.

So was one of the pieces of information that you were looking for in the phone, and when interviewing the defendant, whether he was aware if Laura was under the age of 18?

A.   Yes.

Q.   And generally, what did you determine as a result of your

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

```
---------------------------------x
                                 :
UNITED STATES OF AMERICA         : Criminal Action No.:
                                 : 1:25-cr-5
                                 :
         v.                      :
                                 :
MICHAEL JAIME INOFUENTES,        : September 10, 2025
                                 :
                  Defendant.     :
---------------------------------x
```

TRANSCRIPT OF JURY TRIAL
BEFORE THE HONORABLE PATRICIA T. GILES,
UNITED STATES DISTRICT COURT JUDGE

A P P E A R A N C E S

FOR THE GOVERNMENT:    LAUREN HALPER, AUSA
                       LAURA D. WITHERS, AUSA
                       United States Attorney's Office
                       2100 Jamieson Avenue
                       Alexandria, VA 22314

FOR THE DEFENDANT:     SCOTT ARMSTRONG, ESQ.
                       McGovern Weems, PLLC
                       1050 15th Street NW, Suite 1030
                       Washington, DC 20005

                       CHRISTIAN R. BURNE, ESQ.
                       Greenberg Traurig, LLP
                       1750 Tysons Boulevard, Suite 1000
                       McLean, VA 22102

                       CHARLES E. JAMES, Jr.
                       Williams Mullen
                       200 South 10th Street, Suite 1600
                       Richmond, VA 23219

OFFICIAL U.S. COURT REPORTER:    MS. TONIA M. HARRIS, RPR
                                 United States District Court
                                 401 Courthouse Square
                                 Tenth Floor
                                 Alexandria, VA 22314

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

JA0021

United States v. Inofuentes

4

## P R O C E E D I N G S

(Court proceedings commenced at 8:48 a.m.)

THE COURT:  All right.  So same counsel is present. We're not going to make you announce yourselves again.  I see both sides are present this morning.  Good morning, everyone. So we're on today for our jury instruction conference.  There are only six in dispute.

In terms of your proposed instructions, I'm giving all of those -- there's one, I think, I'll be removing, which is the Court's comments on certain evidence, because I don't intend to be commenting on evidence.  And then there are several in here I know that we will need to edit based on how the evidence comes in.

Let's take up the disputed ones, because that's where the fight is.  So, first, with respect to the proposed 26 on both sides.  It really just comes down to one word here, the "between."  I don't understand the crux of this disagreement.  Let's start with you, Mr. Burne.

MR. BURNE:  Good morning, Your Honor.  On 26, Your Honor, you're right it's just the "between" language or the about language.  The defense position is that this impermissibly would consider or allow the jury to consider just -- such a broad range of conduct that they may not find a concurrence between guilty mind and guilty act.  And so, that

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

JA0022

United States v. Inofuentes

5

permits them to consider just -- cherry-pick among -- we think there was maybe a -- an ill-meaning mind here and a wrongful act here, and then lump those things together, whereas, the law is clear those things have to occur at the same time.

THE COURT:  But a range is charged here, so that's my confusion.

MR. BURNE:  We agree, Your Honor, right.  So, yes, certainly range is charged, but within that range those things have to coalesce on some date on or about what the government charged.  The guilty act and the guilty mind.  And so, the need to not include that language is to emphasize, essentially, to the jury without -- specifically emphasizing that sort of by omission that those things have to line up on the same day while it could be a particular day within that range, but they have to all line up.  They can't just cherry-pick from we think there was an ill-meaning intent here and there was a bad act somewhere else.

THE COURT:  And you think all of that comes down to this -- because this is one of those -- this is really not a controversial instruction here when it comes to the on or about language.  It is just -- when you're trying to use this -- I think it goes to what you have on your verdict form, which is like specifying we know that the parties or the jurors must be unanimous, you want it to be shown on the verdict form in some way, and here you're asking for there to

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

JA0023

United States v. Inofuentes

6

be one specific date. Is that what you are --

MR. BURNE: The range is still a particular range we're objecting to -- let me get the exact language. Yeah "on or about" is fine. We're not saying they have to allege a specific date. It's the "between on or about" that we have an issue with.

THE COURT: But between is actually stated in the indictment, right?

MR. BURNE: It is in the indictment, Your Honor, correct. We just don't think it should be in the jury instruction itself.

THE COURT: I understand. Ms. Halper. I'm sorry, Ms. Withers. I shouldn't have assumed.

Good morning.

MS. WITHERS: Good morning.

I won't belabor the point. I think the Court is clear on what our position on this is. It's consistent with the indictment. And the way that the language reads is between on or about the defendant committed the offense. To get to Mr. Burne's point, the defense is the elements that are for each count, so there's no suggestion here that the mens rea happened in March and the actus reus happened in September. Of course those two things go together. It's just that the jury could find that those two things happened together some time between February and October. And so, this

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

JA0024

United States v. Inofuentes

7

tracks the indictment language.  I think it's appropriate.

THE COURT:  Okay.  I'm going to grant the government's Instruction No. 26.  I do think it's appropriate in this case and it tracks the indictment.  Let's take up the Instruction No. 31.

MR. BURNE:  Your Honor, I think it might be useful if we -- so 31, 34, and 37, yes, 37, also flow from the same positions.  And that is that the definition for commercial sex act, and what the government has to prove.  The defense request here is to -- for 34, to add just a few sentences to that definition.

The first sentence -- and this goes to 31, because, I think -- well, as the obvious, it all deals with the same definition.  The first sentence the government has requested is the definitions in the statute and we don't have a problem with that piece of the definition.  However, there is significant case law throughout the country that further defines what it is that 1591(e)(3) requires the government to prove.  And what that requires is a causal link between the sex act and the something of value.

And so, that's what we're asking for in this additional instruction is to further define what is required to be proven by the government here, that causal link.  And like I said, we do not object to the instruction for the first sentence.  It is the definition in the statute.  But, case law

United States v. Inofuentes

8

throughout the country has further defined that.  And we believe it is appropriate, and given that it is the heart of the defense case here, and really what the entire case is about is the commercial sex piece.  And so, we do -- the fact that this is the heart of the case, and that case law throughout the country has further defined this to define the need for a causal link between these two things, giving something of value and the act itself, we think it is appropriate.  And this is both in criminal cases that are defining what 1591(e)(3) means, as well as in civil cases that are interpreting the exact same cases in analogous civil cases.

THE COURT:  I understand your argument. Ms. Withers.

MS. WITHERS:  Your Honor, I won't belabor the point. The purpose of this instruction is to define the terms and to make it clear that those terms are to be given the ordinary meaning.  It's just not an appropriate place for what the defendant is trying to do, and it's clear from the Instruction No. 30, which is the essential elements of the defense that those things do have to go together and be connected.  So I think it's confusing to the jury because it's trying to put different concepts together.  This is strictly a definitional instruction.  And so, for that reason we would oppose it.

THE COURT:  Thank you.  I'm looking at 30.  How does

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

United States v. Inofuentes

9

30 speak to the causal piece?

MS. WITHERS:  Your Honor, Count 1 says the defendant -- sorry, element 1 says the defendant knowingly recruited, enticed, harbored, transported, obtained, maintained, patronized, or solicited by any means a minor.  And in number two it says, knowing that the minor would be caused to engage in a commercial sex act.  That's the end of that sentence.

THE COURT:  That's the end of the sentence.  Thank you.

I'm not going to add any -- with respect to 31, it is appropriate to just say these words have their ordinary meaning.  With respect to 34, the commercial sex -- commercial sex act is specifically defined by the statute, so we're not going to say anything beyond what the statute defines it as. And the government is correct, the causal piece is accounted for with respect to the second element.

MR. BURNE:  If I may, Your Honor.

THE COURT:  No, you may not.  I've ruled.  So I'm not giving it.  Okay.  So the instructions -- defendant's instructions for 31, 34, and 37 are denied, and I'm going to give the government's version.

Now, with the attempt instruction let me hear from you on this, Mr. Burne.

MR. BURNE:  Instruction 40, I believe.

THE COURT:  Yes, 40.

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

JA0027

United States v. Inofuentes

10

MR. BURNE:  So this request by defense is intended to emphasize that it's not just speech alone that can meet the burden here.  That a substantial step requires --

THE COURT:  The problem with that is speech alone there can be something because one of the ways in which there can be a violation is solicitation.  And is that not speech?

MR. BURNE:  Your Honor, yes, but for an attempt there must be a substantial step, more than just the speech alone.  I don't think you can meet the elements with just speech.  I think there has to be something else.

THE COURT:  Isn't solicitation a request when you do this, I'm propositioning you?

MR. BURNE:  The speech could certainly be a factor in deciding if there's a substantial step, but the defense's position is there has to be something else there.  It can't just be the speech.  So while they could consider -- it would be appropriate for the jury to consider the speech as part of an analysis of the attempt.  We're not saying they can't consider it at all or that it should be disregarded, but there has to be something else and that's where the instruction is intended to confirm that there has to be something else in addition to just the speech alone.

THE COURT:  So it's your position that a verbal solicitation would not be sufficient?

MR. BURNE:  I think the verbal agreement alone

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

JA0028

United States v. Inofuentes

11

for --

THE COURT:  Not an agreement, solicitation.

MR. BURNE:  For attempt, no, Your Honor.  I think you'd have to prove a substantial step in that regard.  That's what attempt would require and beyond just the mere words.

THE COURT:  I think I understand your position.

MS. WITHERS:  Your Honor, we think that the government's instruction is sufficient to instruct the jury on attempt here.  I agree with the Court that -- it is confusing, right.  There is an offer of -- there is an offer to pay for a sex act that is sufficient for attempt.

Furthermore, as we noted in our briefing, this extraneously interrupted language is quite confusing.  I can't figure out where the defense got that language from.  What is extraneously interrupted?  Does that mean outside the victim and the defendant?  Does that mean the victim backed out?  That's not extraneous.  It's very unclear.  And so, we think this is extra verbiage that's unnecessary, it's confusing, and it muddies the waters with respect, as the Court notes, to the issue of solicitation, which is a -- which is a, by its nature, words and verbal.

THE COURT:  Where does the language come from, Mr. Burne?

MR. BURNE:  Um, I think that's -- our position is that that language appropriately defines --

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

JA0029

United States v. Inofuentes

12

THE COURT:  You are --

MR. BURNE:  I don't have an exact cite for that language.

THE COURT:  Understood.  I'm just going to give the plain O'Malley definition for "attempt."  Which is appropriate in this case.  I think -- I'm not going to infuse with the instruction with language that attorneys' craft, okay.  And I do think it is -- and for this case this language is not appropriate.  It's not accurate and I think it does have the potential to mislead.  So I'm going to -- I'm not going to give the defense version of Instruction No. 37 -- or No. 40.

That leads us to the final instruction, motive.

MR. BURNE:  So this, Your Honor, I do have an exact cite.

THE COURT:  I have the case.  And I looked at it, but I didn't see that language in the judge's instruction.

MR. BURNE:  So --

THE COURT:  Was it included in the judge's instruction, did I miss that?

MR. BURNE:  I believe so, Your Honor.  It's in the Third Circuit model instruction.  It is pulled from there.

THE COURT:  I have the model.

MR. BURNE:  And it's endorsed by that case.  And our position here is --

THE COURT:  Okay, I have the model here, but I don't

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

JA0030

United States v. Inofuentes

13

see that language in the model.  Where?

MR. BURNE:  It's in the note.

THE COURT:  Okay.  I have it.  That's what I had. You said it was in the model --

MR. BURNE:  I'm sorry, it's in the --

THE COURT:  -- but it's not in the text.

MR. BURNE:  It's in the comment.

THE COURT:  It's not in the text of the model, no.

MR. BURNE:  Correct, Your Honor.  It is in the comment.

THE COURT:  It is in the comment.

MR. BURNE:  Further defined.

THE COURT:  I have the comment.  And then I pulled that case and when I looked at that *Bolognese* case, and the actual instruction that the Court provided, I did not see that specific language that you have here added into that instruction.

MR. BURNE:  I don't have the case in front of me, Your Honor.  I apologize.

THE COURT:  That's okay.  That's okay.  Anything else?

MR. BURNE:  This instruction, again, goes to the heart of what's at issue here, the intent.  And so, while it is motive itself, obviously, it is not relevant in and of itself, but there is a high degree of overlap between the

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

United States v. Inofuentes

14

motive and intent here, and this is, again, at the heart of the defense case. And we believe with a little more instruction here, the jury is appropriately considering what they can consider is appropriate, and a further instruction.

THE COURT: Understood. Thank you. Ms. Withers.

MS. WITHERS: Thank you, Your Honor. Again, it's just a simply redundant sentence that comes before which makes this unnecessary.

THE COURT: It is somewhat repetitive, but I only get that -- I'm going to give that one a little bit more thought. Let me give that one a little bit more thought. It is somewhat repetitive of the sentence that's in front of it. But I'll give it a little bit more thought. I'm reserving on this one. I'll let you know at the end of the day for No. 43.

Do you all want to take up verdict forms? You want to take up verdict forms?

MR. BURNE: We can, Your Honor. Sure.

THE COURT: Come on.

MR. BURNE: Your Honor, the request on the verdict form is just that it would be some minor amendments, obviously, as to the unanimous language included on there, as well as for the jury to specifically find if it is -- if guilty, an attempt or the completed crime itself. It's fairly self explanatory. That's our request for both counts. That's how the government has charged it as a potential for completed

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

JA0032

United States v. Inofuentes

15

offense or the attempt, and we believe the jury should specifically find which one of those they -- if guilty, they find the defendant guilty.

MS. WITHERS: As Your Honor is aware, it is common practice to charge conflated and attempted offenses together. What is unusual here is the request for a special verdict form. There is a presumption against special verdict forms and just because we've called it our standard practice of charging a completed and an attempt theory, does not change that presumption against special verdict forms. It's common to charge attempt without a special verdict form. We think it is unnecessary and we would oppose it as out of common practice and legally unnecessary.

THE COURT: I've pulled some verdict forms from similar cases where they've both been -- I don't want to confuse or add more for the jury than is appropriate. And so, I pulled some other verdict forms to see when you've used special verdict forms, particularly in cases where it's charged as the completed offense as well as the attempted offense. And if it's not something that is done readily, I'm not inclined to do it here. And so, I'll let you all know on that as well.

Did you all resolve the issue -- and this may be a question for Mr. Armstrong in terms of these exhibits for today?

Tonia M. Harris OCR-USDC/EDVA 703-646-1438

EASTERN DISTRICT OF VIRGINIA

JA0033

AO 245B (Rev. 11/01) (VAE_V0625.2) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT
## Eastern District of Virginia
### Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| v. | Case Number:  1:25-cr-00005-PTG-1 |
| MICHAEL JAIME INOFUENTES | USM Number:  45067-511 |
| | Christian Burne, Esquire |
| | Scott Armstrong, Esquire |
| | Defendant's Attorney |

The defendant was found guilty on Counts 1s and 2s after a plea of not guilty.

The defendant is adjudged guilty of:

| Title and Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. §§ 1591(a)(1), (b)(2), and (c); 1594(a); 1596(a)(1) and (a)(2) | Sex Trafficking of a Child | 11/01/2024 | 1s |
| 18 U.S.C. § 2423(c), (f), and (g)(2) | Engaging in Illicit Sexual Conduct in a Foreign Place | 11/01/2024 | 2s |

The defendant is sentenced as provided in pages 2 through 7 of this Judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

It is ordered that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the Court and United States Attorney of material changes in economic circumstances.

February 26, 2026
Date of Imposition of Judgment

Signature of Judge

Patricia Tolliver Giles, United States District Judge
Name and Title of Judge

February 26, 2026
Date

AO 245B (Rev. 11/01) (VAE_V0625.2) Judgment in a Criminal Case
Sheet 2 - Imprisonment

Page 2 of 7

Case Number:　　　1:25-cr-00005-PTG-1
Defendant's Name:　　INOFUENTES, MICHAEL JAIME

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of TWO HUNDRED TWENTY (220) MONTHS AS TO EACH COUNT 1S AND 2S, TO BE SERVED CONCURRENTLY.

☒　The Court makes the following recommendations to the Bureau of Prisons:

　　1.　The Court recommends that the Defendant be designated to FCI Fort Dix, Joint Base MDL, NJ, if not, FCI Otisville, Otisville, NY.

☒　The defendant is remanded to the custody of the United States Marshal.

## RETURN

I have executed this judgment as follows: _____

_____

Defendant delivered on _____ to_____

at_____, with a certified copy of this Judgment.

_____
UNITED STATES MARSHAL

By　　　　　_____
　　　　　　DEPUTY UNITED STATES MARSHAL

JA0035

AO 245B (Rev. 11/01) (VAE_V0625.2) Judgment in a Criminal Case                                        Page 3 of 7
    Sheet 3 – Supervised Release

---

| | |
|---|---|
| Case Number: | 1:25-cr-00005-PTG-1 |
| Defendant's Name: | INOFUENTES, MICHAEL JAIME |

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of TEN (10) YEARS AS TO EACH COUNT 1S AND 2S, TO BE SERVED CONCURRENTLY.

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release on supervised release and at least two periodic drug tests thereafter, as determined by the court.
4. ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
5. ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
6. ☐ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
7. ☒ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
8. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions listed in this judgment as well as with any other special conditions listed in this judgment.

JA0036

AO 245B (Rev. 11/01) (VAE_V0625.2) Judgment in a Criminal Case                                    Page 4 of 7
    Sheet 3 – Supervised Release

Case Number:          1:25-cr-00005-PTG-1
Defendant's Name:     INOFUENTES, MICHAEL JAIME

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.  You must answer truthfully the questions asked by your probation officer.
5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.  You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov

Defendant's Signature _____    Date _____

JA0037

AO 245B (Rev. 11/01) (VAE_V0625.2) Judgment in a Criminal Case
 Sheet 3A – Supervised Release

Page 5 of 7

| | |
|---|---|
| Case Number: | 1:25-cr-00005-PTG-1 |
| Defendant's Name: | INOFUENTES, MICHAEL JAIME |

## SPECIAL CONDITIONS OF SUPERVISION

1) Pursuant to the Adam Walsh Child Protection and Safety Act of 2006, the defendant shall register with the state sex offender registration agency in any state where the defendant resides, works, and attends school, according to federal and state law and as directed by the probation officer.

2) Pursuant to the Adam Walsh Child Protection and Safety Act of 2006, the defendant shall submit their person, property, house, residence vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(1)), other electronic communications or data storage devices or media, or office, to a search conducted by a United States probation officer. Failure to submit to a search may be grounds for revocation of release. The defendant must warn any other occupants that the premises may be subject to searches pursuant to this condition. The probation officer may conduct a search under this condition only when reasonable suspicion exists that the defendant has violated a condition of supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

3) The defendant shall participate in a program approved by the United States Probation Office for mental health treatment, to include a psychosexual evaluation and sex offender treatment, and follow the rules and regulations of that program. Partial costs of this program shall be paid by the defendant, as directed by the probation officer, subject to the court's ultimate review and supervision. The defendant shall waive all rights of confidentiality regarding sex offender/mental health treatment to allow the release of information to the United States Probation Office and authorize communication between the probation officer and the treatment provider.

4) The defendant shall submit to periodic polygraph testing at the discretion of the probation officer to ensure compliance with the requirements of the defendant's supervision and/or treatment program. The costs of the testing are to be paid by the defendant, as directed by the probation officer.

5) The defendant shall not have any intentional contact with any child under the age of 18 unless accompanied by a responsible adult who is aware of the defendant's conviction and supervision status and who has been approved in advance by the court or probation officer. Intentional contact includes, but is not limited to, physical contact, verbal communication, written communication, and/or electronic communication such as email. Intentional contact also includes going to, congregating and/or loitering within 100 yards around school yards, playgrounds, swimming pools, arcades, zoos, or other places frequented by children under the age of 18. Intentional contact also encompasses any employment that would regularly provide the defendant with access to children under the age of 18, such as working in schools, childcare facilities, amusement parks and playgrounds. Incidental contact with children under the age of 18 includes, but is not limited to, unavoidable interactions in public places such as grocery stores, department stores, restaurants, etc.

6) The defendant shall comply with the requirements of the computer monitoring program as administered by the probation office. The defendant shall allow the probation officer to install computer monitoring software on any computer (as defined in 18 U.S.C. § 1030(e)(1)) the defendant uses. The costs of the monitoring shall be paid by the defendant. To ensure compliance with the computer monitoring condition, the defendant shall allow the probation officer to conduct initial and periodic unannounced searches of any computers (as defined in 18 U.S.C. § 1030(e)(1)) subject to computer monitoring. These searches shall be conducted to determine whether the computer contains any prohibited data prior to installation of the monitoring software, whether the monitoring software is functioning effectively after its installation, and whether there have been attempts to circumvent the monitoring software after its installation. The defendant shall warn any other people who use these computers that the computers may be subject to searches pursuant to this condition. The defendant shall allow the probation officer to install computer monitoring software on any computer (as defined in 18 U.S.C. § 1030(e)(1)) the defendant seeks to use. The defendant shall submit to a search of all computers (as defined in 18 U.S.C. § 1030(e)(1)) or other electronic communications or data storage devices or media. The defendant shall warn any other people who use these computers or devices capable of accessing the Internet that the devices may be subject to searches pursuant to this condition.

7) A probation officer may conduct a search pursuant to this condition only when reasonable suspicion exists that there is a violation of a condition of supervision and that the computer or device contains evidence of this violation. Any search will be conducted at a reasonable time and in a reasonable manner. To ensure compliance with computer monitoring or supervision conditions, the defendant shall submit any records requested by the probation officer to verify compliance with the defendant's conditions including, but not limited to, credit card bills, telephone bills, and cable/satellite television bills. To ensure compliance with computer monitoring or supervision conditions, the defendant shall submit any records requested by the probation officer to verify compliance with the defendant's conditions including, but not limited to, credit card bills, telephone bills, and cable/satellite television bills.

8) The defendant shall provide the probation officer access to any requested financial information.

AO 245B (Rev. 11/01) (VAE_V0625.2) Judgment in a Criminal Case
Sheet 5a – Criminal Monetary Penalties

Page 6 of 7

Case Number:        1:25-cr-00005-PTG-1
Defendant's Name:   INOFUENTES, MICHAEL JAIME

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | **Assessment** | **Restitution** | **Fine** |
|---|---|---|---|
| **TOTALS** | $ 200.00 ($100 per each count 1s & 2s) | $ N/A | $ 0.00 |

\*\*\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

**Payments of Restitution are to made payable to the Clerk, United States District Court, Eastern District of Virginia.**

JA0039

AO 245B (Rev. 11/01) (VAE_V0625.2) Judgment in a Criminal Case
Sheet 6

Page 7 of 7

| Case Number: | 1:25-cr-00005-PTG-1 |
|---|---|
| Defendant's Name: | INOFUENTES, MICHAEL JAIME |

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A**  ☒  Lump sum payment of $200.00 due immediately, balance due

    ☐  not later than _____ , or

    ☐  in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

**B**  ☒  Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

**C**  ☐  Payment in equal *(e.g., weekly, monthly, quarterly)* installments of $ over a period of *(e.g., months or years)*, to commence *(e.g., 30 or 60 days)* after the date of this judgment; or

**D**  ☐  Payment in equal *(e.g., weekly, monthly, quarterly)* installments of $ over a period of *(e.g., months or years)*, to commence *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

**E**  ☐  Payment during the term of supervised release will commence within *(e.g., 30 or 60 days)* after release from imprisonment. The Court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**  ☐  Special instructions regarding the payment of criminal monetary penalties:

Unless the Court has expressly ordered otherwise, if this Judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the Clerk of the Court.

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☒  The defendant shall forfeit the defendant's interest in the following property to the United States:
Consent Order of Forfeiture to be entered on a later date.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

JA0040