IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

No. 26-4150

———————————

UNITED STATES OF AMERICA,

*Appellee*,

v.

MICHAEL JAIME INOFUENTES,

*Appellant*.

———————————

Appeal from the United States District Court
for the Eastern District of Virginia
at Alexandria

*The Honorable Patricia Tolliver Giles, District Judge*

———————————

GOVERNMENT'S SUPPLEMENTAL APPENDIX

———————————

Todd W. Blanche                    Lauren Halper
Acting Attorney General            Laura D. Withers
                                   Assistant United States Attorneys
Theophani K. Stamos                2100 Jamieson Avenue
First Assistant United States Attorney    Alexandria, Virginia 22314
                                   (703) 299-3700

*Attorneys for the United States of America*

**This page is intentionally left blank.**

## Table of Contents

**Page**

Proposed Joint Jury Instructions
    (Dist. Ct. ECF No. 142)..................................................................................1

Inofuentes' Proposed Jury Instructions
    (Dist. Ct. ECF No. 145)................................................................................58

Inofuentes' Proposed Verdict Form
    (Dist. Ct. ECF No. 146)................................................................................67

Position of the United States with Respect to Sentencing
    (Dist. Ct. ECF No. 208)................................................................................71

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

*Alexandria Division*

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:25-CR-5 |
| v. | Hon. Patricia T. Giles |
| MICHAEL JAIME INOFUENTES, | Trial Date:  September 9, 2025 |
| *Defendant*. | |

## PROPOSED JOINT JURY INSTRUCTIONS

The United States of America, by and through its attorneys, Erik S. Siebert, United States Attorney for the Eastern District of Virginia, and Lauren Halper and Laura D. Withers, Assistant United States Attorneys, in consultation with counsel for defendant Michael Jaime Inofuentes, respectfully requests the Court to include in its charge to the jury the following proposed jury instructions, pursuant to Federal Rule of Criminal Procedure 30.  The government also respectfully requests that the Court include in its charge to the jury such other instructions as may become appropriate during the course of the trial.

Respectfully submitted,
Erik S. Siebert
United States Attorney


By: _____/s/_____

Lauren Halper
Laura D. Withers
Assistant United States Attorneys

1

**SA001**

Table of Contents

INSTRUCTION NO. 1 ........................................................................................................... 5
  Introduction to the Final Charge – Province of the Court and of the Jury ................................ 5
INSTRUCTION NO. 2 ........................................................................................................... 7
  Judging the Evidence ................................................................................................................ 7
INSTRUCTION NO. 3 ........................................................................................................... 8
  Evidence Received in the Case – Stipulations, Judicial Notice, and Inferences Permitted ........ 8
INSTRUCTION NO. 4 ......................................................................................................... 10
  Direct and Circumstantial Evidence......................................................................................... 10
INSTRUCTION NO. 5 ......................................................................................................... 11
  Inferences from the Evidence................................................................................................... 11
INSTRUCTION NO. 6 ......................................................................................................... 12
  Jury's Recollection Controls .................................................................................................... 12
INSTRUCTION NO. 7 ......................................................................................................... 13
  The Question is Not Evidence.................................................................................................. 13
INSTRUCTION NO. 8 ......................................................................................................... 14
  Consider Only the Offense Charged ........................................................................................ 14
INSTRUCTION NO. 9 ......................................................................................................... 15
  Objections and Rulings ............................................................................................................ 15
INSTRUCTION NO. 10 ....................................................................................................... 16
  Court's Comments to Counsel ................................................................................................. 16
INSTRUCTION NO. 11 ....................................................................................................... 17
  Court's Questions to Witnesses............................................................................................... 17
INSTRUCTION NO. 12 ....................................................................................................... 18
  Court's Comments on Certain Evidence.................................................................................. 18
INSTRUCTION NO. 13 ....................................................................................................... 19
  Evidence Admitted for a Limited Purpose Only ...................................................................... 19
INSTRUCTION NO. 14 ....................................................................................................... 20
  Number of Witnesses Called is not Controlling....................................................................... 20
INSTRUCTION NO. 15 ....................................................................................................... 21
  Credibility of Witnesses - Generally........................................................................................ 21
INSTRUCTION NO. 16 ....................................................................................................... 23
  Credibility of Witnesses – Inconsistent Statements ................................................................ 23
INSTRUCTION NO. 17 ....................................................................................................... 24
  Opinion Evidence – The Expert Witness ................................................................................. 24

2

**SA002**

INSTRUCTION NO. 18 ................................................................................................ 25

    Credibility of Witnesses – The Defendant as a Witness ........................................ 25

    (If Appropriate) ..................................................................................................... 25

INSTRUCTION NO. 19 ................................................................................................ 26

    Effect of the Defendant's Decision not to Testify.................................................. 26

    (If Appropriate) ..................................................................................................... 26

INSTRUCTION NO. 20 ................................................................................................ 27

    Statement or Conduct of a Defendant – Single Defendant on Trial....................... 27

INSTRUCTION NO. 21 ................................................................................................ 28

    Credibility of Witness - The Refusal of Witness or Defendant to Answer.............. 28

INSTRUCTION NO. 22 ................................................................................................ 29

Witness Credibility – Law Enforcement Witness......................................................... 29

INSTRUCTION NO. 23 ................................................................................................ 30

    The Superseding Indictment is Not Evidence ...................................................... 30

INSTRUCTION NO. 24 ................................................................................................ 31

    Presumption of Innocence, Burden of Proof, and Reasonable Doubt..................... 31

INSTRUCTION NO. 25 ................................................................................................ 32

    Unanimity – Explained......................................................................................... 32

INSTRUCTION NO. 26 ................................................................................................ 33

    "On or About" – Explained – DISPUTED BY DEFENSE ...................................... 33

INSTRUCTION NO. 27 ................................................................................................ 34

    Consider Each Count Separately............................................................................ 34

INSTRUCTION NO. 28 ................................................................................................ 35

    Nature of the Offense – Count One........................................................................ 35

    Sex Trafficking of a Minor.................................................................................... 35

INSTRUCTION NO. 29 ................................................................................................ 36

    Statute Defining the Offense – Count One............................................................. 36

    Sex Trafficking of a Minor.................................................................................... 36

INSTRUCTION NO. 30 ................................................................................................ 38

    Essential Elements of the Offense – Count One .................................................... 38

    Sex Trafficking of a Minor.................................................................................... 38

INSTRUCTION NO. 31 ................................................................................................ 40

    "Recruit," "Entice," "Harbor," "Transport," ........................................................ 40

    "Obtain," "Maintain" "Patronize" & "Solicit"- Defined – DISPUTED BY DEFENSE..... 40

3

**SA003**

INSTRUCTION NO. 32 ................................................................................................................ 41

Reckless Disregard - Defined ................................................................................. 41

INSTRUCTION NO. 33 ................................................................................................................ 42

Reasonable Opportunity to Observe the Minor ..................................................... 42

INSTRUCTION NO. 34 ................................................................................................................ 43

"Commercial Sex Act" – Defined - DISPUTED BY DEFENSE ................................................ 43

INSTRUCTION NO. 35 ................................................................................................................ 44

"Interstate Commerce," "Foreign Commerce," & "In or Affecting Interstate Commerce" –
Defined - Count One ................................................................................................ 44

INSTRUCTION NO. 36 ................................................................................................................ 45

Nature of the Offense – Count Two ........................................................................ 45

Engaging in Illicit Sexual Conduct in a Foreign Place ........................................... 45

INSTRUCTION NO. 37 ................................................................................................................ 46

Statute Defining the Offense – Count Two – DISPUTED BY DEFENSE .............................. 46

Engaging in Illicit Sexual Conduct in a Foreign Place ........................................... 46

INSTRUCTION NO. 38 ................................................................................................................ 47

Essential Elements of the Offense – Count Two ..................................................... 47

Engaging in Illicit Sexual Conduct in a Foreign Place ........................................... 47

INSTRUCTION NO. 39 "Travel in Foreign Commerce" – Explained ....................................... 48

INSTRUCTION NO. 40 ................................................................................................................ 49

Attempt – Explained – Counts One & Two – DISPUTED BY DEFENSE ........................ 49

INSTRUCTION NO. 41 ................................................................................................................ 50

Venue ...................................................................................................................... 50

INSTRUCTION NO. 42 ................................................................................................................ 51

"Knowingly" – Defined .......................................................................................... 51

INSTRUCTION NO. 43 ................................................................................................................ 52

Motive – Explained – DISPUTED BY DEFENSE ................................................................ 52

INSTRUCTION NO. 44 ................................................................................................................ 53

Proof of Knowledge or Intent ................................................................................. 53

INSTRUCTION NO. 45 ................................................................................................................ 54

Verdict – Election of foreperson – Duty to deliberate – Unanimity – Punishment – .............. 54

Form of verdict – Communication with the Court ................................................... 54

INSTRUCTION NO. 46 ................................................................................................................ 57

Exhibits During Deliberations ................................................................................. 57

**SA004**

INSTRUCTION NO. 1

Introduction to the Final Charge – Province of the Court and of the Jury

Members of the Jury:

Now that you have heard all of the evidence that is to be received in this trial and each of the arguments of counsel, it becomes my duty to give you the final instructions of the Court as to the law that is applicable to this case. You should use these instructions to guide you in your decisions.

All of the instructions of law given to you by the Court—those given to you at the beginning of the trial, those given to you during the trial, and these final instructions—must guide and govern your deliberations.

It is your duty as jurors to follow the law as stated in all of the instructions of the Court and to apply these rules of law to the facts as you find them to be from the evidence received during the trial.

Counsel have quite properly referred to some of the applicable rules of law in their closing arguments to you. If, however, any difference appears to you between the law as stated by counsel and that as stated by the Court in these instructions, you, of course, are to be governed by the instructions given to you by the Court.

You are not to single out any one instruction alone as stating the law, but must consider the instructions as a whole in reaching your decisions.

Neither are you to be concerned with the wisdom of any rule of law stated by the Court. Regardless of any opinion you may have as to what the law ought to be, it would be a violation of your sworn duty to base any part of your verdict upon any other view or opinion of the law than that given in these instructions of the Court just as it would be a violation of your sworn duty, as the judges of the facts, to base your verdict upon anything but the evidence received in the case.

5

**SA005**

You were chosen as juror for this trial in order to evaluate all of the evidence received and to decide each of the factual questions presented by the allegations brought by the government in the Superseding Indictment and the pleas of not guilty by the defendant.

In resolving the issues presented to you for decision in this trial you must not be persuaded by bias, prejudice, or sympathy for or against any of the parties to this case or by any public opinion.

Justice—through trial by jury—depends upon the willingness of each individual juror to seek the truth from the same evidence presented to all the jurors here in the courtroom and to arrive at a verdict by applying the same rules of law as now being given to each of you in these instructions of the Court.

(1A O'Malley, Grenig, Lee, & Wichern, *Federal Jury Practice and Instructions*, § 12:01 (7th ed., updated July 2025).)

**SA006**

INSTRUCTION NO. 2

Judging the Evidence

There is nothing particularly different in the way that a juror should consider the evidence in a trial from that in which any reasonable and careful person would deal with any very important question that must be resolved by examining facts, opinions, and evidence. You are expected to use your good sense in considering and evaluating the evidence in the case. Use the evidence only for those purposes for which it has been received and give the evidence a reasonable and fair construction in the light of your common knowledge of the natural tendencies and inclinations of human beings.

If the defendant be proved guilty beyond a reasonable doubt, say so. If not proved guilty beyond a reasonable doubt, say so.

Keep constantly in mind that it would be a violation of your sworn duty to base a verdict upon anything other than the evidence received in the case and the instructions of the Court. Remember as well that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence because the burden of proving guilt beyond a reasonable doubt is always with the government.

(1A O'Malley, Grenig, Lee, & Wichern, *Federal Jury Practice and Instructions*, § 12:02 (7th ed., updated July 2025).)

7

**SA007**

## INSTRUCTION NO. 3

### Evidence Received in the Case – Stipulations, Judicial Notice, and Inferences Permitted

The evidence in this case consists of the sworn testimony of the witnesses—regardless of who may have called them—all exhibits received in evidence—regardless of who may have produced them—all facts which may have been agreed to or stipulated and all facts and events which may have been judicially noticed.

When the attorneys on both sides stipulate or agree as to the existence of a fact, you may accept the stipulation as evidence and regard that fact as proved. You are not required to do so, however, since you are the sole judge of the facts.

*[If appropriate]:* The Court has taken judicial notice of certain facts or events. When the Court declares that it has taken judicial notice of some fact or event, you may accept the Court's declaration as evidence and regard as proved the fact or event which has been judicially noticed. You are not required to do so, however, since you are the sole judge of the facts.

Any proposed testimony or proposed exhibit to which an objection was sustained by the Court and any testimony or exhibit ordered stricken by the Court must be entirely disregarded by you.

Anything you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded.

Questions, objections, statements, and arguments of counsel are not evidence in the case *[unless made as an admission or stipulation of fact.].*

You are to base your verdict only on the evidence received in the case. In your consideration of the evidence received, however, you are not limited to the bald statements of the witnesses or to the bald assertions in the exhibits. In other words, you are not limited solely to what you see and hear as the witnesses testify or as the exhibits are admitted. You are permitted

8

**SA008**

to draw from the facts which you find have been proved such reasonable inferences as you feel are

justified in the light of your experience and common sense.

(1A O'Malley, Grenig, Lee, & Wichern, *Federal Jury Practice and Instructions*, § 12:03
(7th ed., updated July 2025).)

9

**SA009**

INSTRUCTION NO. 4

Direct and Circumstantial Evidence

There are two types of evidence which are generally presented during a trial—direct evidence and circumstantial evidence.  Direct evidence is the testimony of a person who asserts or claims to have actual knowledge of a fact, such as an eyewitness.  Circumstantial evidence is proof of a chain of facts and circumstances indicating the existence of a fact.  The law makes no distinction between the weight or value to be given to either direct or circumstantial evidence.  Nor is a greater degree of certainty required of circumstantial evidence than of direct evidence.  You should weigh all the evidence in the case.

(1A O'Malley, Grenig, Lee, & Wichern, *Federal Jury Practice and Instructions*, § 12:04 (7th ed., updated July 2025).)

10

**SA010**

INSTRUCTION NO. 5

Inferences from the Evidence

Inferences are simply deductions or conclusions which reason and common sense lead the

jury to draw from the evidence received in the case.

(1A O'Malley, Grenig, Lee, & Wichern, *Federal Jury Practice and Instructions*, § 12:05
(7th ed., updated July 2025).)

11

**SA011**

## INSTRUCTION NO. 6

### Jury's Recollection Controls

If any reference by the Court or by counsel to matters of testimony or exhibits does not coincide with your own recollection of that evidence, it is your recollection which should control during your deliberations and not the statements of the Court or of counsel.

You are the sole judges of the evidence received in this case.

(1A O'Malley, Grenig, Lee, & Wichern, *Federal Jury Practice and Instructions*, § 12:07 (7th ed., updated July 2025).)

12

**SA012**

INSTRUCTION NO. 7

The Question is Not Evidence

The questions asked by a lawyer for either party to this case are not evidence.  If a lawyer asks a question of a witness which contains an assertion of fact, therefore, you may not consider the assertion by the lawyer as any evidence of that fact.  Only the answers are evidence.

(1A O'Malley, Grenig, Lee, & Wichern, *Federal Jury Practice and Instructions*, § 12:08 (7th ed., updated July 2025).)

13

**SA013**

INSTRUCTION NO. 8

Consider Only the Offense Charged

The defendant is not on trial for any act or any conduct not specifically charged in the Superseding Indictment.

(1A O'Malley, Grenig, Lee, & Wichern, *Federal Jury Practice and Instructions*, § 12:09 (7th ed., updated July 2025).)

14

**SA014**

INSTRUCTION NO. 9

Objections and Rulings

Testimony and/or an exhibit can be admitted into evidence during a trial only if it meets certain criteria or standards. It is the sworn duty of the attorney on each side of a case to object when the other side offers testimony or an exhibit which that attorney believes is not properly admissible under the rules of law. Only by raising an objection can a lawyer request and then obtain a ruling from the Court on the admissibility of the evidence being offered by the other side. You should not be influenced against an attorney or his client because the attorney has made an objection.

Do not attempt, moreover, to interpret my rulings on objections as somehow indicating how I think you should decide this case. I am simply making a ruling on a legal question regarding that particular piece of testimony or exhibit.

(1A O'Malley, Grenig, Lee, & Wichern, *Federal Jury Practice and Instructions*, § 11:03 (7th ed., updated July 2025).)

**SA015**

INSTRUCTION NO. 10

Court's Comments to Counsel

(If Appropriate)

It is the duty of the Court to admonish an attorney who, out of zeal for his or her cause, does something which I feel is not in keeping with the rules of evidence or procedure.

You are to draw absolutely no inference against the side to whom an admonition of the Court may have been addressed during the trial of this case.

(1A O'Malley, Grenig, Lee, & Wichern, *Federal Jury Practice and Instructions*, § 11:04 (7th ed., updated July 2025).)

16

**SA016**

INSTRUCTION NO. 11

Court's Questions to Witnesses

During the course of a trial, I may occasionally ask questions of a witness. Do not assume that I hold any opinion on the matters to which my questions may relate.  The Court may ask a question simply to clarify a matter—not to help one side of the case or hurt the other side.

Remember at all times that you, as jurors, are the sole judges of the facts of this case.

(1A O'Malley, Grenig, Lee, & Wichern, *Federal Jury Practice and Instructions*, § 11:05 (7th ed., updated July 2025).)

17

**SA017**

INSTRUCTION NO. 12

Court's Comments on Certain Evidence

(If Appropriate)

The law of the United States permits a federal judge to comment to the jury on the evidence in a case. Such comments are, however, only expressions of my opinion as to the facts and the jury may disregard them entirely. You, as jurors, are the sole judges of the facts in this case. It is your recollection and evaluation of the evidence that is important to the verdict in this case.

Although you must follow the Court's instructions concerning the law applicable to this case, you are totally free to accept or reject my observations concerning the evidence received in the case.

(1A O'Malley, Grenig, Lee, & Wichern, *Federal Jury Practice and Instructions*, § 11:06 (7th ed., updated July 2025).)

18

**SA018**

INSTRUCTION NO. 13

Evidence Admitted for a Limited Purpose Only

In certain instances evidence may be admitted only for a particular purpose and not generally for all purposes.

For the limited purpose for which this evidence has been received you may give it such weight as you feel it deserves. You may not, however, use this evidence for any other purpose.

(1A O'Malley, Grenig, Lee, & Wichern, *Federal Jury Practice and Instructions*, § 11:09 (7th ed., updated July 2025).)

19

**SA019**

INSTRUCTION NO. 14

Number of Witnesses Called is not Controlling

(If Appropriate)

Your decision on the facts of this case should not be determined by the number of witnesses testifying for or against a party.  You should consider all the facts and circumstances in evidence to determine which of the witnesses you choose to believe or not believe.  You may find that the testimony of a smaller number of witnesses on one side is more credible than the testimony of a greater number of witnesses on the other side.

(1A O'Malley, Grenig, Lee, & Wichern, *Federal Jury Practice and Instructions*, § 14:16 (7th ed., updated July 2025).)

20

**SA020**

INSTRUCTION NO. 15

Credibility of Witnesses - Generally

You, as jurors, are the sole and exclusive judges of the credibility of each of the witnesses called to testify in this case and only you determine the importance or the weight, if any, that their testimony deserves. After making your assessment concerning the credibility of a witness, you may decide to believe all of that witness' testimony, only a portion of it, or none of it.

In making your assessment of that witness you should carefully scrutinize all of the testimony given by that witness, the circumstances under which each witness has testified, and all of the other evidence which tends to show whether a witness, in your opinion, is worthy of belief.

Consider each witness's intelligence, motive to falsify, state of mind, and appearance and manner while on the witness stand. Consider the witness's ability to observe the matters as to which he or she has testified and consider whether he or she impresses you as having an accurate memory or recollection of these matters. Consider also any relation a witness may bear to either side of the case, the manner in which each witness might be affected by your verdict, and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness or between the testimony of different witnesses may or may not cause you to disbelieve or discredit such testimony. Two or more persons witnessing an incident or a transaction may simply see or hear it differently. Innocent misrecollection, like failure of recollection, is not an uncommon human experience. In weighing the effect of a discrepancy, however, always consider whether it pertains to a matter of importance or an insignificant detail and consider whether the discrepancy results from innocent error or from intentional falsehood.

After making your own judgment or assessment concerning the believability of a witness, you can then attach such importance or weight to that testimony, if any, that you feel it deserves.

21

**SA021**

You will then be in a position to decide whether the government has proven the charges beyond a

reasonable doubt.

(1A O'Malley, Grenig, Lee, & Wichern, *Federal Jury Practice and Instructions*, § 15:01
(7th ed., updated July 2025).)

**SA022**

INSTRUCTION NO. 16

Credibility of Witnesses – Inconsistent Statements

The testimony of a witness may be discredited or, as we sometimes say, impeached by showing that he or she previously made statements which are different than or inconsistent with his or her testimony here in court. The earlier inconsistent or contradictory statements are admissible only to discredit or impeach the credibility of the witness and not to establish the truth of these earlier statements made somewhere other than here during this trial. It is the province of the jury to determine the credibility of a witness who has made prior inconsistent or contradictory statements.

(1A O'Malley, Grenig, Lee, & Wichern, *Federal Jury Practice and Instructions*, § 15:06 (7th ed., updated July 2025).)

23

**SA023**

INSTRUCTION NO. 17

Opinion Evidence – The Expert Witness

The rules of evidence ordinarily do not permit witnesses to testify as to their own opinions or their own conclusions about important questions in a trial. An exception to this rule exists as to those persons who are described as "expert witnesses." An "expert witness" is someone who, by education or by experience, may have become knowledgeable in some technical, scientific, or very specialized area. If such knowledge or experience may be of assistance to you in understanding some of the evidence or in determining a fact, an "expert witness" in that area may state an opinion as to a matter in which he or she claims to be an expert.

You should consider each expert opinion received in evidence in this case and give it such weight, if any, as you may think it deserves. You should consider the testimony of expert witnesses just as you consider other evidence in this case. If you should decide that the opinion of an expert witness is not based upon sufficient education or experience, or if you should conclude that the reasons given in support of the opinion are not sound, or if you should conclude that the opinion is outweighed by other evidence [including that of other "expert witnesses"], you may disregard the opinion in part or in its entirety.

As I have told you several times, you—the jury—are the sole judges of the facts of this case.

(1A O'Malley, Grenig, Lee, & Wichern, *Federal Jury Practice and Instructions*, § 14:01 (7th ed., updated July 2025).)

24

**SA024**

INSTRUCTION NO. 18

Credibility of Witnesses – The Defendant as a Witness

(If Appropriate)

You should judge the testimony of the defendant in the same manner as you judge the

testimony of any other witness in this case.

(1A O'Malley, Grenig, Lee, & Wichern, *Federal Jury Practice and Instructions*, § 15:12
(7th ed., updated July 2025).)

25

**SA025**

## INSTRUCTION NO. 19

### Effect of the Defendant's Decision not to Testify

### (If Appropriate)

The defendant in a criminal case has an absolute right under our Constitution not to testify.

The fact that Defendant did not testify must not be discussed or considered in any way when deliberating and in arriving at your verdict. No inference of any kind may be drawn from the fact that a defendant decided to exercise his privilege under the Constitution and did not testify.

As stated before, the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or of producing any evidence.

(1A O'Malley, Grenig, Lee, & Wichern, *Federal Jury Practice and Instructions*, § 15:14 (7th ed., updated July 2025).)

26

**SA026**

INSTRUCTION NO. 20

Statement or Conduct of a Defendant – Single Defendant on Trial

Evidence relating to any alleged statement, confession, *[or]* admission *[or act or omission]* alleged to have been made *[or done]* by a defendant outside of court and after a crime has been committed should always be considered by the jury with caution and weighed with great care.  All such alleged statements, confessions, or admissions should be disregarded entirely unless the other evidence in the case convinces the jury beyond a reasonable doubt that the statement, confession, admission, or act or omission was made or done knowingly and voluntarily.

In determining whether any alleged statement, confession, *[or]* admission *[or act or omission]* alleged to have been made by a defendant outside of court and after a crime has been committed was knowingly and voluntarily made *[or done]* the jury should consider the age, training, education, occupation, and physical and mental condition of the defendant, and his treatment while in custody or under interrogation as shown by all of the evidence in the case. Also consider all other circumstances in evidence surrounding the making of the alleged statement, confession, or admission.

If after considering the evidence you determine that a statement, confession *[or]* admission *[or act or omission]* was made *[or done]* knowingly and voluntarily, you may give it such weight as you feel it deserves under the circumstances.

(1A O'Malley, Grenig, Lee, & Wichern, *Federal Jury Practice and Instructions*, § 14:03 (7th ed., updated July 2025).)

27

**SA027**

INSTRUCTION NO. 21

<u>Credibility of Witness - The Refusal of Witness or Defendant to Answer</u>

The law requires that every *[witness] [defendant]* answer all proper questions put to him or her at trial unless the Court rules that he or she is privileged to refuse to answer on Constitutional or other grounds.

The fact that a *[witness] [defendant]* refuses to answer a question after being instructed by the Court to answer it may be considered by the jury as one of the factors in determining the credibility of the *[witness] [defendant]* and the weight his or her testimony deserves.

(1A O'Malley, Grenig, Lee, & Wichern, *Federal Jury Practice and Instructions*, § 15:11 (7th ed., updated July 2025).)

28

**SA028**

INSTRUCTION NO. 22

Witness Credibility – Law Enforcement Witness

You have heard the testimony of law enforcement officials.  The fact that a witness may be employed by the government as a law enforcement official does not mean that his testimony is necessarily deserving of more or less consideration or greater or lesser weight than that of an ordinary witness.

At the same time, it is quite legitimate for defense counsel to try to attack the credibility of a law enforcement witness on the grounds that his testimony may be colored by a personal or professional interest in the outcome of the case.

It is your decision, after reviewing all the evidence, whether to accept the testimony of the law enforcement witness and to give that testimony whatever weight, if any, you find it deserves.

(1 *Modern Federal Jury Instruction*, ¶ 7.01, Instr. 7-16 (2025).)

29

INSTRUCTION NO. 23

The Superseding Indictment is Not Evidence

A Superseding Indictment is only a formal method used by the government to accuse a defendant of a crime. It is not evidence of any kind against the defendant. The defendant is presumed to be innocent of the crime charged. Even though this Superseding Indictment has been returned against the defendant, the defendant begins this trial with absolutely no evidence against him.

The defendant has pled "Not Guilty" to this Superseding Indictment and, therefore, denies that he is guilty of the charges.

(1A O'Malley, Grenig, Lee, & Wichern, *Federal Jury Practice and Instructions*, § 13:04 (7th ed., updated July 2025).)

30

**SA030**

## INSTRUCTION NO. 24

### Presumption of Innocence, Burden of Proof, and Reasonable Doubt

I instruct you that you must presume the defendant to be innocent of the crimes charged. Thus the defendant, although accused of crimes in the Superseding Indictment, begins the trial with a "clean slate" – with no evidence against him. The Superseding Indictment, as you already know, is not evidence of any kind. The defendant is, of course, not on trial for any act or crime not contained in the Superseding Indictment. The law permits nothing but legal evidence presented before the jury in court to be considered in support of any charge against a defendant. The presumption of innocence alone, therefore, is sufficient to acquit the defendant.

The burden is always upon the prosecution to prove guilt beyond a reasonable doubt. This burden never shifts to a defendant for the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence. The defendant is not even obligated to produce any evidence by cross-examining the witnesses for the government.

It is not required that the government prove guilt beyond all possible doubt. The test is one of reasonable doubt.

Unless the government proves, beyond a reasonable doubt, that the defendant has committed each and every element of the offenses charged in the Superseding Superseding Indictment, you must find the defendant not guilty of the offenses.

(Adapted from 1A O'Malley, Grenig, Lee, & Wichern, *Federal Jury Practice & Instructions*, § 12:10 (7th ed., updated July 2025) (modified to remove definition of "reasonable doubt" and "two-inference instruction" omitted to conform with Fourth Circuit law); *see United States v. Blankenship*, 846 F.3d 663, 679 (4th Cir. 2017); *United States v. Walton*, 207 F.3d 694, 695 (4th Cir.), cert. denied 531 U.S. 865, 121 S. Ct. 158, 148 L. Ed.2d 106 (2000) (prohibiting court from defining reasonable doubt unless requested by jury); *United States v. Williams*, 152 F.3d 294, 298 (4th Cir. 1998); *United States v. Reives*, 15 F.3d 42 (4th Cir. 1994); *United States v. Oriakhi*, 57 F.3d 1290, 1300 (4th Cir. 1995) (holding that district court should not attempt to define the term "reasonable doubt" in a jury instruction absent a specific request for such a definition from the jury).)

**SA031**

INSTRUCTION NO. 25

Unanimity – Explained

Each count of the Superseding Indictment charges the defendant with a violation of federal law.  The Superseding Indictment alleges a number of separate means or methods by which the defendant is accused of violating the law.

The government is not required to prove all of the means or methods alleged in each count of the Superseding Indictment.

Each juror must agree with each of the other jurors, however, that the same means or methods alleged in each count of the Superseding Indictment was, in fact, engaged in or employed by the defendant in committing the crime charged in each count of the Superseding Indictment.  The jury need not unanimously agree on each means or method, but, in order to convict, must unanimously agree upon at least one such means or method as one engaged in by the defendant.

Unless the government has proven the same means or method to each of you, beyond a reasonable doubt, you must acquit the defendant of the crimes charged in the Superseding Indictment.

(1A O'Malley, Grenig, Lee, & Wichern, *Federal Jury Practice and Instructions*, § 13:07 (7th ed., updated July 2025).)

32

**SA032**

## INSTRUCTION NO. 26

"On or About" – Explained – DISPUTED BY DEFENSE

**SA033**

INSTRUCTION NO. 27

Consider Each Count Separately

A separate crime is charged in each count of the Superseding Indictment.  Each charge, and the evidence pertaining to it, should be considered separately by the jury.  The fact that you may find the defendant guilty or not guilty as to one of the counts should not control your verdict as to any other count.

(1A O'Malley, Grenig, Lee, & Wichern, *Federal Jury Practice and Instructions*, § 12:12 (7th ed., updated July 2025).)

**SA034**

INSTRUCTION NO. 28

Nature of the Offense – Count One

Sex Trafficking of a Minor

Count One of the Superseding Indictment charges that between on or about February 26, 2024, and on or about November 1, 2024, the defendant, MICHAEL JAIME INOFUENTES, a national of the United States, who was first arrested in the Eastern District of Virginia, in and affecting interstate and foreign commerce, attempted to and did knowingly recruit, entice, harbor, transport, obtain, maintain, patronize, and solicit by any means a minor, having had a reasonable opportunity to observe the minor and knowing and in reckless disregard that the minor had attained the age of 14 years but had not attained the age of 18 years, and would be caused to engage in a commercial sex act.

(Adapted from Superseding Indictment; 18 U.S.C. § 1591(a)(1), (b)(2) and (c); 1594(a); 1596(a)(1) and (a)(2).)

35

**SA035**

INSTRUCTION NO. 29

Statute Defining the Offense – Count One

Sex Trafficking of a Minor

Section 1591 of Title 18 of the United States Code, provides, in part for sex trafficking of

a minor, that:

(a) Whoever knowingly —

(1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, … obtains, … maintains, patronizes, or solicits by any means a person;

knowing, or, … in reckless disregard of the fact, … that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act,

(b)

(2) [where] … the person recruited, enticed, harbored, transported, … obtained, … patronized, or solicited had attained the age of 14 years but had not attained the age of 18 years…

[shall be guilty of an offense.]

Section 1591(c) of Title 18 of the United States Code, provides that:

(c) In a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person so recruited, enticed, harbored, transported … obtained, maintained, patronized, or solicited, the Government need not prove that the defendant knew, or recklessly disregarded the fact, that the person had not attained the age of 18 years.

Section 1594(a) of Title 18 of the United States Code provides that it is an offense to

attempt to violate section 1591.

Section 1596 of Title 18 of the United States Code, in part provides for additional

jurisdiction in certain trafficking offenses and that:

a) In general. --In addition to any domestic or extra-territorial jurisdiction otherwise provided by law, the courts of the United States have extra-territorial jurisdiction over

36

**SA036**

any offense (or any attempt or conspiracy to commit an offense) under Section … 1591 if—

(1) an alleged offender is a national of the United States or an alien lawfully admitted for permanent residence (as those terms are defined in section 101 of the Immigration and Nationality Act …); or

(2) an alleged offender is present in the United States, irrespective of the nationality of the alleged offender.

(18 U.S.C. § 1591(a)(1) and (c); 1594(a); 1596(a)(1) and (a)(2).)

37

**SA037**

INSTRUCTION NO. 30

Essential Elements of the Offense – Count One

Sex Trafficking of a Minor

In order to sustain its burden of proof for the crime of sex trafficking of a minor involving the means of recruiting, enticing, harboring, transporting, obtaining, maintaining, patronizing, or soliciting a minor as charged in Count One of the Superseding Indictment, the government must prove the following elements of the offense beyond a reasonable doubt:

> One:   That the defendant knowingly recruited, enticed, harbored, transported, obtained, maintained, patronized, or solicited by any means a minor, or attempted to do so;
>
> Two:   That the Defendant knew, or recklessly disregarded the fact, that the person had not attained the age of 18 years and would be caused to engage in a commercial sex act; and
>
> Three: That the defendant did so in or affecting interstate or foreign commerce.

The government has further alleged that the person recruited, enticed, harbored, transported, obtained, maintained, patronized, or solicited had attained the age of 14 years but had not attained the age of 18 years at the time of such offense.

(18 U.S.C. § 1591(a)(1) and (c); *Eleventh Circuit Pattern Jury Instructions, Criminal*, No. 63 (2024) (third element of offense – statutory language in § 1591(c); *United States v. Banker*, 876 F.3d 534-36 (4th Cir. 2017) (affirming conviction that the district did not err in instructing the jury as to the defendant's knowledge that the victim was a minor or that the defendant demonstrated "reckless disregard" of the victim's age under §1591(a) and § 1591(c); *United States v. Chapman*, 589 F. App'x 159, 160 (4th Cir. 2015); *United States v. Phea*, 755 F.3d 255, 262–63 (5th Cir. 2015); *United States v. Garcia-Gonzalez*, 714 F.3d 306, 312 (5th Cir. 2013) (approving a jury instruction listing the elements of Section 1591(a)); *United States v. Robinson*, 702 F.3d 22, 31-33 (2d Cir. 2012) ("In a prosecution under § 1591, the government may satisfy its burden of proof with respect to the defendant's awareness of the victim's age by proving any of the following beyond a reasonable doubt: (1) the defendant knew that the victim was under eighteen; (2) the defendant recklessly disregarded the fact that the victim was under eighteen; or (3) the defendant had a reasonable opportunity to observe the victim."); *United States v. Duong*, 848 F.3d 928, 934 (10th Cir. 2017) (same); *United States v. Copeland*, 820 F.3d 809, 813 (5th Cir. 2016) (same); *United States v. Booker*, 447 Fed.Appx. 726, 727 (7th Cir. 2011) ("Under the statute, lack of knowledge of the minor's age is not a defense if the defendant had 'a reasonable opportunity to observe' the victim."); *United States v. Brooks*, 610 F.3d 1186, 1196–97 (9th Cir. 2010); *United*

38

**SA038**

*States v. Elbert*, 561 F.3d 771, 777 (8th Cir. 2009) ("the government was only required to prove defendant knowingly recruited, enticed, harbored, transported, provided, or obtained a minor, knowing the minor would be caused to engage in commercial sex acts").)

**SA039**

INSTRUCTION NO. 31

"Recruit," "Entice," "Harbor," "Transport,"
"Obtain," "Maintain" "Patronize" & "Solicit"-  Defined – DISPUTED BY DEFENSE

40

**SA040**

INSTRUCTION NO. 32

Reckless Disregard - Defined

The phrase "reckless disregard," as used in these instructions, means that the defendant deliberately closed his eyes to what would otherwise have been obvious to him, i.e., that the person recruited, enticed, harbored, transported, obtained, maintained, patronized, or solicited had not attained the age of 18 years. No one can avoid responsibility for a crime by deliberately ignoring what is obvious. A finding beyond a reasonable doubt of an intent of the defendant to avoid knowledge or enlightenment would permit the jury to infer knowledge. Stated another way, a defendant's knowledge of a particular fact may be inferred from a deliberate or intentional ignorance or deliberate or intentional blindness to the existence of that fact.

It is, of course, entirely up to you as to whether you find any reckless disregard or deliberate closing of the eyes and the inferences to be drawn from any such evidence.

You may not infer that a defendant had knowledge, however, from proof of a mistake, negligence, carelessness, or a belief in an inaccurate proposition.

(Modified 2B O'Malley, Grenig, Lee, & Wichern, *Federal Jury Practice and Instructions*, § 61:11 (7th ed., updated July 2025) (instruction common to immigration related crimes); *United States v. Gonsalves*, 435 F.3d 64, 70 (1st Cir. 2006) (Approving the following jury instruction defining "reckless disregard" in a prosecution for tampering with consumer products: "The phrase 'reckless disregard' as used in these instructions, means that the defendant *deliberately closed his eyes* to what would otherwise have been obvious to him. No one can avoid responsibility for a crime by *deliberately ignoring* what is obvious. A finding beyond a reasonable doubt of *an intent of the defendant to avoid knowledge or enlightenment* would permit the jury to infer knowledge.").)

41

**SA041**

INSTRUCTION NO. 33

Reasonable Opportunity to Observe the Minor

If the government proves beyond a reasonable doubt that the defendant had a reasonable opportunity to observe the minor, then the government does not have to prove that the defendant knew or recklessly disregarded that the minor had not attained the age of 18 years.

(18 U.S.C. § 1591(c); *United States v. Chapman*, 589 F. App'x 159, 160 (4th Cir. 2015); *United States v. Phea*, 755 F.3d 255,262-63 (5th Cir. 2015); *United States v. Robinson*, 702 F.3d 22, 31-33 (2d Cir. 2012); *United States v. Booker*, 2011 WL 5924380, at *1 (7th Cir. Nov. 16, 2011) (unpublished) ("Under the statute, lack of knowledge of the minor's age is not a defense if the defendant had 'a reasonable opportunity to observe' the victim.").)

INSTRUCTION NO. 34

"Commercial Sex Act" – Defined - DISPUTED BY DEFENSE

43

**SA043**

INSTRUCTION NO. 35

"Interstate Commerce," "Foreign Commerce," & "In or Affecting Interstate Commerce" –
Defined - Count One

Interstate or foreign commerce refers to movement from one state to another, or between the United States and another country.

To satisfy this element, the government must prove that the defendant's conduct affected interstate or foreign commerce in any way, no matter how minimal. You do not have to find that the defendant's conduct actually affected interstate or foreign commerce if you find that the defendant's conduct would have affected interstate or foreign commerce if the defendant had successfully and fully completed his actions. Finally, the government is not required to prove that the defendant knew he was affecting interstate or foreign commerce.

Interstate or foreign commerce includes the use of the Internet.

(Adapted from 2 *Modern Federal Jury Instructions–Criminal*, P 47A.03, Instr. 47A-23 (2025) (modified); *see also* 18 U.S.C. § 10; *Hoke v. United States*, 227 U.S. 308, 320 (1913) ("Commerce among the states, we have said, consists of intercourse and traffic between their citizens, and includes the transportation of persons and property."); *United States v. Gray-Sommerville*, 618 Fed. Appx. 165, 168 (4th Cir. 2015)("It is beyond debate that the internet and email are facilities or means of interstate commerce."); *United States v. Myers*, 430 F. App'x 812, 815 (11th Cir. 2011) ("the government is not required to prove beyond a reasonable doubt that a § 1591(a)(1) defendant knew that his actions affected interstate commerce"); *United States v. Anderson*, 560 F.3d 275, 278 (5th Cir. 2009) (for purposes of 18 U.S.C. § 1591, it is not necessary for the government to show that the defendant actually intended or anticipated an effect on interstate commerce and the effect on interstate commerce may be minimal); *United States v. Santos*, 352 F. App'x. 223, 224 (9th Cir. 2009) (evidence of defendant's use of a cellular telephone service provider that provided interstate service was sufficient to establish the interstate commerce element of 18 U.S.C. § 1591); *United States v. MacEwan*, 445 F.3d 237, 245–46 (3d Cir. 2006) (internet is an instrumentality and channel of interstate commerce); *United States v. Kay*, 451 F. Supp. 2d 775, 782 (E.D. VA 2006) ("A transmission of communication by means of the telephone or internet constitutes the use of a facility of interstate commerce."); *United States v. Drury*, 396 F.3d 1303, 1312–13 (11th Cir. 2005) (government need not prove that the defendant knew his conduct was in or affected interstate commerce); *United States v. Bollin*, 264 F.3d 391, 408 (4th Cir. 2001) (only a *de minimis* effect on interstate commerce required to establish a violation of 18 U.S.C. § 1956); *United States v. Darby*, 37 F.3d 1059, 1067 (4th Cir. 1994) ("Numerous cases have held that criminal statutes based on the government's interest in regulating interstate commerce do not generally require that an offender have knowledge of the interstate nexus of his actions.").

44

**SA044**

INSTRUCTION NO. 36

Nature of the Offense – Count Two

Engaging in Illicit Sexual Conduct in a Foreign Place

Count Two of the Superseding Indictment charges that between on or about February 26, 2024, and on or about November 1, 2024, the defendant, MICHAEL JAIME INOFUENTES, a citizen of the United States, who was first arrested in the Eastern District of Virginia, traveled in foreign commerce from the United States to Colombia, and resided, temporarily and permanently, in Colombia, and engaged, and attempted to engage, in illicit sexual conduct with a person under 18 years of age.

(Adapted from Superseding Indictment; 18 U.S.C. § 2423(c), (f), and (g)(2).)

**SA045**

INSTRUCTION NO. 37

<u>Statute Defining the Offense – Count Two – DISPUTED BY DEFENSE</u>

<u>Engaging in Illicit Sexual Conduct in a Foreign Place</u>

**SA046**

INSTRUCTION NO. 38

Essential Elements of the Offense – Count Two

Engaging in Illicit Sexual Conduct in a Foreign Place

In order to sustain its burden of proof for engaging in illicit sexual conduct in a foreign

place as charged in Count Two of the Superseding Indictment, the government must prove the

following essential elements beyond a reasonable doubt:

> One: That the defendant was a citizen of the United States;
>
> Two: That the defendant traveled in foreign commerce from the United States to the Colombia, or resided, temporarily or permanently, in Colombia;
>
> Three: That the defendant engaged in any commercial sex act with a person under 18 years of age, or attempted to do so.

(18 U.S.C. § 2423(c), (f), and (g)(2); Ruschky & Shealy, *Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina*, p. 459 (2024 Online Edition).)

47

**SA047**

INSTRUCTION NO. 39

"Travel in Foreign Commerce" – Explained

To "travel in foreign commerce" means that the defendant moved from a place within the United States to a place outside the United States.

Travel can continue until the person returns to their place of origin or permanently resettles elsewhere.

(Ruschky & Shealy, *Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina*, p. 459 (2024 Online Edition); 18 U.S.C. § 10; Pattern Crim. Jury Instr. 11th Cir. OI O93.3 (2024); *United States v. Schmidt*, 845 F.3d 153, 157–58 (4th Cir. 2017) (second paragraph.)

48

**SA048**

INSTRUCTION NO. 40

Attempt – Explained – Counts One & Two – DISPUTED BY DEFENSE

SA049

INSTRUCTION NO. 41

Venue

The trial of all offenses begun or committed upon the high seas, or elsewhere out of the

jurisdiction of any particular State or district, shall be in the district in which the offender is

arrested or is first brought.

(18 U.S.C. §3238; *United States v. Erdos*, 474 F.2d 157, 160 (1972) (venue shall be in the
district within the United States where the offender "is arrested or first brought."); last paragraph
adapted from *United States v. Ebersole*, 411 F.3d 517, 524 (4th Cir. 2005) ("The prosecution
bears the burden of proving venue by a preponderance of the evidence . . . ."), and *United States
v. Robinson*, 275 F.3d 371, 378 (4th Cir. 2001) (same).)

50

**SA050**

INSTRUCTION NO. 42

"Knowingly" – Defined

The term "knowingly" as used in these instructions to describe the alleged state of mind of the defendant means that he was conscious and aware of his actions, realized what he was doing or what was happening around him, and did not act or fail to act because of ignorance, mistake, or accident.

(1A O'Malley, Grenig, Lee, & Wichern, *Federal Jury Practice and Instructions*, § 17:04 (7th ed., updated July 2025).)

51

**SA051**

INSTRUCTION NO. 43

Motive – Explained – DISPUTED BY DEFENSE

**SA052**

INSTRUCTION NO. 44

Proof of Knowledge or Intent

The intent of a person or the knowledge that a person possesses at any given time may not ordinarily be proved directly because there is no way of directly scrutinizing the workings of the human mind. In determining the issue of what a person knew or what a person intended at a particular time, you may consider any statements made or acts done by that person and all other facts and circumstances received in evidence which may aid in your determination of that person's knowledge or intent.

You may infer, but you are certainly not required to infer, that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted. It is entirely up to you, however, to decide what facts to find from the evidence received during this trial.

(1A O'Malley, Grenig, Lee, & Wichern, *Federal Jury Practice and Instructions*, § 17:07 (7th ed., updated July 2025).)

53

**SA053**

INSTRUCTION NO. 45

Verdict – Election of foreperson – Duty to deliberate – Unanimity – Punishment –

Form of verdict – Communication with the Court

Upon retiring to your jury room to begin your deliberation, you must elect one of your members to act as your foreperson. The foreperson will preside over your deliberations and will be your spokesperson here in court.

Your verdict must represent the collective judgment of the jury. In order to return a verdict, it is necessary that each juror agree to it. Your verdict, in other words, must be unanimous.

It is your duty as jurors to consult with one another and to deliberate with one another with a view towards reaching an agreement if you can do so without violence to individual judgment. Each of you must decide the case for himself and herself, but do so only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and to change your opinion if convinced it is erroneous. Do not surrender your honest conviction, however, solely because of the opinion of your fellow jurors or for the mere purpose of thereby being able to return a unanimous verdict.

Remember at all times that you are not partisans. You are judges—judges of the facts of this case. Your sole interest is to seek the truth from the evidence received during the trial.

Your verdict must be based solely upon the evidence received in the case. Nothing you have seen or read outside of court may be considered. Nothing that I have said or done during the course of this trial is intended in any way to somehow suggest to you what I think your verdict should be. Nothing said in these instructions and nothing in any form of verdict, is to suggest or convey to you in any way or manner any intimation as to what verdict I think you

54

**SA054**

should return. What the verdict shall be is the exclusive duty and responsibility of the jury.  As I have told you many times, you are the sole judges of the facts.

The punishment provided by law for the offense[s] charged in the Superseding Indictment is a matter exclusively within the province of the Court and should never be considered by the jury in any way in arriving at an impartial verdict as to the offense[s] charged.

[A] [F]orm[s] of verdict[s] *[has] [have]* been prepared for your convenience and reads as follows:

*[The verdict or a summary can be read to the jury]*

You will take *[this] [these]* form[s] to the jury room and, when you have reached unanimous agreement as to your verdict[s], you will have your foreperson write your verdict[s] on the form[s], date and sign the form[s], and then return with your verdict[s] to the courtroom.

If it becomes necessary during your deliberations to communicate with the Court, you may send a note, signed by your foreperson or by one or more members of the jury, through the Court Security Officer.  No member of the jury should ever attempt to communicate with the Court by any means other than a signed writing and the Court will never communicate with any member of the jury concerning the evidence, your opinions, or the deliberations other than in writing or orally here in open court.

You will note from the oath about to be taken by the Court Security Officer that they too, as well as all other persons, are forbidden to communicate in any way or manner with any member of the jury concerning the evidence, your opinions, or the deliberations.

55

**SA055**

Bear in mind also that you are never to reveal to any person—not even to the Court—how the jury stands, numerically or otherwise, on the question of whether or not the government has sustained its burden of proof until after you have reached a unanimous verdict.

(1A O'Malley, Grenig, Lee, & Wichern, *Federal Jury Practice and Instructions*, § 20.01 (7th ed., updated July 2025) (Court Security Officer substituted for bailiff).)

56

**SA056**

INSTRUCTION NO. 46

Exhibits During Deliberations

I am sending the exhibits which have been received in evidence during the trial with you as you retire for your deliberations.

(Derived from 1A O'Malley, Grenig, Lee, & Wichern, *Federal Jury Practice and Instructions*, § 20:04 (7th ed., updated Feb. 2023) (modified to state exhibits are being provided to the jurors during deliberations).)

57

**SA057**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No. 1:25-cr-00005** |
| **MICHAEL JAIME INOFUENTES,** | ) | **The Honorable Patricia T. Giles** |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MR. INOFUENTES' PROPOSED JURY INSTRUCTIONS

Defendant Michael Inofuentes, by and through undersigned counsel, respectfully objects to Government Jury Instructions 26, 31, 34, 37, 40, and 43. Mr. Inofuentes submits the attached proposed jury instructions as alternatives to those submitted by the government and requests the Court instruct the jury on the law as contained in these instructions. Mr. Inofuentes reserves the right to supplement, withdraw, or modify these requests depending upon the evidence presented, the arguments of counsel, and the requests for instructions, if any, from the government.

Dated: September 2, 2025

Respectfully submitted,

MICHAEL JAIME INOFUENTES
By Counsel

/s/ Christian R. Burne
Christian Randolph Burne (VSB No. 101227)
Greenberg Traurig, LLP
1750 Tysons Boulevard, Suite 1000
McLean, VA 22102
Telephone: 703.903.7577
Email: christian.burne@gtlaw.com

Charles E. James, Jr. (VSB No. 46310)
WILLIAMS MULLEN, P.C.
200 South 10th Street, Suite 1600

**SA058**

Richmond, VA 23219
Office: 804.420.6529
Fax:    804.420.6507
Email: cjames@williamsmullen.com

Scott Armstrong, Esquire
McGovern Weems, PLLC
4315 45h Street, Suite 200, NW
Washington, D.C. 20016
DC Bar No. 993851
(admitted *pro hac vice*)
Telephone: (202) 978-1267
Email: scott@mcgovernweems.com

*Counsel for Defendant*

**SA059**

## INSTRUCTION NO. 26

### "On or About" - Explained

The Superseding Indictment charges that the offenses alleged in each of the counts were committed "on or about" a certain date.

Although it is necessary for the government to prove beyond a reasonable doubt that the offenses charged in each of the counts were committed on dates reasonably near the dates alleged in each of the counts of the Superseding Indictment, it is not necessary for the government to prove that the offenses were committed precisely on the dates charged.

(1A O'Malley, Grenig, Lee, & Wichern, *Federal Jury Practice and Instructions*, § 13:05 (7th ed., updated July 2025)

**SA060**

INSTRUCTION NO. 31

"Recruit," "Entice," "Harbor," "Transport,"
"Obtain," "Maintain" "Patronize" & "Solicit"-  Defined

The words recruit, entice, harbor, transport, obtain, maintain, patronize, and solicit, should be given their ordinary meaning. The defendant must have taken one of these actions knowing that a commercial sex act would result.

(18 U.S.C. § 1591(a)(1); *Smith v. United States*, 508 U.S. 223, 228 (1993) ("When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning.")

**SA061**

INSTRUCTION NO. 34

"Commercial Sex Act" - Defined

The term "commercial sex act" means any sex act, on account of which anything of value is given to or received by any person. This means that the government must prove that the defendant provided something of value and expected a sex act to occur in return. In other words, there must be a causal relationship between the sex act and the exchange of something of value.

You are advised that the age of consent in Colombia is fourteen years old.

(18 U.S.C. § 1591(e)(3); *United States v. Marcus*, 487 F.Supp.2d 289, 306–07 (E.D.N.Y. 2007) *rev'd on other grounds,* 538 F.3d 97 (2d Cir. 2008) (to satisfy the definition of commercial sex, there "needs to be a causal relationship between the sex act and an exchange of an item of value"); *Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*, No. 10-CV-4124, 2013 WL 6816174 (W.D. Ark. Dec. 24, 2013) (interpreting 18 U.S.C. § 1591(e)(3) to require causal relationship between sex act and thing of value); on age of consent in Colombia, *see* Inofuentes' Notice of Foreign Law, Dkt No. 134; Article 208, Ley 599 de 2000 (Código Penal), available at https://www.funcionpublica.gov.co/eva/gestornormativo/norma.php?i=6388.).

INSTRUCTION NO. 37

Statute Defining the Offense – Count Two

Engaging in Illicit Sexual Conduct in a Foreign Place

Section 2423(c) of Title 18 of the United States Code provides that:

> --Any United States citizen … who travels in foreign commerce or resides, either temporarily or permanently, in a foreign country, and engages in any illicit sexual conduct with another person,

[shall be guilty of an offense.]

Section 2423(f) of Title 18 of the United States Code provides that it is an offense to

attempt to violate section 2423(c).

As charged in Count Two, the term "illicit sexual conduct" means any commercial sex

act (as defined in section 1591) with a person under 18 years of age.

The term "commercial sex act" means any sex act, on account of which anything of value

is given to or received by any person. This means that the government must prove that the

defendant provided something of value and expected a sex act to occur in return. In other words,

there must be a causal relationship between the sex act and the exchange of something of value.

(18 U.S.C. § 2423(c), (f), and (g)(2) and 18 U.S.C. 1591(e)(3); *United States v. Marcus*, 487 F.Supp.2d 289, 306–07 (E.D.N.Y. 2007) *rev'd on other grounds,* 538 F.3d 97 (2d Cir. 2008) (to satisfy the definition of commercial sex, there "needs to be a causal relationship between the sex act and an exchange of an item of value"); *Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*, No. 10-CV-4124, 2013 WL 6816174 (W.D. Ark. Dec. 24, 2013) (interpreting 18 U.S.C. § 1591(e)(3) to require causal relationship between sex act and thing of value)

INSTRUCTION NO. 40

Attempt – Explained – Counts One & Two

The government has alleged as charged in Count One of the Superseding Indictment that the defendant also attempted to sex traffic a person under 18, meaning that he can be found guilty if you find that he either committed the crime or attempted to commit the crime.

The government has alleged as charged in Count Two of the Superseding Indictment that the defendant also attempted to engage in illicit sexual conduct in a foreign place, meaning that he can be found guilty if you find that he either committed the crime or attempted to commit the crime.

In order to sustain its burden of proof for the crime of attempt as charged in these counts of the Superseding Indictment, the government must prove the following two (2) essential elements beyond a reasonable doubt:

One: The defendant intended to commit the crime of these violations, the elements of the offense for which have just been read to you; and

Two: Thereafter, the defendant did an act constituting a substantial step towards the commission of that crime that is strongly corroborative of the defendant's criminal purpose.

A defendant may be found guilty of attempting to commit a federal crime even though no one actually did all of the acts necessary in order to commit that crime. A defendant may not be found guilty of attempting to commit any crime, however, merely by thinking about it or even by making some plans or some preparation for the commission of a crime. Mere preparation does not constitute an attempt to commit a crime.

**SA064**

Conduct which violates the law as an attempt is what is referred to as "a substantial step" towards the commission of a crime. When a "substantial step" to commit the crime described is combined with an intent to commit that crime, an attempt has occurred.

In determining whether or not the defendant took "a substantial step" towards the commission of a crime, you must consider all of the evidence admitted in the case concerning that defendant and the alleged commission of that crime. The law requires more than speech alone to constitute a substantial step, and instead requires the sort of affirmative conduct that would have resulted in a crime if it had not been extraneously interrupted.

In order to find the defendant guilty of committing the crime of attempted , the government must prove beyond a reasonable doubt, that the mental processes of the defendant passed from the stage of thinking about the crime of  to actually intending to commit that crime and that the conduct of the defendant went beyond and passed beyond the stage of mere preparation to some firm, clear, and undeniable action to accomplish that objective.

.

(2 O'Malley, Grenig, Lee, & Wichern, *Federal Jury Practice and Instructions*, § 21:02 (7th ed., updated July 2025) ("There is no general 'attempt' statute in the federal criminal code. In a prosecution under a specific federal criminal provision which includes its own separate attempt provision, that statute should be read to the jury".); *id.* at § 21:03 (essential elements) and § 21:04 (substantial step - last four paragraphs); *United States v. Engle*, 676 F.3d 405, 423 (4th Cir. 2012); added "mere preparation" language from *United States v. Taylor*, 979 F.3d 203, 207 (4th Cir. 2020); added last sentence about speech in substantial step discussion based on *United States v. Neal*, 78 F.3d 901, 906 (4th Cir. 1996) (citing *United States v. Delvecchio*, 816 F.2d 859, 862 (2d Cir. 1987) ("[A] verbal agreement alone, without more, is insufficient as a matter of law to support an attempt conviction")).

INSTRUCTION NO. 43

Motive - Explained

Intent and motive are different concepts and should never be confused.

Motive is what prompts a person to act or fail to act. Intent refers only to the state of mind with which the act is done or omitted.

Personal advancement and financial gain, for example, are two well-recognized motives for much of human conduct. These praiseworthy motives, however, may prompt one person to voluntary acts of good while prompting another person to voluntary acts of crime.

Good motive alone is never a defense where the act done or omitted is a crime. The motive of the defendant is, therefore, immaterial except insofar as evidence of motive may aid in the determination of state of mind or the intent of the defendant. You may consider evidence of the defendant's motive if you find it is relevant to establishing his mental state at the time of the alleged offenses.

(1A O'Malley, Grenig, Lee, & Wichern, *Federal Jury Practice and Instructions*, § 17:06 (7th ed., updated July 2025); added last sentence from Comment to Third Circuit Model Criminal Jury Instructions § 5.04 ("Motive Explained"), endorsed by *United States v. Baroni*, 909 F.3d 550, 583-4 (3d Cir. 2018), *rev'd on other grounds sub. nom. Kelly v. United States*, 590 U.S. 391 (2020).)

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** | **Case No. 1:25-CR-5** |
| **v.** | **Hon. Patricia T. Giles** |
| **MICHAEL JAIME INOFUENTES,** | **Trial Date: September 9, 2025** |
| *Defendant.* |  |

<u>**DEFENDANT'S PROPOSED VERDICT FORM**</u>

Defendant Michael Inofuentes, by and through counsel, respectfully requests that the

Court use the attached verdict form at trial in the above captioned matter.

Dated: September 2, 2025              Respectfully submitted,

MICHAEL JAIME INOFUENTES
By Counsel

<u>/s/ Christian R. Burne</u>
Christian Randolph Burne (VSB No. 101227)
Greenberg Traurig, LLP
1750 Tysons Boulevard, Suite 1000
McLean, VA 22102
Telephone: 703.903.7577
Email: christian.burne@gtlaw.com

Charles E. James, Jr. (VSB No. 46310)
WILLIAMS MULLEN, P.C.
200 South 10th Street, Suite 1600
Richmond, VA 23219
Office: 804.420.6529
Fax:    804.420.6507
Email: cjames@williamsmullen.com

Scott Armstrong, Esquire
McGovern Weems, PLLC

**SA067**

Case 1:25-cr-00005-PTG   Document 146   Filed 09/02/25   Page 2 of 4 PageID# 1036

4315 45h Street, Suite 200, NW
Washington, D.C. 20016
DC Bar No. 993851
(admitted *pro hac vice*)
Telephone: (202) 978-1267
Email: scott@mcgovernweems.com

*Counsel for Defendant*

SA068

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:25-CR-5 |
| v. | Hon. Patricia T. Giles |
| MICHAEL JAIME INOFUENTES, | Trial Date:  September 9, 2025 |
| *Defendant*. | |

<u>VERDICT FORM</u>

<u>COUNT ONE</u>

With respect to Count One, Sex Trafficking of a Minor:

We, the jury, unanimously find the Defendant, MICHAEL JAIME INOFUENTES:

Not Guilty: _____          Guilty: _____

*If you find the defendant Guilty as to COUNT ONE, please indicate whether A or B has been proved. If you find the defendant Not Guilty as to COUNT ONE, skip these questions and move to COUNT TWO.*

A.  Do you unanimously find the defendant Guilty of the <u>completed offense</u> of Sex Trafficking of a Minor?

Yes _____          No _____

B.  Do you unanimously find that the defendant Guity of the <u>attempted offense</u> of Sex Trafficking of a Minor?

Yes _____          No _____

**SA069**

<u>COUNT TWO</u>

With respect to Count Two, Engaging in Illegal Sexual Conduct in a Foreign Place:

We, the jury, unanimously find the Defendant, MICHAEL JAIME INOFUENTES:

Not Guilty: _____          Guilty: _____

*If you find the defendant Guilty as to COUNT TWO, please indicate whether A or B has been proved. If you find the defendant Not Guilty as to COUNT TWO, skip these questions and conclude your deliberations.*

A.  Do you unanimously find the defendant Guilty of the <u>completed offense</u> of Engaging in Illegal Sexual Conduct in a Foreign Place?

Yes _____          No _____

B.  Do you unanimously find the defendant Guity of the <u>attempted offense</u> of Engaging in Illegal Sexual Conduct in a Foreign Place?

Yes _____          No _____

_____

Foreperson

**SA070**

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 1:25-CR-5 (PTG) |
| MICHAEL JAIME INOFUENTES, | Sentencing: Feb. 26, 2026 |
| *Defendant*. | |

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

In 2024, the defendant, a 45-year-old U.S. citizen, made 14 trips from the United States to Medellin, Colombia, where he repeatedly solicited and paid a homeless, drug-addicted, 15-year-old girl for sex. The defendant's crimes against MV1, who was but one of his victims, were unearthed following a border search of the defendant's cell phone upon his return to the U.S. from Colombia. That border search, plus subsequent forensic examination, revealed his contact with another Colombian minor, who later disclosed that when she was 13 or 14 the defendant picked her up on the street and took her to a hotel where he planned to have sex with her for money. Since this disclosure, two more Colombian girls have come forward and disclosed that the defendant paid them for sex when they were 15 and 17, respectively.

The defendant – self-admittedly sexually attracted to minor girls – found easy targets for his proclivity in Medellin, a city rife with minor sex workers and adult men looking to take advantage of their desperation. For the defendant, these girls satisfied a desire at very little cost (to him). Indeed, the defendant summed up the situation to investigators in straightforward terms: his abuse and exploitation of these young girls was simply a matter of "convenience or

1

**SA071**

circumstances" – although he is "old now" "**these people who are available are young**."

Exhibit 1 (excerpt from defendant's November 1, 2024, interview with HSI-Miami).

Notwithstanding the severity of his crimes, and the unearthing of additional victims, the defendant has shown no contrition.  Instead, he has attempted to shirk responsibility at every turn—claiming, variously, that he never had sex with MV1 (despite multiple pregnancy scares); that they had a relationship but he was unaware MV1 was a sex worker (though he abandoned this lie at trial); and finally, at trial, claiming they had sex, he knew she was a sex worker, but they were in love and he only wanted to pull her out of her miserable lifestyle (by soliciting and paying her for commercial sex).  He even claimed that MV1, who was homeless, frequently hungry, and drug-addicted, *wanted* to be a sex worker so she could enjoy nights out with her girlfriends.  While his excuses are muddled, the through-line is clear: he lacks a scintilla of remorse.

A federal jury saw through the defendant's self-serving rationalizations and half-truths and found him guilty of child sex trafficking and illicit sexual conduct in a foreign country.  The U.S. Probation Office has calculated the applicable sentencing range for his offenses under the U.S. Sentencing Guidelines ("Guidelines") as 324 – 405 months in prison.[1]

The defendant's conduct requires a punishment commensurate with the nature and circumstances of his offenses, one that is severe enough to deter the defendant from ever sexually offending again, to ensure the protection of the public, and to instill confidence in the public that such conduct will not be tolerated by our federal courts.  Accordingly, the government recommends that the Court impose a sentence of 405 months' imprisonment and a lifetime term of supervised release.

---

[1] If the Court applies either of the two-level enhancements under U.S.S.G. §§ 3C1.1 (perjury) or 3A1.1(b) (vulnerable victim), the defendant's Guidelines range is life in prison.

**BACKGROUND**

I.    **The defendant traveled to Colombia and engaged in commercial sex with MV1 and three other minor girls.**

In early 2024, the defendant met MV1, then 15, while traveling in Medellin. By all accounts, it appears that the first time the defendant met MV1 was also the first time he paid her for sex. *See* GX205, 205-A (MV1: "look, when we met you know that I did not charge you cheaply"); Trial Tr. 77-83, Sept. 11, 2025 (defendant admitted the first time he met MV1 was on the street, where he picked her up, took her to dinner, then brought her back to his apartment and had sex with her). After their first encounter, the defendant solicited and paid MV1 for sex on at least three more occasions between March 2024 and April 2024. *See e.g.,* GX231, 411 (March 26-27, 2024); GX 208, 209, 215 (March 4, 2024); GX 228, 233 (April 1, 2024).

From the very beginning of his association with MV1, the defendant knew four things about her: (i) she was a minor; (ii) she was homeless and destitute; (iii) she was addicted to drugs; and (iv) she was a sex worker.

Indeed, the defendant had numerous conversations with MV1 about her involvement in sex work and her exceedingly difficult life in Medellin as a young girl without a support system or any other means for survival. Between February 2024 and April 2024, MV1 sent the defendant the following messages, underscoring her dire living situation:

- "you know that I have to work because you haven't paid for my room nor have I eaten all day" "So what do you want me to do I have to work." GX 201-A at US-4073.

- "They're asking me what I'm going to do otherwise they'll kick me out of the hotel" "What are we going to do" GX 201-A at US-3946.

- "I'm hungry I haven't eaten I ate yesterday): and that's it" GX 201-A at US-3972.

3

**SA073**

Case 1:25-cr-00005-PTG    Document 208    Filed 02/19/26    Page 4 of 29 PageID# 2410

- "And over here they've also started hassling about the payment for the room" *Id.* at US-3973.

- "I don't know what to do" "I think they're going to kick me out of the room" *Id.* at US-3974.

- "They're going to kick me out" "If I don't pay I have to pack" "I'll be on the street" (to this, the defendant replied, "What part of the street[?]") GX 201-A at US-3990.

- "I haven't even paid for the room" "I don't know what to do" "you know that I have to work because you haven't paid for my room nor have I eaten all day" "so what do you want me to do I have to work" GX 201-A at US-4067, 4073.

- "I feel lonely" "I don't have friends" "They are there only when I have money" "Otherwise I am alone" "That hurts" GX 201-A at US-4050-4051.

- "I'm going to kill myself" "I can't stand this anymore" (to which the defendant responded, "But have an ice cream") "I don't have money I don't have anything" "I'm alone" "They've all left me alone" GX 201-A at US-4591-4592.

- "They hit me" "They robbed me of what I had for the room and food and I know they stole the other cell" "I want to die" GX 201-A at US-4055-4057.

- "I'm going to get dressed up" "I don't have any other work and I'm hungry and I have to pay for the room." GX 201-A at US-4580.

For MV1, "work" only ever meant sex work. *See* Trial Tr. 61, Sept. 11, 2025 (defendant: "She wants to go work, which is indicating sex for money[.]"); Trial Tr. 88, Sept. 11, 2025 (Question: "After the 3rd of March whenever she said, "I'm working, I need to work," you knew

4

**SA074**

that she meant prostitution, right?" Defendant: "Yes."); *see also id*. at 88:7-10; *id*. at 91; *id*. at 104; *id*. at 106-107; *id*. at 112.

Between February 2024 and March 2024, MV1 sent the defendant the following messages about her drug addiction:

- "I only have sex with you" "And I won't huff glue anymore I swear" GX 209.

- On March 5, 2024, in response to the defendant's question about where she was before calling him, MV1 said, "Huffing glue on the street." GX 201-A at US-4046.

- "I'm going to get dressed in a bit to see if I go out to distract myself and buy some pills for anxiety." GX 201-A at US-4119.

At trial, the defendant admitted what was already clear from his messages: he knew MV1 was a minor and he knew shortly after meeting her that she was engaged in sex work. Trial Tr. 19:16-25, Sept. 11, 2025; *id*. at 20:8-16; *id.* at 85:12-25; *id*. at 86:8-20; *see also* GX 206 (MV1's March 7, 2024 voice note to the defendant); GX 206-A ("don't blame me for things that you, knowing that I have to work and keep working because if you don't, if you don't send me money… tell me, how will I support myself, Michael?"); Trial Tr. 87:15-23, Sept. 11, 2025 (defendant admitted he knew within a week of meeting MV1 that she "had worked for sex, yes, and that she will be needing to work for sex because she needed money.").

On the evening of March 3, 2024, MV1 told the defendant she would not "work" "[u]ntil you come." GX 209. Later that night, just a few hours after MV1 told the defendant she had not eaten since the day before and was at risk of being kicked out of her hotel room, the defendant told her, "Sleep with me this last night at 1am" "I leave for the airport at 9am[.]" GX 209; GX 201-A at US-3972-3897. MV1 agreed she would and asked where they should meet. *Id*. The

5

**SA075**

defendant said he was "at the other hotel[.]"  GX 209.  The following morning, just before 1am, the defendant sent MV1 proof of a money transfer for 80,000 COP (approximately $20 USD).  *Id.*; GX 208.  Two weeks later, the defendant asked MV1, "Are you pregnant or did you get your period already?"  GX 215.  MV1 said, "Oofff it came a while back and it's even over[.]"  *Id.*  The defendant replied, "Mm ok" "Thank God[.]"  *Id.*

On April 1, 2024, a few minutes after MV1 told the defendant she had to go work because she was hungry and needed money to pay for her room, the defendant again solicited MV1 for commercial sex.  GX 228.  The defendant asked MV1 what hotel she could use for "work" in Botero.  *Id.*  MV1 said she could use the hotel where she was staying.  *Id.*  The defendant replied, "Let's work you and I[.]"  *Id.*  Approximately two weeks later, on April 19, 2024, the defendant asked MV1, "Are you pregnant??"  MV1 said no, and then the defendant told her "I'll give you a baby[.] Mine[.]"  GX 233.

On March 27, 2024, the defendant – knowing MV1 was engaged in sex work that night – solicited MV1 to meet him at a hotel for sex in exchange for approximately $20 USD.  GX 231.  The defendant told MV1 he was "Talking to people" in San Diego, "But I want you[.]"  *Id.*  Then he said, "Work with me" "I have money[.]"  *Id.*  MV1 asked him, "So how much will you give me[?]"  He told her he would pay her the "Regular" price and enticed her to "go to a nice place[.]"  *Id.*  MV1 said she did not want to go to a nice place, so the defendant suggested "here in San Diego[2]" "There's a hotel."  *Id.*  MV1 said again, "tell me how much you'll give me talk to me straight[.]"  *Id.*  The defendant said, "For fucking" and then, "Ask" "80,000 too little[.]"  *Id.*  MV1 said, "Obviously that's way too little" and the defendant responded, "Do you charge me more than some other man?  You shouldn't charge so little[.]"  *Id.*

---

[2] San Diego is an area in Medellin known for prostitution.  *See* Trial Tr. 109, Sept. 11, 2025.

**SA076**

The defendant continued to beg MV1 to meet him and attempted to negotiate the price of sex with MV1. *Id*. As they went back and forth, she sent him a voice note telling him "Michael [PH], look, **when we met you know that I did not charge you cheaply**. Sorry about that. And if you're expecting that because she told you at 80 I will go with you, no, you are very mistaken in life. And now, now I'm off to San Diego. Don't talk to me when you see me, I don't want you to talk to me because I'm going to be working, don't look for me at all. You didn't want to go with me and my girlfriends, fine, no big deal. Fine, but I hope and expect that you won't be looking for me in San Diego. Thank you." GX 205, 205-A.

After he received her voice note, the defendant told MV1 "I was going to give you 200,000 for the time but 300,000 is fine." GX 231. MV1 replied, "Then we'll see each other in San Diego to go to a hotel[.]" *Id.* The defendant said, "Well yes" "Unless you prefer some other crazy depraved man from around San Diego." *Id*.

At trial, the defendant testified about his first meeting with MV1, the one to which she alluded in her voice note. In his testimony, the defendant stopped just shy of admitting what this meeting really was – commercial sex with a child. He said the first time he saw MV1 she was on the street. Trial Tr. 27:9-18, Sept. 11, 2025. He thought she was attractive and stopped to talk to her. *Id.* at 27-30. He took her to a restaurant and then to his apartment where they had sex. *Id*. Afterward, he dropped MV1 off at her home, which he described as "a slum." *Id.* at 84.

On March 9, 2024, MV1 told the defendant she "no longer want[ed]" to engage in sex work. GX 221. She said, "I can't stand for someone to ever touch me again without me wanting it[.]" *Id.* "I would do myself a lot of harm if I continue with that life" and "I'm even thinking of quitting drugs[.]" *Id.* Incredibly, despite these statements and the other obviously tragic circumstances of MV1's life, the defendant claimed at trial that sex work was what MV1 wanted

7

**SA077**

to do.  Trial Tr. 124:10-16, Sept. 11, 2025; *see id*. at 60:20-25.  He asserted that MV1 received money from her parents (there was no evidence of this) yet she still engaged in sex work because "she wanted to go out with her friends" and "she wanted to impress [them]."  *Id.*; *see also id*. at 123:2 ("I know that she wants to engage in prostitution.").  He also testified that that his relationship with MV1 was "good" "absolutely."  *Id.* at 141:5.

Between January 2023 and October 2024, the defendant traveled to Colombia approximately 24 times.  *See* Exhibit 2 (CBP Travel Records).  During that time, the defendant solicited at least three Colombian minors for commercial sex, in addition to MV1.  One minor girl (hereinafter, "MV2") was identified after her contact was found in the defendant's iPhone.  PSR ¶18; *see also* Exhibit 3 (HSI Report – MV2).  She was later interviewed by a forensic interviewer and reported that when she was approximately 13 or 14 years old (which would have been 2023 or 2024), the defendant solicited her for commercial sex.  *Id.*  MV2 stated that the defendant approached her at Calle San Diego in Medellin, Colombia, and asked her if she was working.  *Id*.  She said she was, and he asked her, "how much?"  *Id*.  MV2 told him "150,000 pesos" (approximately $38 USD).  *Id*.  The defendant agreed and brought MV2 to a hotel known as a place where minors can go to have sex with adult customers.  *Id*.  After they entered the hotel room, the defendant took a bath then appeared naked from the bathroom.  *Id*.  MV2 said at that point she became afraid to have sex with the defendant so she told him she could not do it.  *Id*.  She said she insisted the defendant still pay her, and he did.  *Id*.  During her interview, MV2 was shown photos of other suspected and/or confirmed victims of child sex trafficking and was asked if she could identify them.  *Id*.  She identified MV1 as a victim.  *Id*.

On September 18, 2025, US law enforcement interviewed a Colombian minor (hereinafter, "MV3") in Medellin.  PSR ¶19; *see also* Exhibit 4 (HSI Report – MV3).  During the

**SA078**

interview, MV3 disclosed that when she was 15 years old (which would have been in 2023 or 2024) the defendant approached her at Botero Plaza and asked her how much she charged for sex. *Id.* MV3 told him her rate was 150,000 COP. *Id.* The defendant agreed to the price and then took her to a nearby hotel, where they had sex and he paid her in cash. *Id.*

On September 18, 2025, US law enforcement met with a Colombian woman (hereinafter, "MV4"), who indicated she had information related to individuals suspected of child sex trafficking in Colombia. PSR ¶20; *see also* Exhibit 5 (HSI Report – MV4). Law enforcement interviewed MV4 in Medellin. *Id.* MV4 was shown a series of photos depicting individuals, including the defendant, suspected of child sex trafficking in Colombia. *Id.* She identified the defendant, among others, and reported that when she was 17 years old (sometime in 2024), she met the defendant in Medellin and had sex with him exchange for 200,000 COP (approximately $54 USD) in cash. *Id.* She said the defendant also paid her 50,000 COP in cash for her taxi. *Id.*

The defendant's interest in commercial sex in Colombia was no secret to MV1. At trial, the defendant admitted that MV1 had assumed on March 27, 2024 that he was in San Diego soliciting prostitutes:

> Q. So when you told her you were in San Diego the first clarifying question about your activities there is whether or not you're soliciting a different prostitute there, correct?
>
> A. Yes.

Trial Tr. 111:4-7, Sept. 11, 2025.

## II. The defendant was border searched and admitted to being attracted to, and having sex with, minor girls.

On November 1, 2024, HSI-Miami sent a request for assistance to Customs and Border Protection (CBP) at Miami International Airport (MIA) to conduct a secondary border inspection of the defendant, who was due to arrive later that day on a flight from Medellin, Colombia. Trial

9

Tr. 57-58, 63, Sept. 9, 2025. When the defendant arrived in Miami, he went through customs and was taken for a secondary border inspection, pursuant to CBP's border search authority. *Id.* at 63. During that inspection, CBP located, among other things, an iPhone 14 to which the defendant provided the passcode. *Id*. at 63-64.

CBP and HSI manually inspected the defendant's iPhone 14 and found the WhatsApp chats between the defendant and MV1. *Id.* HSI Special Agent Ballard then sought to interview the defendant and provided him with *Miranda* warnings. *Id*. at 80. During the interview, the defendant repeatedly lied about his connections to Colombia and the nature of his relationship with MV1.

For example, law enforcement asked the defendant about the entry for MV1 in his phone, which he had entered as "[name] 2024." The defendant replied, "I wrote 2024 because I'm looking for something to identify them. That would be the mother of the children." Dkt. 93-1 at 22. The agent clarified, "the mother?" and the defendant replied, "my two children." *Id.* This was of course a lie, and the defendant later admitted that this contact was MV1. *Id.* at 23. Law enforcement showed the defendant a picture of MV1 and asked who she was. *Id.* The defendant stated her name and said she was 17, but he had "nothing romantic with this girl." *Id.* The defendant described MV1 as a "friend" and a "flirtatious thing," but not someone with whom he associated. *Id.* He also said he had met MV1 only twice before. *Id.* When asked if MV1 was involved in prostitution, the defendant stated, "not that I know of." Dkt. 103-1 at 2.

Ultimately, the defendant admitted – reluctantly – that he had sex with MV1, and she was pregnant. Dkt. 93-1 at 28; Dkt. 103-1 at 2. He also admitted during this interview that he had sex with other minor girls while in Colombia, including the mother of his two children there. When asked if he had a preference for younger girls, the defendant told the agents:

10

**SA080**

Okay, I thought a lot about this, honestly, and the long answer is no, but kind of yes. Okay, let me tell you. All my life I never wanted to be with a girl who's younger than me. I've always been around that. After getting divorced and this pattern that you've recognized, it's just because of, I guess, convenience or circumstances. So I'm old now and these people who are available are young.

Exhibit 1.

At the conclusion of the interview, the defendant left MIA and returned to Virginia. On November 4, 2024, the defendant attempted to board a flight from Washington Dulles International Airport, in the Eastern District of Virginia, to Bogota, Colombia. Trial Tr. 61, 135, Sept. 10, 2025. He was stopped by HSI agents on the jet bridge and taken to a secondary inspection area for an interview. *Id*. at 61, 63, 135.

During the November 4 interview, the defendant again lied about his relationship with MV1. He told the agents that they had not had sex. *See* Exhibit 6 (excerpts from Dulles interview) at 1. He later admitted the following about his March 26-27, 2024, solicitation of MV1:

- He was considering meeting up with MV1 and was offering to give her money for sex. "It is – it would be for like sex." *Id*. at 8.

- Defendant: "Yes, that's what the idea is here. To pay for sex. I was just kind of like joshing with her. Yes, that's the intent, yes. That's what was happening there, yes . . . that is what we were talking about, if you want to be precise." *Id*. at 10.

- Defendant: "Is she a prostitute? It seems to me that she has worked as a prostitute." *Id*. at 11.

- Defendant: "At this point in time, I'm offering her money to go to have sex with her at a hotel." *Id*. at 12.

The defendant also admitted that he was "attracted, physically attracted to the appearance of . . . But not . . . of underage women." *Id*. at 2. He stated that this (having sex with minors) is not his

11

**SA081**

objective though he conceded it is "obviously the result." *Id*. The defendant was then placed under arrest.

**PROCEDURAL HISTORY**

On November 5, 2024, the defendant was charged by criminal complaint for engaging in illicit sexual conduct in a foreign place, in violation of 18 U.S.C. § 2423(c) and (g)(2). Dkt. 1. On January 8, 2025, a grand jury in the Eastern District of Virginia returned a single-count indictment charging the defendant with engaging in, and attempting to engage in, illicit sexual conduct in a foreign place, in violation of 18 U.S.C. § 2423(c), (f), and (g)(2). And on April 24, 2025, the grand jury returned a Superseding Indictment charging the defendant with one count each of sex trafficking and attempted sex trafficking of a minor, in violation of 18 U.S.C. §§ 1591(a)(1), (b)(2), and (c); 1954(a); and 1596(a)(1) and (a)(2); and engaging and attempting to engage in illicit sexual conduct in a foreign place, in violation of 18 U.S.C. § 2423(c), (f), and (g)(2). Dkt. 64.

The defendant pleaded not guilty to the charges and a jury trial began on September 9, 2025. After the government closed its evidence, the defendant moved for judgment of acquittal pursuant to Fed. R. Crim. P. Rule 29. Trial Tr. 169-75, Sept. 10, 2025. The Court denied his motion. *Id*. at 178-79. On September 12, 2025, the jury found the defendant guilty of attempted and completed violations of both counts of the Superseding Indictment. Dkt. 183. The defendant has renewed his Rule 29 motion in writing, Dkt. 193, and it remains pending.

**SENTENCING ANALYSIS**

**I.    Statutory Penalties and Guidelines Calculations**

Count 1 of the Superseding Indictment carries a mandatory minimum sentence of 10 years' imprisonment with a maximum sentence of life imprisonment. *See* 18 U.S.C.

12

**SA082**

§ 1591(b)(2). Count 2 of the Superseding Indictment carries a sentence of up to 30 years' imprisonment. *See* 18 U.S.C. § 2423. Following any term of imprisonment, the defendant must be placed on supervised release for a term of at least 5 years up to a term of life. *See* 18 U.S.C. § 3583(k).

As this Court is aware, to determine the appropriate sentence, the Court must consult both the Guidelines and the factors set forth in 18 U.S.C. § 3553(a). Although they are advisory, "a sentencing court is still required to 'consult [the] Guidelines and take them into account when sentencing.'" *United States v. Clark*, 434 F.3d 684, 685 (4th Cir. 2006) (quoting *United States v. Booke*r, 543 U.S. 220, 264 (2005)). Thus, a sentencing court must first calculate the applicable Guidelines range after making the appropriate findings of fact. *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). Relying on that range as "the starting point and the initial benchmark," the sentencing court must then "consider all of the § 3553(a) factors" before imposing a sentence. *Gall v. United States*, 552 U.S. 38, 49-50 (2007).

The U.S. Probation Office prepared a PSR containing the defendant's Guidelines calculation. As explained in the PSR, the defendant's combined adjusted offense level, plus the chapter four enhancement for repeat and dangerous sex offender against minors, results in an offense level of 41. PSR ¶¶29-39. Additionally, the defendant's Criminal History Category is correctly calculated as a I. *Id.* ¶47. Therefore, based on a total offense level of 41 and a Criminal History Category I, the defendant's Guidelines range is 324 – 405 months in prison. *Id*. ¶82. As further discussed below, if the Court applies either the two-level enhancement for obstruction of justice pursuant to Section 3C1.1, *see id.* ¶25, or the two-level enhancement for vulnerable victim pursuant to Section 3A1.1(b), the defendant's Guidelines range is life in prison.

## II.    Objections to the PSR

The defendant submitted a letter dated December 29, 2025, raising several objections to the PSR, including objections to alleged inaccuracies in the offender characteristics section as well as an objection to the application of U.S.S.G. § 4B1.5(b)(1) (repeat and dangerous sex offender). The U.S. Probation Office made the factual corrections requested by the defendant. With respect to the defendant's objection to application of the Section 4B1.5(b)(1) enhancement, for the reasons explained below the defendant's objection should be overruled.

Additionally, Probation indicated in the PSR that should the Court determine the defendant's testimony constituted perjury, the two-level enhancement for obstruction of justice pursuant to Section 3C1.1 would apply. As further discussed below, because the defendant lied under oath regarding material facts surrounding the nature of his relationship with MV1, the obstruction enhancement should apply.

Finally, the government believes the two-level enhancement pursuant to U.S.S.G. § 3A1.1(b) should apply because the defendant knew or should have known that MV1 was a vulnerable victim based on her homelessness, mental health, and drug-addiction.

### A. The Defendant's Objection to the § 4B1.5(b)(1) Enhancement

The defendant objects to the application of the five-level enhancement under U.S.S.G. § 4B1.5(b)(1) for repeat and dangerous sex offenders against minors, arguing there is an insufficient factual basis to the extent the enhancement is based on conduct involving MV2, MV3, and MV4.

As an initial matter, Section 4B1.5(b)(1) was correctly assessed in this case based on the defendant's crimes against MV1, irrespective of his illegal conduct toward the other victims. *See* PSR at 26 (Probation's response to defendant's objection). Section 4B1.5(b)(1) "applies when a

14

**SA084**

defendant is convicted of a sex crime, which includes 18 U.S.C. § 1591, and 'engaged in a pattern of activity involving prohibited sexual conduct.'" *United States v. Williams*, 783 F. App'x 269, 276 (4th Cir. 2019). "A defendant 'engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor,' and the conduct can occur during the instant offense." *Id.* (citing U.S.S.G. § 4B1.5 cmt. n.4(B)). "'Prohibited sexual conduct' includes a violation of 18 U.S.C. § 1591." *Id.* (citing 18 U.S.C. § 2426(b)(1)(A) (2012), USSG § 4B1.5 cmt. n.4(A)).

Here, the jury found beyond a reasonable doubt that the defendant violated Section 1591. The jury heard evidence that the defendant engaged in multiple acts of prohibited sexual conduct with MV1 – solicitation of commercial sex – during the time period alleged in the Superseding Indictment. Indeed, the evidence showed the defendant solicited MV1 for commercial on at least three separate occasions: March 3, 2024, March 26-27, 2024, and April 1, 2024, all of which are discussed above in the Background section. Accordingly, this enhancement is properly applied based solely on the defendant's illegal sexual conduct with MV1, irrespective of his illegal conduct toward the other three minor victims. *See United States v. Snead*, 2022 WL 17975015, at *6 (4th Cir. Dec. 28, 2022) (affirming application of § 4B1.5(b)(1) where defendant trafficked the victim multiple times over several weeks and that constituted his § 1591 conviction).

That said, the enhancement is also properly applied based on the defendant's illegal conduct toward MV2, MV3 and MV4. Each of these victims was interviewed by law enforcement and disclosed that the defendant solicited them for commercial sex (MV2) and paid them for sex (MV3 and MV4) when they were under the age of 18. The defendant argues that the victims' accounts should be discounted because of the circumstances of the interview (the victims were in the care of an NGO), the suspect photos shown to the victims, and what he

15

**SA085**

claims is a lack of critical detail regarding the victims' interactions with the defendants. The Court should reject these arguments.

*First*, the victims were in the care of an NGO because they survived being sex trafficked and had no resources to sustain them without the NGO. NGO support for trafficking victims is common practice in many countries, including Colombia, where sex trafficking crimes are particularly pervasive. *See e.g.,* U.S. Dep't of State, *Trafficking in Persons Report: Colombia* (2024), www.state.gov/reports/2024-trafficking-in-persons-report/colombia (discussing NGO support, including emergency care, to trafficking victims). Indeed, there is no evidence of bias or pressure during these interviews.[3] There is no evidence that the victims' care was conditioned on their cooperation with law enforcement or that they were under any pressure whatsoever to disclose abuse by suspected traffickers. In fact, MV4 identified only three of eight suspects shown to her, including the defendant.

*Second*, the victims' interviews contained sufficient detail to show they were victims of sex trafficking and attempted sex trafficking by the defendant for purposes of sentencing. *See United States v. Kiulin*, 360 F.3d 456, 460 (4th Cir. 2004) (holding that at sentencing, the United States need only prove the application of the enhancement by a preponderance of the evidence.). Again, each of these victims was interviewed by law enforcement and disclosed that the defendant solicited them for commercial sex (MV2) and paid them for sex (MV3 and MV4) when they were under the age of 18. MV2's disclosure is corroborated by the fact that she is listed as a contact in the defendant's iPhone. And MV3 disclosed meeting the defendant in Botero – the same place where MV1 worked and where, on April 1, 2024, the defendant told MV1 they could "work" together ("Let's work you and I"). MV4's disclosure is equally clear,

---

[3] The interviews were made available to defense counsel and a Spanish interpreter to view at the US Attorney's Office.

16

**SA086**

and there is no evidence regarding the kinds of apartments the defendant rented, owned, or to which he had access, in Colombia.[4]

In sum, the defendant's objection should be overruled because the enhancement was properly applied based on the defendant's illegal conduct toward MV1, which occurred on multiple occasions. However, even if the enhancement was applied based on the defendant's conduct toward MV2, MV3, and MV4, it would still be proper based on the evidence.

## B. The Section 3C1.1 Obstruction Enhancement Should Apply

"A sentencing court is authorized to increase a defendant's Guidelines offense level two levels '[i]f (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction; and (2) the obstructive conduct related to . . . the defendant's offense of conviction.'" *United States v. Crawford*, No. 24-4243, 2025 WL 2364958, at *3 (4th Cir. Aug. 14, 2025), *cert. denied*, No. 25-6183, 2026 WL 80001 (U.S. Jan. 12, 2026); U.S.S.G. § 3C1.1. Obstructive conduct within the meaning of U.S.S.G. § 3C1.1 includes committing perjury "if such perjury pertains to conduct that forms the basis of the offense of conviction." U.S.S.G. § 3C1.1 cmt. n.4(B). Perjury occurs when a witness under oath "(1) [gives] false testimony; (2) concerning a material matter; (3) with the willful intent to deceive." *Crawford*, 2025 WL 2364958, at *3 (quoting *United States v. Jones*, 308 F.3d 425, 428 n.2 (4th Cir. 2002) (citing *United States v. Dunnigan*, 507 U.S. 87, 92-98 (1993)).

Here, the defendant proffered demonstrably false testimony at trial in an attempt to deceive the jury as to his guilt. The evidence clearly showed the defendant knew MV1 was a minor and intentionally solicited her for commercial sex knowing she would be caused to engage

---

[4] Though the evidence at trial did show he lived in an apartment in Colombia, as opposed to a single-family home.

17

in a commercial sex act. Furthermore, the evidence showed the defendant's solicitations of MV1 were successful – on multiple occasions he solicited her for sex, had sex with her, and then paid her. Despite this, the defendant denied that he ever paid MV1 for sex or ever tried to pay her for sex. Trial Tr. 21:10-11, Sept. 11, 2025; *id*. at 70:12-17. He claimed that in her March 27, 2024, voice note, MV1 said "I don't charge you cheaply" because "she hadn't charged me before." *Id*. at 67:7-15. And he claimed that his messages to MV1 on March 26-27, 2024, soliciting her for commercial sex, were merely an attempt to give her whatever he could to get her off the streets. *Id*. at 69. He also claimed that his message, "sleep with me this last night at 1:00am" referred only to sleeping together, without sex, "because we are always lacking sleep. That's what we do together. We're tired and we sleep." *Id*. at 93:2-10.

The defendant's false testimony concerned a material matter – elements of the two offenses charged – and was an intentional, willful, attempt to deceive the jury. Trial Tr. 145, Sept. 11, 2025 (defendant admitted he lied to investigators because "there was no way I was going to be able to explain all of this"); *see id*. ("In that situation I lied, because I wasn't able to explain her background and my relationship with her. In this situation, I'm in such a different place where I can talk about it. **I wasn't prepared then. I am now**."). Thus, the two-level enhancement for obstruction via perjury should be applied in this case. With the enhancement, the defendant's Guidelines range is life in prison.

### C. The Section 3A1.1(b) Vulnerable Victim Enhancement Should Apply

"Section 3A1.1(b) of the Guidelines provides for a two-level increase if the defendant knew or should have known that a victim of the offense was 'unusually vulnerable due to age, physical or mental condition, or [was] otherwise particularly susceptible to the criminal conduct.'" *United States v. Grubbs*, 585 F.3d 793, 805–06 (4th Cir. 2009); U.S.S.G. § 3A1.1 cmt.

18

**SA088**

n. 2. "The commentary to this provision prohibits application of the vulnerable-victim adjustment 'if the factor that makes the person a vulnerable victim is incorporated in the offense guideline.'" *Id*. "Thus, in order to apply the § 3A1.1(b) adjustment, the district court [must] rely on factors unrelated to the calculation of [the defendant's] offense level[.]" *Id*.

Grubbs was a teacher and sports coach at a middle school in North Carolina. *Id*. at 796. He began sexually molesting his victims when they were young teenagers. *Id*. "Most of the victims reported the assaults occurred regularly, on multiple occasions over months or years." *Id*. "Typically, Grubbs befriended the victims' parents, and became a 'father figure' to them while serving as their teacher, Sunday School teacher, or coach." *Id*. He took them on trips, gave them gifts, and in some cases gave them better grades than they had earned. *Id*. Ultimately, Grubbs pled guilty to six counts of transportation of a minor in interstate commerce with intent to engage in sexual activity, and six counts of travel in interstate commerce for the purpose of engaging in a sexual act with a minor. *Id*. at 795.

The Fourth Circuit affirmed application of Section 3A1.1(b) based on how Grubbs manipulated some of his child victims, such as by awarding them higher grades than they earned, giving them gifts, providing financial assistance to one victim's mother, and guaranteeing a college football scholarship. *Id*. at 805-806. These factors were unrelated to the calculation of Grubbs' offense level under § 2G1.3, which relied, among other things, on "the child victims being unduly influenced because Grubbs was at least 10 years older than they were, *see* U.S.S.G. § 2G1.3(b)(2)(B) & cmt. n. 3(B), and the fact that the offenses involved a sex act or sexual contact." *Id*. (citing U.S.S.G. § 2G1.3(B)(4)(A)).

Here, as in *Grubbs*, the calculation of the defendant's offense level under § 2G1.3 incorporates the defendant's undue influence on MV1 based on her age at the time of the offense

19

(15) and his age (43-44).  *See* § 2G1.3(b)(2)(B); *id*. cmt. n.3(B) ("In a case in which a participant is at least 10 years older than the minor, there shall be a rebuttable presumption that subsection (b)(2)(B) applies.  In such a case, some degree of undue influence can be presumed because of the substantial difference in age between the participant and the minor.").  This Guidelines enhancement does not, however, encapsulate the many other ways in which MV1 was uniquely vulnerable to the defendant.  Thus, application of § 3A1.1(b) can and should apply here. *See United States v. Lowe*, 763 Fed. Appx. 878 (11th Cir. 2019) (affirming application of Section 3A1.1 where defendant "was involved in the victim's prostitution, he had a sexual relationship with her, he was her sole means of transportation, and he knew that she was addicted to drugs and had no supervision or support from her family."); *see also United States v. Royal*, 442 F. App'x 794 (4th Cir. 2011) (unpublished) (holding district court properly applied two-level vulnerable victim adjustment in sentencing defendant for conspiracy to commit sex trafficking, among other offenses; victims were vulnerable not only because of their ages, but because they came from dysfunctional families and were dependent on drugs and alcohol); *United States v. Irving*, 554 F.3d 64 (2d Cir. 2009) (minor victims' homelessness and lack of parental supervision made them unusually vulnerable to the defendant's sex trafficking offense); *United States v. Sumka*, 81 F. 4th1153 (10th Cir. 2023) (upholding undue influence and vulnerable victim enhancements where defendant met the victim and began providing her drugs knowing she had a drug addiction before their sexual relationship began).

As discussed above in the Background section, the defendant knew that MV1 was alone in Medellin and essentially homeless.  He knew that she bounced between hotels, without any parental supervision, and was reliant on sex work to keep a roof over her head.  He also knew that she was frequently hungry and needed sex work to eat.  The defendant knew that MV1 was

20

**SA090**

depressed, anxious, and addicted to drugs, including marijuana and other substances. Indeed, the defendant capitalized on MV1's vulnerabilities, soliciting her for sex work when she told him she was hungry, penniless, and on the verge of being kicked out of her hotel. In her March 7, 2024 voice message to the defendant, MV1 told him how hard her life was in Medellin, and how she had no choice but to make money the way she did. *See* GX 206, 206-A.

Accordingly, the government believes the vulnerable victim enhancement under Section 3A1.1(b) should apply in this case.

## III.    Section 3553(a) Factors

After calculating the Guidelines range, a sentencing court must consider that range and the sentencing factors set forth in Section 3553(a) to determine an appropriate sentence. *Nelson v. United States*, 555 U.S. 350, 351 (2009). These factors include the nature and circumstances of the offenses, the history and characteristics of the defendant, and the need for the sentence imposed to reflect the seriousness of the offenses and afford adequate deterrence. 18 U.S.C. § 3553(a). Based on a careful consideration of these factors, the United States believes that a sentence of 405 months' imprisonment and a lifetime term of supervised release is sufficient but not greater than necessary to reflect the totality of the defendant's conduct and comport with the purposes of sentencing set forth in 18 U.S.C. § 3553.

### A. The nature, circumstances, and seriousness of the defendant's offense

The defendant's crimes are repugnant, and the seriousness of his offenses cannot be overstated. He traveled to a foreign country – well-known for its struggles with child sex tourism – and intentionally targeted young girls for commercial sex. It is hard to imagine how MV1 could have been *more* vulnerable than she was in February 2024 when the defendant began soliciting her for commercial sex. She was 15, alone in Medellin, destitute, homeless, hungry,

21

**SA091**

and addicted to drugs. The tragic circumstances of her life made MV1 an easy target for the defendant, who was all too happy to take advantage. Indeed, he repeatedly solicited her for commercial sex, often on the heels of her lamentations to him that she was about to be forced onto the streets, and he paid her meager sums of money in exchange for sex. The money he paid MV1 was just enough to take the edge off her desperation, but never enough to pull her out of her dire straits.

Unsurprisingly, further investigation has revealed that MV1 was not the defendant's only victim. Three other Colombian girls have come forward and disclosed that the defendant solicited and paid them for sex when they were minors. The defendant exploited and abused these girls over at least 2 years, believing he was invincible so long as he confined his exploits to Colombia. Exhibit 6 at 12 ("the thing is, I know – this is like a socioeconomic thing there . . . girls that are younger that are not home . . . it's kind of common.").

In regard to the effect on victims, it comes as no surprise that researchers have found that commercially sexually exploited children, such as MV1, "typically experience significant and ongoing trauma." Barnert E, Iqbal Z, Bruce J, Anoshiravani A, Kolhatkar G, Greenbaum J. "Commercial Sexual Exploitation and Sex Trafficking of Children and Adolescents: A Narrative Review." (available at: pmc.ncbi.nlm.nih.gov/articles/PMC5673585/pdf/nihms898219.pdf). "The literature teaches that these youths have a unique set of health risks, including violence-related injuries, sexually transmitted infections, unwanted pregnancy, and a variety of mental health problems." *Id*. Research shows "most victims are reluctant to disclose their circumstances, even within the health care setting." *Id*. "Fear of arrest, fear of and loyalty to their exploiters, feelings of shame and humiliation, and lack of awareness of their own

22

**SA092**

victimization create barriers to disclosure." *Id.* "Related to this, victims may insist that they are behaving voluntarily." *Id.*

The truth of this research is borne out in the facts of this case. On Wednesday, February 18, 2026, defense counsel provided undersigned counsel a letter purportedly written by MV1. Counsel indicated the letter would be submitted to the Court for consideration at sentencing. In her letter, MV1 does not deny that the defendant paid her for sex. The letter does, however, demonstrate the perverse hold that the defendant still has over MV1. Despite his exploitation of MV1, his callous disregard for her well-being and perpetuation of her abuse, and his many lies about their relationship, she regards the defendant as a noble person.

But as the Court well knows, the defendant has not shown any remorse whatsoever for his conduct. At trial, he could not even bring himself to acknowledge the wrongness of a 45-year-old man engaging in a sexual relationship with a 15-year-old girl, let alone a girl with as many life challenges as MV1. He has consistently denied paying MV1 for sex and has even gone so far as to assert that she wanted to be a prostitute so she could spend time with her girlfriends. To date, he has not accepted responsibility for any of his crimes and has sought instead to justify and explain away his conduct. This is far from noble conduct. And the Court should consider these circumstances in fashioning an appropriate sentence.

The nature, circumstances, and seriousness of the defendant's conduct weigh in favor of a 405-month sentence. *See United States v. Cunningham*, 680 F. Supp. 2d 844, 847 (N.D. Ohio 2010), *aff'd*, 669 F.3d 723 (6th Cir. 2012) ("There can be no keener revelation of a society's soul than the way in which it treats its children.").

**SA093**

### B. The defendant's history and characteristics

By all accounts, the defendant has led a charmed life.  The defendant was raised mainly in Virginia, by his parents and stepparents.  PSR ¶60.  Despite his parents' divorce when he was 9, the defendant reported a "fantastic" "nice" childhood and said he had no problems adjusting to the divorce and maintaining good relationships with his parents, stepparents, and siblings.  *Id*. ¶59.  Further, according to the PSR, between his graduation from high school in 1998 and 2010, the defendant attended 3 different universities, earning a bachelor's degree and studying for a master's degree.  *Id*. ¶¶71-14.  In 2013, he married a woman in Virginia, with whom he had one child.  *Id*. ¶61.  They later divorced and he went on to have another child with a woman in Colombia.  *Id*. ¶62.  And between 2013 and 2024 he earned a living through various business ventures and his music career.  *Id*. ¶¶75-78.  Also, the defendant is apparently in good physical health.  *Id*. ¶64.  And he has no reported history of mental health issues or substance abuse problems.  *Id*. ¶¶66-69.

Many defendants involved in other federal crimes, such as drugs and guns, have dire family life circumstances that lead them to the all-too-predictable path of crime.  The defendant in this case experienced the antithesis of that lifestyle.  Unlike his victims in Medellin, the defendant was raised in a stable home, where, in all likelihood, he never had to worry about where his next meal would come from, or if he would have a roof over his head when it came time to sleep, or if in order to get those things he would have to sell his body to strangers. Despite this extreme good fortune, the defendant chose repeatedly to break the law and harm children.  He knew his conduct was wrong and illegal, as evidenced by his many lies to law enforcement, yet he did it anyway, knowing full well what the consequences would be if he were caught.  His sentence should reflect those facts.

24

**SA094**

**C.  The need to promote respect for the law, afford adequate deterrence to criminal conduct, and protect the public**

Both specific and general deterrence call for a significant sentence in this case.  With respect to specific deterrence, the defendant traveled to Colombia numerous times and engaged in commercial sex with minors.  The Court should impose a sentence that adequately deters the defendant from this conduct and protects the public, namely children, from his future crimes.

General deterrence, too, is especially important in cases like this one, where the defendant traveled to a foreign country and engaged in child sex trafficking specifically because he perceived the enforcement there to be weak and the victims cheap and plentiful.  "Many developing countries have fallen prey to the serious problem of international sex tourism."  H.R. Rep. 107–525, 2002 WL 1376220 at *2–3.  "According to the National Center for Missing and Exploited Children, child-sex tourism is a major component of the worldwide sexual exploitation of children and is increasing."  *Id.*  "Children around the world have become trapped and exploited by the sex tourism industry."  *Id*.

As the government detailed in its Response brief to the defendant's motion to suppress the border search, the scourge that is child sex tourism is a real and growing problem in Colombia in general, and Medellin in particular.  For the past several years, Colombia has been combatting a rise in the commercial sexual exploitation of its children and tourists who travel to Colombia to sexually abuse children.  *See, e.g.,* Kejal Vyas, "The Dark Side of Colombia Tourism: Child Sex Trade in Medellin" (Jun. 8, 2024)[5]; "The Dark Side of the Tourism Boom in Medellín: Commercial Exploitation of Children."[6]  In 2023 alone, there were reportedly 1,259

---

[5] Available at: www.wsj.com/world/americas/the-dark-side-of-colombia-tourism-child-sex-trade-in-medellin-2c583fad.

[6] Available at: childrenchangecolombia.org/the-dark-side-of-the-tourism-boom-in-medellin-commercial-exploitation-of-children/.

**SA095**

cases of possible sexual exploitation of minors in Medellin—a nearly 60% increase from the year before. *See* Astrid Sarez, "Murdered tourists and sex trafficking exposes dark side of Medellin's tourism boom" (Feb. 22, 2024).[7]

To combat these issues, the Medellin municipal government launched an aggressive campaign to deter this conduct by warning visitors about the criminal penalties. *See* Richard Emblin, "Medellín launches sex abuse prevention campaign for foreign visitors" (Apr. 16, 2024)[8]; Jesus Mesa, "The American Travel Hotspot Where a Tourist Is Dying Every Week" (Jun. 25, 2024) (In response to notorious child sex trafficking case involving a U.S. citizen, "Medellín Mayor . . . issued a six-month prostitution ban in tourist areas to combat child exploitation.").[9]

Despite efforts to combat child sex tourism, there remain individuals, like the defendant, who see opportunity in Medellin in the form of child sex workers. Sadly, these crimes are exceedingly difficult to detect by Colombian and U.S. law enforcement alike. The need for effective deterrence through a serious sentence is essential to make it clear to offenders, like the defendant, who view children in Colombia as easy targets and seek to capitalize on their extreme vulnerability, that the penalties for these crimes are steep. Indeed, Special Agent Ballard has indicated that during border searches conducted as part of Operation Titan Shield to target U.S. citizens and nationals traveling to Colombia for child sex tourism, she and her colleagues have found targets discussing the case of Stefan Correa, a U.S. citizen convicted in Miami of sex trafficking in Medellin. In particular, these subjects have exchanged articles about Correa,

---

[7] Available at: www.independent.co.uk/news/world/americas/medellin-colombia-tourism-murder-america-b2500497.html.
[8] Available at: thecitypaperbogota.com/news/medellin-launches-sex-abuse-prevention-campaign-for-foreign-visitors/.
[9] Available at: www.newsweek.com/medellin-colombia-american-tourist-deaths-1917228.

26

**SA096**

including his sentence, and have discussed fears that Colombia is becoming too dangerous of a place in which to continue to seek children for sex.

A sentence of 405 months in prison would be another data point to make men like the defendant think twice before traveling to Colombia to pay for sex with children.

## IV.    Supervised Release

The Court must also determine the appropriate term of supervised release at sentencing. "Supervised release . . . is not a punishment in lieu of incarceration." *United States v. Granderson*, 511 U.S. 39, 50 (1994). Instead, it "fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000). Under 18 U.S.C. § 3583(k), the authorized term of supervised release for the defendant's offenses is at least five years and up to life. This five-year mandatory minimum term reflects a heightened concern for recidivism among sex offenders and the need for supervision over time. *See* H.R. Rep. No. 107–527 at 2 (2002) (explaining that "studies have shown that sex offenders are four times more likely than other violent criminals to recommit their crimes" and that "the recidivism rates do not appreciably decline as offenders age"); H.R. Conf. Rep. No. 108-66 at 49–50 (2003). Notably, the Guidelines recommend a lifetime term of supervised release for sex offenders, U.S.S.G. § 5D1.2(b) (Policy Statement), which courts have observed "reflects the judgment of Congress and the Sentencing Commission that a lifetime term of supervised release is appropriate for sex offenders in order to protect the public." *United States v. Morace*, 594 F.3d 340, 351 (4th Cir. 2010) (quotation marks and citation omitted).

Based on an assessment of these factors, the United States recommends that the Court impose a lifetime of supervised release with the conditions of supervision described in 18 U.S.C. § 3583(d) for felons required to register under the Sex Offender Registration and Notification

27

**SA097**

Act and those described in U.S.S.G. § 5D1.3(d)(7) for sex offenders.  Given the seriousness of his conduct in this case, a lifetime term of supervision is appropriate to limit the defendant's capacity to reoffend and provide him with steady access to the treatment and monitoring he clearly requires.

## V.    Restitution

The government has not received a victim impact statement or restitution request from MV1.  Should the government receive these materials prior to sentencing, it will immediately provide them to the Court and counsel.

## VI.    Forfeiture

At sentencing, the government will seek forfeiture of the defendant's Apple iPhone 14, which he used to facilitate his abuse of MV1, and which was found to contain obscene images of MV1.  Upon information and belief, the defendant will not contest forfeiture of this device.

(Continued on next page).

28

**SA098**

**CONCLUSION**

For the reasons stated herein, and for such additional reasons as the government may raise at sentencing, the United States requests that this Court sentence the defendant to 405 months in prison and a lifetime of supervised release.

Respectfully submitted,

Date: February 19, 2026

By:  _____/s/_____
Lauren Halper
Laura D. Withers
Assistant United States Attorneys
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Fax: (703) 299-3980
Email: Lauren.Halper@usdoj.gov
Email: Laura.Withers@usdoj.gov

29

SA099

11/1/2024                Michael Inofuentes Interviews                Audio Transcription

Page 61

MR. INOFUENTES: I probably should drink some water, but I'm okay.

MALE AGENT 1: I was telling you to drink water. I'll get you a water. Do you want to go to the bathroom?

MR. INOFUENTES: No. I'm not, like, sick or anything. I just -- honestly, I'm actually thankful. I'm actually thankful to be here. I have to do something different with my life, but -- but I'm not trying to, like -- I know it's scary out there, too. There's some scary people and there's a lot of nasty stuff going on. So it's -- but I -- so I'm kind of, like -- I see what you're doing and we need to have everything by the book. So I'm happy to help.

FEMALE AGENT 2: We sure do have to have everything by the book.

MR. INOFUENTES: Mm-hmm.

MALE AGENT 1: I'll get you a water and just --

MR. INOFUENTES: Okay. Thank you very much.

FEMALE AGENT 1: I know you're not a monster. I can see from the photos even with the girls that you're with that they're happy, that they're having a good time, that you're treating them well. And for the most part these girls, the men that they deal with are

Page 62

not treating them well. So there is distance between you and most men that these girls deal with. So just know we're not looking at you like you're some kind of like animal or monster. But we still see the pattern that matches, right?

MR. INOFUENTES: On both sides, I see what you're saying.

FEMALE AGENT 1: But there's the distance and we see the distance. But also we do see, you know, the trend that's been going on for a while that when you do go to Medell n you keep happening upon these girls that are not of age, right?

MR. INOFUENTES: Honestly, they look young, but -- okay, but to your -- to your -- to your angle, 100 percent. This is self-destructive and it's -- it's not good for them either. So I'm contributing to their poor lifestyle even though maybe I'm not a monster, and I'm -- at the same time I'm -- I don't know if you care about me, but I'm not doing anything good for myself. So, yes, you're 100 percent true. I can back up the ages even though they -- but the -- that's not -- I know it's technically the most important thing, but the -- but, honestly --

FEMALE AGENT 1: I mean, but we have stumbled upon several now that are underage.

Page 63

MR. INOFUENTES: There are -- there are -- there are examples, like I said, like, the dates I've given you --

FEMALE AGENT 2: Would you say you have a preference for younger girls, like is that something --

MR. INOFUENTES: I never --

FEMALE AGENT 2: -- that like -- like, you'd rather be with younger girls than girls more of your age? Is that -- I have a preference. She has a preference.

MR. INOFUENTES: Thank you, sir.

FEMALE AGENT 2: He has a preference. To each their own, right? It's preference. That's what -- that's what the word actually means where you'd rather. So would you say do you prefer younger girls than girls your age?

MR. INOFUENTES: Okay, I thought a lot about this, honestly, and the long answer is no, but kind of yes. Okay, let me tell you. All my life I never wanted to be with a girl who's younger than me. I've always been around that. After getting divorced and this pattern that you've recognized, it's just because of, I guess, convenience or circumstances. So I'm old now and these people who are available are young. So my preference -- but I've also thought on the other

Page 64

way. Do I like older women, and I do. So I can't -- I can't tell you definitively I'm only going with someone who's younger.

FEMALE AGENT 2: Okay.

MR. INOFUENTES: This is -- this is probably a common problem that you guys probably might see, and I'm starting to realize that --

FEMALE AGENT 1: It's very common. We see it a lot, and that's why I'm saying like we recognize this when we started looking at your phone. But like I said, we do see the difference there. There is -- there's a difference.

MR. INOFUENTES: There are some bad people who are really just actually -- maybe I'm sick, but like really like have -- there's a lot of mental illness and there's people who are -- as I said. So thank you for trying to see -- try to take some sympathy on -- if -- oh, there's all kind of gray areas, maybe. So that's --

FEMALE AGENT 1: Yeah. And like I said, we just want -- just want you to be honest about it because we -- like I said, we see what we see. We can't unsee what we're seeing, right, and what's important for us is just matching your story and your honesty with what we're seeing. And I appreciate that.

16 (Pages 61

GOVERNMENT
EXHIBIT
1
1:25-CR-5

**SA100**



**U.S. Customs and Border Protection**
**U.S. Department of Homeland Security**
**TECS - Person Encounter List**

03/04/2025 14:33 EST                    Generated By: ███████████                    Page 1 of 15

| Common Search Criteria | | | |
|---|---|---|---|
| **Encounter Start Date** | **Encounter End Date** | **Encounter Start Time** | **Encounter End Time** |
| 11/01/2009 | 11/01/2024 | 00:00 | 23:59 |
| **Site Code** | **Terminal/Lane** | **Inspector ID Code** | **Inbount-Outbound Indicator** |
| | | | |

| Person Search Criteria | | | | |
|---|---|---|---|---|
| **Last Name** | **First Name** | **Encounter Line Type** | **Date Of Birth** | **Document Country Code** |
| INOFUENTES* | MICHAEL | | ███/1980 | |
| **Stolen Document Search** | **Document Number From** | **Document Number To** | **Carrier Code** | **Flight/Vessel Number** **Sex** | **Citizenship** |
| Not Selected | | | | | |

| Person Filter Criteria | | | | |
|---|---|---|---|---|
| **Last Name** | **First Name** | **Birth Date From** | | **Birth Date To** |
| | | | | |
| **Encounter Date Earliest** | **Encounter Date Latest** | **Encounter Time** | **Carrier Code** | **Carrier Number** | **Inbound-Outbound Direction** |
| | | | | | |
| **Encounter Site Location** | **Inspector ID** | **Encounter Lane Type** | **Passenger Status** | **Updated Passenger Status** | **Agency Referred To** | **HitInd** |
| | | | | | | |

| Last Name | First Name | DOB | Doc Type | Document Number | Date - Time (Eastern) | Carrier Code | Carrier Num. | I/O | Site | Insp | Type | Status | Updated Status | Ref | Arr Loc | Dep Loc |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| INOFUENTES | MICHAEL JAIME | ███1980 | P | 585520255 | 11/01/2024 11:24 | AA | 924 | I | A520 | ███ | APIS | ON BOARD | | MANY | MIA | MDE |
| INOFUENTES | MICHAEL JAIME | ███1980 | P | 585520255 | 10/28/2024 06:43 | AV | 149 | O | A541 | ███ | APIS | | ON BOARD | | BOG | IAD |
| INOFUENTES | MICHAEL JAIME | ███1980 | P | L85520255 | 10/04/2024 16:24 | CM | 443 | I | A541 | ███ | APIS | ON BOARD | | | IAD | PTY |
| INOFUENTES | MICHAEL JAIME | ███1980 | P | 585520255 | 10/01/2024 00:00 | AV | 247 | O | | ███ | APIS | ON BOARD | | | BOG | IAD |
| INOFUENTES | MICHAEL | ███1980 | P | 5855520255 | 09/28/2024 06:11 | NK | 974 | I | A522 | ███ | APIS | ON BOARD | | CUSTOMS | FLL | MDE |
| INOFUENTES | MICHAEL JAIME | ███1980 | P | 585520255 | 09/18/2024 14:32 | AV | 247 | O | A541 | ███ | APIS | | | | BOG | IAD |
| INOFUENTES | MICHAEL JAIME | ███1980 | P | 585520255 | 09/18/2024 07:13 | AV | 149 | O | A541 | ███ | APIS | | | | BOG | IAD |
| INOFUENTES | MICHAEL JAIME | ███1980 | P | 585520255 | 09/18/2024 00:00 | AV | 149 | O | | ███ | APIS | NOT ON BOARD | | | BOG | IAD |
| INOFUENTES | MICHAEL JAIME | ███1980 | P | 585520255 | 09/18/2024 00:00 | AV | 247 | O | | ███ | APIS | ON BOARD | | | BOG | IAD |
| INOFUENTES | MICHAEL JAIME | ███1980 | P | 585520255 | 09/14/2024 06:49 | UA | 206 | I | A534 | ███ | APIS | ON BOARD | | | IAH | BOG |

**For Official Use Only / Law Enforcement Sensitive**

**SA101**

US-00001088



**U.S. Customs and Border Protection**
**U.S. Department of Homeland Security**
**TECS - Person Encounter List**

03/04/2025 14:33 EST  Generated By: █████████  Page 2 of 15

| Last Name | First Name | DOB | Doc Type | Document Number | Date - Time (Eastern) | Carrier Code | Carrier Num. | I/O | Site | Insp | Type | Status | Updated Status | Ref | Arr Loc | Dep Loc |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| INOFUENTES | MICHAEL JAIME | '1980 | | | 09/14/2024 00:00 | CM | 448 | I | | | APIS | NOT ON BOARD | | | IAD | PTY |
| INOFUENTES | MICHAEL JAIME | '1980 | P | 585520255 | 09/09/2024 07:21 | AV | 149 | O | A541 | | APIS | | | | BOG | IAD |
| INOFUENTES | MICHAEL JAIME | '1980 | P | 585520255 | 09/09/2024 00:00 | AV | 149 | O | | | APIS | ON BOARD | | | BOG | IAD |
| INOFUENTES | MICHAEL JAIME | '1980 | P | 585520255 | 08/31/2024 06:11 | NK | 974 | I | A522 | | APIS | ON BOARD | | | FLL | MDE |
| INOFUENTES | MICHAEL JAIME | '1980 | P | 585520255 | 08/26/2024 00:00 | CM | 403 | O | | | APIS | ON BOARD | | | PTY | IAD |
| INOFUENTES | MICHAEL JAIME | '1980 | P | 585520255 | 08/03/2024 05:13 | AA | 1126 | I | A520 | | APIS | ON BOARD | | | MIA | BOG |
| INOFUENTES | MICHAEL JAIME | '1980 | P | 585520255 | 07/30/2024 09:24 | DL | 982 | O | A171 | | APIS | | ON BOARD | | BOG | ATL |
| INOFUENTES | MICHAEL JAIME | '1980 | P | 585520255 | 07/13/2024 14:08 | AV | 246 | I | A541 | | APIS | ON BOARD | | | IAD | BOG |
| INOFUENTES | MICHAEL J | '1980 | P | 585520255 | 07/09/2024 14:43 | AV | 247 | O | A541 | | APIS | | ON BOARD | | BOG | IAD |
| INOFUENTES | MICHAEL JAIME | '1980 | P | 585520255 | 07/03/2024 04:36 | CM | 404 | I | A541 | | APIS | ON BOARD | | | IAD | PTY |
| INOFUENTES | MICHAEL JAIME | '1980 | P | 585520255 | 06/19/2024 00:00 | CM | 403 | O | | | APIS | ON BOARD | | | PTY | IAD |
| INOFUENTES | MICHAEL JAIME | '1980 | P | 585520255 | 06/08/2024 06:19 | AA | 1141 | I | A520 | | APIS | ON BOARD | | | MIA | MDE |
| INOFUENTES | MICHAEL JAIME | '1980 | P | 585520255 | 05/30/2024 00:00 | CM | 403 | O | | | APIS | ON BOARD | | | PTY | IAD |
| INOFUENTES | MICHAEL JAIME | '1980 | P | 585520255 | 05/18/2024 06:18 | AA | 1141 | I | A520 | | APIS | ON BOARD | | | MIA | MDE |
| INOFUENTES | MICHAEL JAIME | '1980 | P | 585520255 | 05/15/2024 00:00 | AV | 247 | O | | | APIS | ON BOARD | | | BOG | IAD |
| INOFUENTES | MICHAEL JAIME | '1980 | P | 585520255 | 04/23/2024 06:55 | AV | 148 | I | A541 | | APIS | ON BOARD | | | IAD | BOG |
| INOFUENTES | MICHAEL JAIME | '1980 | P | 585520255 | 04/17/2024 16:26 | CM | 444 | O | A541 | | APIS | | ON BOARD | | PTY | IAD |
| INOFUENTES | MICHAEL JAIME | '1980 | P | 585520255 | 04/02/2024 07:04 | AV | 148 | I | A541 | | APIS | ON BOARD | | | IAD | BOG |
| INOFUENTES | MICHAEL JAIME | '1980 | P | 8S20255 | 03/22/2024 16:15 | CM | 229 | O | A392 | | APIS | | ON BOARD | | PTY | ORD |
| INOFUENTES | MICHAEL JAIME | '1980 | P | 585520255 | 03/05/2024 03:40 | CM | 404 | I | A541 | | APIS | ON BOARD | | | IAD | PTY |
| INOFUENTES | MICHAEL JAIME | '1980 | P | 585520255 | 01/27/2024 14:50 | CM | 444 | O | A541 | | APIS | | ON BOARD | | PTY | IAD |
| INOFUENTES | MICHAEL JAIME | '1980 | P | 585520255 | 01/24/2024 06:06 | NK | 974 | I | A522 | | APIS | ON BOARD | | | FLL | MDE |

**For Official Use Only / Law Enforcement Sensitive**

**SA102**

US-00001089



## U.S. Customs and Border Protection
## U.S. Department of Homeland Security
### TECS - Person Encounter List

03/04/2025 14:33 EST                        Generated By: ███████████                        Page 3 of 15

| Last Name | First Name | DOB | Doc Type | Document Number | Date - Time (Eastern) | Carrier Code | Carrier Num. | I/O | Site | Insp | Type | Status | Updated Status | Ref | Arr Loc | Dep Loc |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| INOFUENTES | MICHAEL JAIME | ′1980 | P | 585520255 | 01/08/2024 19:31 | AA | 1129 | O | A520 | ███ | APIS | | | | MDE | MIA |
| INOFUENTES | MICHAEL JAIME | ′1980 | P | 585520255 | 01/08/2024 00:00 | AA | 923 | O | | | APIS | NOT ON BOARD | | | MDE | MIA |
| INOFUENTES | MICHAEL JAIME | ′1980 | P | 585520255 | 10/14/2023 03:59 | CM | 404 | I | A541 | | APIS | ON BOARD | | | IAD | PTY |
| INOFUENTES | MICHAEL JAIME | ′1980 | P | 585520255 | 10/10/2023 00:00 | LA | 4401 | O | | | APIS | ON BOARD | | | BOG | MIA |
| INOFUENTES | MICHAEL JAIME | ′1980 | P | 585520255 | 10/05/2023 14:41 | AV | 246 | I | A541 | | APIS | | | | IAD | BOG |
| INOFUENTES | MICHAEL JAIME | ′1980 | | | 10/05/2023 00:00 | AV | 246 | I | | | APIS | NOT ON BOARD | | | IAD | BOG |
| INOFUENTES | MICHAEL JAIME | ′1980 | P | 585520255 | 10/03/2023 00:00 | CM | 403 | O | | | APIS | NOT ON BOARD | | | PTY | IAD |
| INOFUENTES | MICHAEL JAIME | ′1980 | P | 585520255 | 10/03/2023 00:00 | AA | 1127 | O | | | APIS | ON BOARD | | | MDE | MIA |
| INOFUENTES | MICHAEL JAIME | ′1980 | P | 585520255 | 10/02/2023 00:00 | AA | 1129 | O | | | APIS | NOT ON BOARD | | | MDE | MIA |
| INOFUENTES | MICHAEL JAIME | ′1980 | P | 585520255 | 09/29/2023 00:00 | CM | 443 | I | | | APIS | NOT ON BOARD | | | IAD | PTY |
| INOFUENTES | MICHAEL JAIME | ′1980 | P | 585520255 | 09/27/2023 00:00 | CM | 403 | O | | | APIS | NOT ON BOARD | | | PTY | IAD |
| INOFUENTES | MICHAEL JAIME | ′1980 | P | 585520255 | 09/25/2023 00:00 | CM | 444 | O | | | APIS | NOT ON BOARD | | | PTY | IAD |
| INOFUENTES | MICHAEL JAIME | ′1980 | P | 585520255 | 09/23/2023 06:23 | DL | 254 | I | A471 | | APIS | ON BOARD | | | JFK | BOG |
| INOFUENTES | MICHAEL JAIME | ′1980 | P | 585520255 | 09/18/2023 00:00 | CM | 357 | O | | | APIS | ON BOARD | | | PTY | IAD |
| INOFUENTES | MICHAEL | ′1980 | P | 585520255 | 09/18/2023 00:00 | AA | 1127 | O | | | APIS | NOT ON BOARD | | | MDE | MIA |
| INOFUENTES | MICHAEL JAIME | ′1980 | P | 585520255 | 09/02/2023 16:24 | CM | 443 | I | A541 | | APIS | ON BOARD | | | IAD | PTY |
| INOFUENTES | MICHAEL JAIME | ′1980 | P | 585520255 | 09/02/2023 00:00 | CM | 488 | I | | | APIS | NOT ON BOARD | | | IAD | PTY |
| INOFUENTES | MICHAEL JAIME | ′1980 | P | 585520255 | 08/28/2023 00:00 | CM | 357 | O | | | APIS | ON BOARD | | | PTY | IAD |
| INOFUENTES | MICHAEL JAIME | ′1980 | P | 585520255 | 08/11/2023 14:54 | AV | 246 | I | A541 | | APIS | ON BOARD | | | IAD | BOG |
| INOFUENTES | MICHAEL JAIME | ′1980 | | | 08/11/2023 00:00 | AV | 246 | I | | | APIS | NOT ON BOARD | | | IAD | BOG |
| INOFUENTES | MICHAEL JAIME | ′1980 | P | 585520255 | 08/08/2023 00:00 | CM | 357 | O | | | APIS | ON BOARD | | | PTY | IAD |
| INOFUENTES | MICHAEL | ′1980 | P | 585520255 | 07/21/2023 11:35 | AA | 1130 | I | A520 | ███ | APIS | ON BOARD | | | MIA | BOG |

**For Official Use Only / Law Enforcement Sensitive**

**SA103**

US-00001090



## U.S. Customs and Border Protection
## U.S. Department of Homeland Security
### TECS - Person Encounter List

03/04/2025 14:33 EST                          Generated By: ███████████                          Page 4 of 15

| Last Name | First Name | DOB | Doc Type | Document Number | Date - Time (Eastern) | Carrier Code | Carrier Num. | I/O | Site | Insp | Type | Status | Updated Status | Ref | Arr Loc | Dep Loc |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| INOFUENTES | MICHAEL | ██/1980 | | | 07/21/2023 00:00 | AA | 1130 | I | | ███ | APIS | NOT ON BOARD | | | MIA | BOG |
| INOFUENTES | MICHAEL JAIME | ██/1980 | P | 585520255 | 07/17/2023 15:14 | AV | 247 | O | A541 | | APIS | | ON BOARD | | BOG | IAD |
| INOFUENTES | MICHAEL | ██/1980 | P | 585520255 | 07/08/2023 06:13 | AA | 1126 | I | A520 | | APIS | ON BOARD | | | MIA | BOG |
| INOFUENTES | MICHAEL JAIME | ██/1980 | P | 585520255 | 06/26/2023 01:37 | CM | 403 | O | A541 | | APIS | | ON BOARD | | PTY | IAD |
| INOFUENTES | MICHAEL | ██/1980 | | | 05/15/2023 00:00 | AV | 247 | O | | | APIS | NOT ON BOARD | | | BOG | IAD |
| INOFUENTES | MICHAEL JAIME | ██/1980 | P | 585520255 | 05/12/2023 15:43 | CM | 443 | I | A541 | | APIS | ON BOARD | | | IAD | PTY |
| INOFUENTES | MICHAEL JAIME | ██/1980 | P | 585520255 | 05/08/2023 00:00 | CM | 403 | O | | | APIS | ON BOARD | | | PTY | IAD |
| INOFUENTES | MICHAEL JAIME | ██/1980 | P | 585520255 | 04/22/2023 15:49 | CM | 443 | I | A541 | | APIS | ON BOARD | | | IAD | PTY |
| INOFUENTES | MICHAEL JAIME | ██/1980 | P | 585520255 | 04/17/2023 00:00 | CM | 403 | O | | | APIS | ON BOARD | | | PTY | IAD |
| INOFUENTES | MICHAEL | ██/1980 | P | 585520255 | 04/08/2023 06:08 | AA | 1122 | I | A557 | | APIS | ON BOARD | | | DFW | BOG |
| INOFUENTES | MICHAEL | ██/1980 | P | 585520255 | 03/28/2023 00:00 | AA | 913 | O | | | APIS | ON BOARD | | | BOG | MIA |
| INOFUENTES | MICHAEL JAIME | ██/1980 | P | 585520255 | 01/28/2023 07:14 | UA | 206 | I | A534 | | APIS | ON BOARD | | | IAH | BOG |
| INOFUENTES | MICHAEL JAIME | ██/1980 | P | 585520255 | 12/20/2022 00:00 | UA | 207 | O | | | APIS | ON BOARD | | | BOG | IAH |
| INOFUENTES | MICHAEL JAIME | ██/1980 | P | 585520255 | 12/10/2022 14:29 | CM | 443 | I | A541 | | APIS | ON BOARD | | | IAD | PTY |
| INOFUENTES | MICHAEL JAIME | ██/1980 | P | 585520255 | 12/05/2022 00:00 | CM | 403 | O | | | APIS | ON BOARD | | | PTY | IAD |
| INOFUENTES | MICHAEL | ██/1980 | P | 585520255 | 11/12/2022 06:13 | AA | 1141 | I | A520 | | APIS | ON BOARD | | | MIA | MDE |
| INOFUENTES | MICHAEL | ██/1980 | P | 585520255 | 07/04/2022 00:00 | B6 | 41 | O | | | APIS | ON BOARD | | | MDE | FLL |
| INOFUENTES | MICHAEL JAIME | ██/1980 | | | 06/20/2022 00:00 | AC | 1077 | O | | | APIS | NOT ON BOARD | | | YYZ | IAD |
| INOFUENTES | MICHAEL JAIME | ██/1980 | P | 585520255 | 06/07/2022 04:10 | AV | 8 | I | A52G | | APIS | ON BOARD | | | MIA | BOG |
| INOFUENTES | MICHAEL JAIME | ██/1980 | | | 06/04/2022 00:00 | AV | 8 | I | | | APIS | NOT ON BOARD | | | MIA | BOG |
| INOFUENTES | MICHAEL JAIME | ██/1980 | P | 585520255 | 05/31/2022 00:00 | AV | 5047 | O | | | APIS | ON BOARD | | | BOG | IAD |
| INOFUENTES | MICHAEL | ██/1980 | | | 05/30/2022 00:00 | AA | 1127 | O | | | APIS | NOT ON BOARD | | | MDE | MIA |

**For Official Use Only / Law Enforcement Sensitive**

**SA104**

US-00001091



### U.S. Customs and Border Protection
### U.S. Department of Homeland Security
### TECS - Person Encounter List

03/04/2025 14:33 EST                Generated By: ▮▮▮▮▮▮                Page 5 of 15

| Last Name | First Name | DOB | Doc Type | Document Number | Date - Time (Eastern) | Carrier Code | Carrier Num. | I/O | Site | Insp | Type | Status | Updated Status | Ref | Arr Loc | Dep Loc |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| INOFUENTES | MICHAEL JAIME | ▮1980 | P | 585520255 | 05/30/2022 00:00 | AV | 247 | O | | ▮ | APIS | NOT ON BOARD | | | BOG | IAD |
| INOFUENTES | MICHAEL | ▮1980 | P | 585520255 | 05/28/2022 05:50 | AA | 1141 | I | A520 | | APIS | ON BOARD | | | MIA | MDE |
| INOFUENTES | MICHAEL JAIME | ▮1980 | P | 585520255 | 05/16/2022 00:00 | CM | 403 | O | | | APIS | ON BOARD | | | PTY | IAD |
| INOFUENTES | MICHAEL | ▮1980 | P | 585520255 | 05/05/2022 07:42 | AA | 1141 | I | A520 | | APIS | ON BOARD | | | MIA | MDE |
| INOFUENTES | MICHAEL | ▮1980 | | | 05/05/2022 00:00 | AA | 1141 | I | | | APIS | NOT ON BOARD | | | MIA | MDE |
| INOFUENTES | MICHAEL | ▮1980 | P | 585520255 | 05/02/2022 00:00 | AA | 1127 | O | | | APIS | NOT ON BOARD | | | MDE | MIA |
| INOFUENTES | MICHAEL | ▮1980 | P | 585520255 | 05/02/2022 00:00 | AA | 923 | O | | | APIS | ON BOARD | | | MDE | MIA |
| INOFUENTES | MICHAEL | ▮1980 | P | 585520255 | 04/29/2022 11:40 | AA | 924 | I | A520 | | APIS | ON BOARD | | | MIA | MDE |
| INOFUENTES | MICHAEL | ▮1980 | | | 04/23/2022 00:00 | AA | 923 | O | | | APIS | NOT ON BOARD | | | MDE | MIA |
| INOFUENTES | MICHAEL JAIME | ▮1980 | P | 585520255 | 04/23/2022 00:00 | AV | 31 | O | | | APIS | ON BOARD | | | MDE | MIA |
| INOFUENTES | MICHAEL | ▮1980 | P | 585520255 | 04/22/2022 19:48 | NK | 1474 | I | A185 | | APIS | ON BOARD | | CUSTOMS | MCO | MDE |
| INOFUENTES | MICHAEL | ▮1980 | P | 585520255 | 04/22/2022 00:00 | NK | 236 | I | | | APIS | NOT ON BOARD | | | FLL | MDE |
| INOFUENTES | MICHAEL JAIME | ▮1980 | P | 585520255 | 04/19/2022 00:00 | CM | 403 | O | | | APIS | ON BOARD | | | PTY | IAD |
| INOFUENTES | MICHAEL JAIME | ▮1980 | P | 585520255 | 03/26/2022 04:23 | AV | 246 | I | A541 | | APIS | ON BOARD | | | IAD | BOG |
| INOFUENTES | MICHAEL | ▮1980 | P | 585520255 | 03/16/2022 00:00 | AA | 913 | O | | | APIS | ON BOARD | | | BOG | MIA |
| INOFUENTES | MICHAEL | ▮1980 | | | 03/16/2022 00:00 | AA | 2175 | O | | | APIS | NOT ON BOARD | | | BOG | JFK |
| INOFUENTES | MICHAEL | ▮1980 | P | 585520255 | 03/15/2022 00:00 | AA | 1137 | O | | | APIS | NOT ON BOARD | | | BOG | MIA |
| INOFUENTES | MICHAEL | ▮1980 | P | 585520255 | 03/01/2022 19:37 | AA | 1144 | I | A520 | | APIS | ON BOARD | | | MIA | CTG |
| INOFUENTES | MICHAEL | ▮1980 | P | 585520255 | 02/21/2022 00:00 | AA | 2175 | O | | | APIS | ON BOARD | | | BOG | JFK |
| INOFUENTES | MICHAEL | ▮1980 | P | 585520255 | 02/21/2022 00:00 | AA | 2165 | O | | | APIS | NOT ON BOARD | | | MDE | JFK |
| INOFUENTES | MICHAEL | ▮1980 | P | 585520255 | 02/12/2022 06:12 | AA | 2164 | I | A473 | | APIS | ON BOARD | | | JFK | MDE |
| INOFUENTES | MICHAEL | ▮1980 | P | 585520255 | 12/28/2021 00:00 | AA | 923 | O | | | APIS | NOT ON BOARD | | | MDE | MIA |

**For Official Use Only / Law Enforcement Sensitive**

**SA105**

US-00001092



## U.S. Customs and Border Protection
## U.S. Department of Homeland Security
## TECS - Person Encounter List

03/04/2025 14:33 EST                          Generated By: ███████████                          Page 6 of 15

| Last Name | First Name | DOB | Doc Type | Document Number | Date - Time (Eastern) | Carrier Code | Carrier Num. | I/O | Site | Insp | Type | Status | Updated Status | Ref | Arr Loc | Dep Loc |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| INOFUENTES | MICHAEL JAIME | ██1980 | P | 585520255 | 12/28/2021 00:00 | B6 | 41 | O | | ███ | APIS | ON BOARD | | | MDE | FLL |
| INOFUENTES | MICHAEL | ██1980 | P | 585520255 | 12/28/2021 00:00 | AA | 913 | O | | ███ | APIS | NOT ON BOARD | | | BOG | MIA |
| INOFUENTES | MICHAEL | ██1980 | P | 585520255 | 12/27/2021 00:00 | AA | 913 | O | | ███ | APIS | NOT ON BOARD | | | BOG | MIA |
| INOFUENTES | MICHAEL | ██1980 | P | 585520255 | 12/27/2021 00:00 | AA | 915 | O | | ███ | APIS | NOT ON BOARD | | | BOG | MIA |
| INOFUENTES | MICHAEL | ██1980 | P | 585520255 | 12/24/2021 00:00 | AA | 1123 | O | | ███ | APIS | NOT ON BOARD | | | BOG | DFW |
| INOFUENTES | MICHAEL | ██1980 | P | 585520255 | 12/24/2021 00:00 | AA | 1137 | O | | ███ | APIS | NOT ON BOARD | | | BOG | MIA |
| INOFUENTES | MICHAEL | ██1980 | P | 585520255 | 12/01/2021 05:43 | AA | 1835 | I | A520 | ███ | APIS | ON BOARD | | MANY | MIA | MEX |
| INOFUENTES | MICHAEL | ██1980 | P | 585520255 | 11/30/2021 06:14 | AA | 1126 | I | A520 | ███ | APIS | ON BOARD | | | MIA | BOG |
| INOFUENTES | MICHAEL | ██1980 | P | 585520255 | 11/30/2021 00:00 | AA | 1303 | O | | ███ | APIS | IN TRANSIT | | | MEX | MIA |
| INOFUENTES | MICHAEL JAIME | ██1980 | P | 585520255 | 05/14/2019 00:00 | AV | 247 | O | | ███ | APIS | ON BOARD | | | BOG | IAD |
| INOFUENTES | MICHAEL | ██1980 | | | 05/05/2019 00:00 | LA | 4364 | I | | ███ | APIS | NOT ON BOARD | | | MIA | BOG |
| INOFUENTES | MICHAEL JAIME | ██1980 | P | 585520255 | 05/04/2019 07:31 | AA | 1122 | I | A557 | ███ | APIS | ON BOARD | | | DFW | BOG |
| INOFUENTES | MICHAEL JAIME | ██1980 | P | 585520255 | 04/23/2019 00:00 | CM | 305 | O | | ███ | APIS | ON BOARD | | | PTY | IAD |
| INOFUENTES | MICHAEL JAIME | ██1980 | P | 585520255 | 04/03/2019 06:25 | UA | 1006 | I | A534 | ███ | APIS | ON BOARD | | | IAH | BOG |
| INOFUENTES | MICHAEL JAIME | ██1980 | | | 04/03/2019 00:00 | UA | 1006 | I | | ███ | APIS | NOT ON BOARD | | | IAH | BOG |
| INOFUENTES | MICHAEL JAIME | ██1980 | P | 585520255 | 01/02/2019 00:00 | AV | 37 | O | | ███ | APIS | ON BOARD | | | BOG | FLL |
| INOFUENTES | MICHAEL | ██1980 | P | 585520255 | 12/29/2018 05:19 | B6 | 40 | I | A522 | ███ | APIS | ON BOARD | | | FLL | MDE |
| INOFUENTES | MICHAEL JAIME | ██1980 | P | 585520255 | 10/01/2018 00:00 | B6 | 41 | O | | ███ | APIS | ON BOARD | | | MDE | FLL |
| INOFUENTES | MICHAEL JAIME | ██1980 | P | 585520255 | 09/25/2018 13:51 | AV | 34 | I | A52G | ███ | APIS | ON BOARD | | INS | MIA | CTG |
| INOFUENTES | MICHAEL JAIME | ██1980 | P | 585520255 | 07/08/2018 00:00 | AV | 247 | O | | ███ | APIS | ON BOARD | | | BOG | IAD |

**For Official Use Only / Law Enforcement Sensitive**

**SA106**

US-00001093



## U.S. Customs and Border Protection
## U.S. Department of Homeland Security
## TECS - Person Encounter List

03/04/2025 14:33 EST                    Generated By: ███████                    Page 7 of 15

| Last Name | First Name | DOB | Doc Type | Document Number | Date - Time (Eastern) | Carrier Code | Carrier Num. | I/O | Site | Insp | Type | Status | Updated Status | Ref | Arr Loc | Dep Loc |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| INOFUENTES | MICHAEL JAIME | 1980 | P | 720478902 | 03/30/2018 12:16 | CM | 226 | I | A52G | ███ | APIS | ON BOARD | | | MIA | PTY |
| INOFUENTES | MICHAEL JAIME | 1980 | P | 516896657 | 01/29/2018 00:00 | UA | 1006 | I | | | APIS | NOT ON BOARD | | | IAH | BOG |
| INOFUENTES | MICHAEL JAIME | 1980 | P | 516896657 | 01/19/2018 00:00 | UA | 1009 | O | | | APIS | ON BOARD | | | BOG | IAH |
| INOFUENTES | MICHAEL JAIME | 1980 | P | 516896657 | 01/13/2018 14:14 | CM | 304 | I | A541 | | APIS | ON BOARD | | | IAD | PTY |
| INOFUENTES | MICHAEL JAIME | 1980 | P | 516896657 | 01/02/2018 00:00 | CM | 305 | O | | | APIS | ON BOARD | | | PTY | IAD |
| INOFUENTES | MICHAEL JAIME | 1980 | P | 516896657 | 11/24/2017 05:31 | B6 | 40 | I | A522 | | APIS | ON BOARD | | | FLL | MDE |
| INOFUENTES | MICHAEL | 1980 | P | 516896657 | 09/30/2017 00:00 | NK | 859 | O | | | APIS | ON BOARD | | | CTG | FLL |
| INOFUENTES | MICHAEL JAIME | 1980 | P | 516896657 | 09/23/2017 07:04 | AA | 1122 | I | A557 | | APIS | ON BOARD | | | DFW | BOG |
| INOFUENTES | MICHAEL | 1980 | P | 516896657 | 09/19/2017 00:00 | AA | 1137 | O | | | APIS | ON BOARD | | | BOG | MIA |
| INOFUENTES | MICHAEL | 1980 | | | 09/18/2017 00:00 | AA | 1137 | O | | | APIS | NOT ON BOARD | | | BOG | MIA |
| INOFUENTES | MICHAEL JAIME | 1980 | P | 516896657 | 08/26/2017 07:23 | AA | 1122 | I | A557 | | APIS | ON BOARD | | | DFW | BOG |
| INOFUENTES | MICHAEL | 1980 | P | 516896657 | 08/21/2017 00:00 | AA | 1137 | O | | | APIS | ON BOARD | | | BOG | MIA |
| INOFUENTES | MICHAEL JAIME | 1980 | P | 516896657 | 08/05/2017 07:37 | UA | 1559 | I | A105 | | APIS | ON BOARD | | | EWR | BOG |
| INOFUENTES | MICHAEL JAIME | 1980 | P | 516896657 | 07/31/2017 00:00 | UA | 1009 | O | | | APIS | ON BOARD | | | BOG | IAH |
| INOFUENTES | MICHAEL | 1980 | P | | 07/21/2017 00:00 | AA | 1128 | I | | | APIS | NOT ON BOARD | | | MIA | MDE |
| INOFUENTES | MICHAEL | 1980 | P | | 07/19/2017 00:00 | AA | 923 | O | | | APIS | NOT ON BOARD | | | MDE | MIA |
| INOFUENTES | MICHAEL JAIME | 1980 | P | 516896657 | 07/01/2017 05:28 | UA | 1559 | I | A105 | | APIS | ON BOARD | | | EWR | BOG |

**For Official Use Only / Law Enforcement Sensitive**

**SA107**

US-00001094



**U.S. Customs and Border Protection**
**U.S. Department of Homeland Security**
**TECS - Person Encounter List**

03/04/2025 14:33 EST                    Generated By: ███████                    Page 8 of 15

| Last Name | First Name | DOB | Doc Type | Document Number | Date - Time (Eastern) | Carrier Code | Carrier Num. | I/O | Site | Insp | Type | Status | Updated Status | Ref | Arr Loc | Dep Loc |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| INOFUENTES | MICHAEL | █1980 | P | | 07/01/2017 00:00 | AA | 1126 | I | | ███ | APIS | NOT ON BOARD | | | MIA | BOG |
| INOFUENTES | MICHAEL | █1980 | P | 516896657 | 06/05/2017 00:00 | NK | 807 | O | | ███ | APIS | NOT ON BOARD | | | BOG | FLL |
| INOFUENTES | MICHAEL | █1980 | P | 516896657 | 06/05/2017 00:00 | AA | 915 | O | | ███ | APIS | ON BOARD | | | BOG | MIA |
| INOFUENTES | MICHAEL JAIME | █1980 | P | 516896657 | 05/27/2017 07:28 | B6 | 40 | I | A522 | ███ | APIS | ON BOARD | | | FLL | MDE |
| INOFUENTES | MICHAEL JAIME | █1980 | P | 516896657 | 05/15/2017 00:00 | AV | 583 | O | | ███ | APIS | ON BOARD | | | SAL | IAD |
| INOFUENTES | MICHAEL JAIME | █1980 | P | 516896657 | 04/14/2017 13:58 | NK | 2024 | I | A522 | ███ | APIS | ON BOARD | | | FLL | HAV |
| INOFUENTES | MICHAEL | █1980 | P | 516896657 | 04/14/2017 00:00 | NK | 2024 | I | | ███ | APIS | NOT ON BOARD | | | FLL | HAV |
| INOFUENTES | MICHAEL | █1980 | P | 516896657 | 04/13/2017 00:00 | NK | 2025 | O | | ███ | APIS | ON BOARD | | | HAV | FLL |
| INOFUENTES | MICHAEL JAIME | █1980 | P | 516896657 | 04/07/2017 00:02 | | | I | L237 | ███ | PEDESTRIAN | | | | | |
| INOFUENTES | MICHAEL JAIME | █1980 | P | 516896657 | 03/01/2017 05:28 | AV | 206 | I | A471 | ███ | APIS | ON BOARD | | | JFK | CTG |
| INOFUENTES | MICHAEL J | █1980 | | | 03/01/2017 00:00 | AV | 206 | I | | ███ | APIS | NOT ON BOARD | | | JFK | CTG |
| INOFUENTES | MICHAEL | █1980 | | | 02/28/2017 00:00 | NK | 236 | I | | ███ | APIS | NOT ON BOARD | | | FLL | MDE |
| INOFUENTES | MICHAEL | █1980 | P | 516896657 | 02/13/2017 00:00 | NK | 237 | O | | ███ | APIS | ON BOARD | | | MDE | FLL |
| INOFUENTES | MICHAEL JAIME | █1980 | P | 516896657 | 02/01/2017 14:13 | FC | 352 | I | A52G | ███ | APIS | ON BOARD | | | MIA | MDE |
| INOFUENTES | MICHAEL | █1980 | P | 516896657 | 12/30/2016 00:00 | NK | 237 | O | | ███ | APIS | ON BOARD | | | MDE | FLL |
| INOFUENTES | MICHAEL JAIME | █1980 | P | 516896657 | 12/16/2016 00:30 | CM | 488 | I | A541 | ███ | APIS | ON BOARD | | | IAD | PTY |
| INOFUENTES | MICHAEL JAIME | █1980 | P | 516896657 | 12/10/2016 00:00 | CM | 488 | I | | ███ | APIS | NOT ON BOARD | | | IAD | PTY |
| INOFUENTES | MICHAEL JAIME | █1980 | P | 516896657 | 12/02/2016 00:00 | CM | 488 | I | | ███ | APIS | NOT ON BOARD | | | IAD | PTY |

**For Official Use Only / Law Enforcement Sensitive**

**SA108**

US-00001095



## U.S. Customs and Border Protection
## U.S. Department of Homeland Security
### TECS - Person Encounter List

03/04/2025 14:33 EST    Generated By: ███████████    Page 9 of 15

| Last Name | First Name | DOB | Doc Type | Document Number | Date - Time (Eastern) | Carrier Code | Carrier Num. | I/O | Site | Insp | Type | Status | Updated Status | Ref | Arr Loc | Dep Loc |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| INOFUENTES | MICHAEL JAIME | ██/1980 | P | 516896657 | 11/02/2016 00:00 | CM | 304 | I | | ████ | APIS | NOT ON BOARD | | | IAD | PTY |
| INOFUENTES | MICHAEL JAIME | ██/1980 | P | 516896657 | 10/24/2016 00:00 | CM | 305 | O | | | APIS | ON BOARD | | | PTY | IAD |
| INOFUENTES | MICHAEL JAIME | ██/1980 | P | 516896657 | 09/17/2016 18:08 | B6 | 1704 | I | A522 | | APIS | ON BOARD | | | FLL | CTG |
| INOFUENTES | MICHAEL | ██/1980 | P | 516896657 | 08/15/2016 00:00 | FC | 353 | O | | | APIS | ON BOARD | | | MDE | MIA |
| INOFUENTES | MICHAEL JAIME | ██/1980 | P | 516896657 | 07/25/2016 20:02 | FC | 352 | I | A52G | | APIS | ON BOARD | | | MIA | MDE |
| INOFUENTES | MICHAEL JAIME | ██/1980 | P | 516896657 | 07/13/2016 00:00 | CM | 305 | O | | | APIS | ON BOARD | | | PTY | IAD |
| INOFUENTES | MICHAEL | ██/1980 | P | | 07/13/2016 00:00 | CM | 357 | O | | | APIS | NOT ON BOARD | | | PTY | IAD |
| INOFUENTES | MICHAEL | ██/1980 | P | 516896657 | 06/30/2016 00:00 | NK | 236 | I | | | APIS | ON BOARD | | | FLL | MDE |
| INOFUENTES | MICHAEL | ██/1980 | P | 516896657 | 06/23/2016 00:00 | NK | 237 | O | | | APIS | ON BOARD | | | MDE | FLL |
| INOFUENTES | MICHAEL | ██/1980 | P | 516896657 | 06/22/2016 00:00 | NK | 859 | O | | | APIS | NOT ON BOARD | | | CTG | FLL |
| INOFUENTES | MICHAEL JAIME | ██/1980 | P | 516896657 | 06/03/2016 15:40 | AV | 246 | I | A541 | | APIS | ON BOARD | | | IAD | BOG |
| INOFUENTES | MICHAEL JAIME | ██/1980 | P | 516896657 | 05/29/2016 00:00 | AV | 583 | O | | | APIS | ON BOARD | | | SAL | IAD |
| INOFUENTES | MICHAEL JAIME | ██/1980 | P | 516896657 | 05/04/2016 02:03 | CM | 490 | I | A52G | | APIS | ON BOARD | | | MIA | PTY |
| INOFUENTES | MICHAEL | ██/1980 | P | 516896657 | 04/27/2016 00:00 | FC | 353 | O | | | APIS | ON BOARD | | | MDE | MIA |
| INOFUENTES | MICHAEL | ██/1980 | P | 516896657 | 03/06/2016 19:11 | FC | 352 | I | A52G | | APIS | ON BOARD | | | MIA | MDE |
| INOFUENTES | MICHAEL | ██/1980 | P | 516896657 | 02/13/2016 00:00 | NK | 237 | O | | | APIS | ON BOARD | | | MDE | FLL |
| INOFUENTES | MICHAEL JAIME | ██/1980 | P | 516896657 | 02/02/2016 14:11 | AV | 582 | I | A541 | | APIS | ON BOARD | | | IAD | SAL |

**For Official Use Only / Law Enforcement Sensitive**

**SA109**

US-00001096



**U.S. Customs and Border Protection**
**U.S. Department of Homeland Security**
**TECS - Person Encounter List**

03/04/2025 14:33 EST      Generated By: █████████      Page 10 of 15

| Last Name | First Name | DOB | Doc Type | Document Number | Date - Time (Eastern) | Carrier Code | Carrier Num. | I/O | Site | Insp | Type | Status | Updated Status | Ref | Arr Loc | Dep Loc |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| INOFUENTES | MICHAEL JAIME | 1980 | P | 516896657 | 01/26/2016 00:00 | AV | 583 | O | | | APIS | ON BOARD | | | SAL | IAD |
| INOFUENTES | MICHAEL | 1980 | P | 516896657 | 01/22/2016 19:37 | NK | 236 | I | A522 | | APIS | ON BOARD | | | FLL | MDE |
| INOFUENTES | MICHAEL | 1980 | P | 516896657 | 01/15/2016 00:00 | FC | 353 | O | | | APIS | ON BOARD | | | MDE | MIA |
| INOFUENTES | MICHAEL | 1980 | P | 516896657 | 11/13/2015 19:13 | NK | 400 | I | A522 | | APIS | ON BOARD | | | FLL | BOG |
| INOFUENTES | MICHAEL JAIME | 1980 | P | | 11/12/2015 00:00 | UA | 1006 | I | | | APIS | NOT ON BOARD | | | IAH | BOG |
| INOFUENTES | MICHAEL | 1980 | P | | 11/10/2015 00:00 | NK | 400 | I | | | APIS | NOT ON BOARD | | | FLL | BOG |
| INOFUENTES | MICHAEL | 1980 | P | 516896657 | 11/02/2015 00:00 | NK | 237 | O | | | APIS | ON BOARD | | | MDE | FLL |
| INOFUENTES | MICHAEL | 1980 | P | 516896657 | 10/21/2015 18:39 | NK | 236 | I | A522 | | APIS | ON BOARD | | | FLL | MDE |
| INOFUENTES | MICHAEL JAIME | 1980 | P | 516896657 | 10/11/2015 00:00 | UA | 1068 | O | | | APIS | ON BOARD | | | BOG | EWR |
| INOFUENTES | MICHAEL | 1980 | P | 516896657 | 08/01/2015 00:00 | AA | 1136 | I | | | APIS | NOT ON BOARD | | | MIA | BOG |
| INOFUENTES | MICHAEL | 1980 | P | 516896657 | 07/31/2015 11:05 | B6 | 40 | I | A522 | | APIS | ON BOARD | | | FLL | MDE |
| INOFUENTES | MICHAEL | 1980 | P | 516896657 | 07/30/2015 00:00 | AA | 1128 | I | | | APIS | NOT ON BOARD | | | MIA | MDE |
| INOFUENTES | MICHAEL | 1980 | P | 516896657 | 07/17/2015 00:00 | AA | 1128 | I | | | APIS | NOT ON BOARD | | | MIA | MDE |
| INOFUENTES | MICHAEL | 1980 | P | 516896657 | 06/30/2015 00:00 | AA | 923 | O | | | APIS | ON BOARD | | | MDE | MIA |
| INOFUENTES | MICHAEL JAIME | 1980 | P | 516896657 | 06/26/2015 10:25 | | | I | L092 | | PEDESTRIAN | | | | | |
| INOFUENTES | MICHAEL JAIME | 1980 | P | 516896657 | 06/17/2015 15:34 | AV | 246 | I | A541 | | APIS | ON BOARD | | | IAD | BOG |
| INOFUENTES | MICHAEL | 1980 | P | 516896657 | 06/14/2015 00:00 | NK | 237 | O | | | APIS | ON BOARD | | | MDE | FLL |
| INOFUENTES | MICHAEL | 1980 | P | 516896657 | 05/22/2015 18:49 | NK | 400 | I | A522 | | APIS | ON BOARD | | | FLL | BOG |

**For Official Use Only / Law Enforcement Sensitive**

**SA110**

US-00001097



## U.S. Customs and Border Protection
## U.S. Department of Homeland Security
## TECS - Person Encounter List

03/04/2025 14:33 EST    Generated By: ███████████    Page 11 of 15

| Last Name | First Name | DOB | Doc Type | Document Number | Date - Time (Eastern) | Carrier Code | Carrier Num. | I/O | Site | Insp | Type | Status | Updated Status | Ref | Arr Loc | Dep Loc |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| INOFUENTES | MICHAEL | ██1980 | P | | 05/22/2015 00:00 | NK | 400 | I | | ███ | APIS | NOT ON BOARD | | | FLL | BOG |
| INOFUENTES | MICHAEL | ██1980 | P | 516896657 | 05/11/2015 00:00 | B6 | 41 | O | | ███ | APIS | ON BOARD | | | MDE | FLL |
| INOFUENTES | MICHAEL | ██1980 | P | 516896657 | 05/11/2015 00:00 | NK | 237 | O | | ███ | APIS | NOT ON BOARD | | | MDE | FLL |
| INOFUENTES | MICHAEL | ██1980 | P | 516896657 | 04/29/2015 14:21 | B6 | 1784 | I | A185 | ███ | APIS | ON BOARD | | CUSTOMS | MCO | BOG |
| INOFUENTES | MICHAEL JAIME | ██1980 | P | 516896657 | 04/20/2015 00:00 | AV | 247 | O | | ███ | APIS | ON BOARD | | | BOG | IAD |
| INOFUENTES | MICHAEL | ██1980 | P | 516896657 | 04/17/2015 17:33 | NK | 946 | I | A522 | ███ | APIS | ON BOARD | | | FLL | CTG |
| INOFUENTES | MICHAEL | ██1980 | P | 516896657 | 04/14/2015 00:00 | NK | 237 | O | | ███ | APIS | ON BOARD | | | MDE | FLL |
| INOFUENTES | MICHAEL | ██1980 | P | 516896657 | 03/28/2015 11:41 | B6 | 40 | I | A522 | ███ | APIS | ON BOARD | | | FLL | MDE |
| INOFUENTES | MICHAEL | ██1980 | P | | 03/28/2015 00:00 | B6 | 40 | I | | ███ | APIS | NOT ON BOARD | | | FLL | MDE |
| INOFUENTES | MICHAEL JAIME | ██1980 | P | | 03/27/2015 00:00 | B6 | 40 | I | | ███ | APIS | NOT ON BOARD | | | FLL | MDE |
| INOFUENTES | MICHAEL | ██1980 | P | 516896657 | 03/09/2015 00:00 | NK | 237 | O | | ███ | APIS | NOT ON BOARD | | | MDE | FLL |
| INOFUENTES | MICHAEL JAIME | ██1980 | P | 516896657 | 03/09/2015 00:00 | UA | 1032 | O | | ███ | APIS | ON BOARD | | | PTY | IAH |
| INOFUENTES | MICHAEL | ██1980 | P | 516896657 | 01/29/2015 07:13 | AA | 1122 | I | A557 | ███ | APIS | ON BOARD | | | DFW | BOG |
| INOFUENTES | MICHAEL | ██1980 | P | 516896657 | 01/28/2015 00:00 | AA | 1130 | I | | ███ | APIS | NOT ON BOARD | | | MIA | BOG |
| INOFUENTES | MICHAEL | ██1980 | P | | 01/26/2015 00:00 | AA | 913 | O | | ███ | APIS | NOT ON BOARD | | | BOG | MIA |
| INOFUENTES | MICHAEL | ██1980 | P | 516896657 | 01/25/2015 15:33 | YV | 5394 | I | A338 | ███ | APIS | ON BOARD | | | LAX | YVR |
| INOFUENTES | MICHAEL | ██1980 | P | | 01/25/2015 00:00 | YV | 5394 | I | | ███ | APIS | NOT ON BOARD | | | LAX | YVR |
| INOFUENTES | MICHAEL JAIME | ██1980 | P | | 01/25/2015 00:00 | UA | 246 | I | | ███ | APIS | NOT ON BOARD | | | ORD | YVR |
| INOFUENTES | MICHAEL | ██1980 | P | 516896657 | 01/12/2015 00:00 | 9E | 3963 | O | | ███ | APIS | ON BOARD | | | YXE | MSP |
| INOFUENTES | MICHAEL | ██1980 | P | 516896657 | 11/24/2014 19:48 | YV | 5348 | I | A338 | ███ | APIS | ON BOARD | | | LAX | YVR |

**For Official Use Only / Law Enforcement Sensitive**

**SA111**

US-00001098



## U.S. Customs and Border Protection
## U.S. Department of Homeland Security
## TECS - Person Encounter List

03/04/2025 14:33 EST                     Generated By: ▇▇▇▇▇▇                          Page 12 of 15

| Last Name | First Name | DOB | Doc Type | Document Number | Date - Time (Eastern) | Carrier Code | Carrier Num. | I/O | Site | Insp | Type | Status | Updated Status | Ref | Arr Loc | Dep Loc |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| INOFUENTES | MICHAEL JAIME | 1980 | P | 516896657 | 11/14/2014 00:00 | US | 506 | O | | ▇ | APIS | NOT ON BOARD | | | YVR | PHX |
| INOFUENTES | MICHAEL | 1980 | P | | 11/13/2014 00:00 | AA | 2369 | O | | ▇ | APIS | NOT ON BOARD | | | YVR | DFW |
| INOFUENTES | MICHAEL JAIME | 1980 | P | 516896657 | 11/13/2014 00:00 | US | 504 | O | | ▇ | APIS | NOT ON BOARD | | | YVR | PHX |
| INOFUENTES | MICHAEL | 1980 | P | 516896657 | 11/13/2014 00:00 | QX | 2204 | O | | ▇ | APIS | ON BOARD | | | YVR | SEA |
| INOFUENTES | MICHAEL | 1980 | P | 516896657 | 09/03/2014 07:49 | DL | 867 | T | A334 | ▇ | APIS | ON BOARD | | | MSP | YYC |
| INOFUENTES | MICHAEL | 1980 | P | 516896657 | 08/26/2014 00:00 | AA | 1037 | O | | ▇ | APIS | ON BOARD | | | YYC | DFW |
| INOFUENTES | MICHAEL | 1980 | P | 516896657 | 07/09/2014 10:23 | CP | 5764 | I | A354 | ▇ | APIS | ON BOARD | | | MSP | YXE |
| INOFUENTES | MICHAEL JAIME | 1980 | P | 516896657 | 07/07/2014 00:00 | RS | 7351 | O | | ▇ | APIS | ON BOARD | | | YYZ | DCA |
| INOFUENTES | MICHAEL JAIME | 1980 | P | 516896657 | 05/28/2014 19:08 | AF | 26 | I | A541 | ▇ | APIS | ON BOARD | | | IAD | CDG |
| INOFUENTES | MICHAEL JAIME | 1980 | P | 516896657 | 05/20/2014 00:00 | AF | 39 | O | | ▇ | APIS | ON BOARD | | | CDG | IAD |
| INOFUENTES | MICHAEL JAIME | 1980 | P | 018285142 | 01/19/2014 16:20 | UA | 5627 | T | A334 | ▇ | APIS | ON BOARD | | | ORD | YYC |
| INOFUENTES | MICHAEL JAIME | 1980 | P | 018285142 | 01/19/2014 00:00 | UA | 283 | I | | ▇ | APIS | NOT ON BOARD | | | ORD | YYC |
| INOFUENTES | MICHAEL JAIME | 1980 | P | 018285142 | 01/18/2014 00:00 | UA | 6478 | I | | ▇ | APIS | NOT ON BOARD | | | DEN | YYC |
| INOFUENTES | MICHAEL JAIME | 1980 | P | 018285142 | 01/17/2014 23:50 | | | I | L335 | ▇ | VEHICLE | | | | | |
| INOFUENTES | MICHAEL JAIME | 1980 | P | 01828514T | 01/17/2014 00:15 | | | I | L335 | ▇ | VEHICLE | | | | | |
| INOFUENTES | MICHAEL JAIME | 1980 | P | | 01/13/2014 00:00 | UA | 5744 | O | | ▇ | APIS | NOT ON BOARD | | | YYZ | IAD |
| INOFUENTES | MICHAEL JAIME | 1980 | P | 018285142 | 01/13/2014 00:00 | UA | 4649 | O | | ▇ | APIS | ON BOARD | | | YXE | DEN |
| INOFUENTES | MICHAEL JAIME | 1980 | P | 018285142 | 01/13/2014 00:00 | UA | 6385 | O | | ▇ | APIS | NOT ON BOARD | | | YYC | DEN |
| INOFUENTES | MICHAEL JAIME | 1980 | P | 018285142 | 12/01/2013 21:35 | UA | 1716 | I | A541 | ▇ | APIS | ON BOARD | | | IAD | SAL |
| INOFUENTES | MICHAEL JAIME | 1980 | P | 018285142 | 11/27/2013 00:00 | UA | 1441 | O | | ▇ | APIS | ON BOARD | | | SAL | IAH |
| INOFUENTES | MICHAEL JAIME | 1980 | P | 018285142 | 06/30/2013 00:00 | UA | 933 | I | | ▇ | APIS | ON BOARD | | | IAD | FRA |
| INOFUENTES | MICHAEL JAIME | 1980 | P | 018285142 | 06/19/2013 00:00 | UA | 974 | O | | ▇ | APIS | ON BOARD | | | GVA | IAD |

**For Official Use Only / Law Enforcement Sensitive**

**SA112**

US-00001099



**U.S. Customs and Border Protection**
**U.S. Department of Homeland Security**
**TECS - Person Encounter List**

03/04/2025 14:33 EST                    Generated By: ███████████                    Page 13 of 15

| Last Name | First Name | DOB | Doc Type | Document Number | Date - Time (Eastern) | Carrier Code | Carrier Num. | I/O | Site | Insp | Type | Status | Updated Status | Ref | Arr Loc | Dep Loc |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| INOFUENTES | MICHAEL | █1980 | P | P182235142 | 03/16/2013 12:02 | UA | 4127 | I | A534 | ███ | APIS | | | | IAH | GDL |
| INOFUENTES | MICHAEL | █1980 | P | P182235142 | 03/16/2013 00:00 | UA | 4115 | I | | ███ | APIS | | | | IAH | GDL |
| INOFUENTES | MICHAEL | █1980 | P | P182235142 | 03/12/2013 00:00 | UA | 4211 | O | | ███ | APIS | NOT ON BOARD | | | GDL | IAH |
| INOFUENTES | MICHAEL | █1980 | P | P182235142 | 03/12/2013 00:00 | UA | 4394 | O | | ███ | APIS | ON BOARD | | | GDL | IAH |
| INOFUENTES | MICHAEL | █1980 | P | 018285142 | 10/24/2012 21:14 | UX | 91 | I | A471 | ███ | APIS | ON BOARD | | | JFK | MAD |
| INOFUENTES | MICHAEL | █1980 | P | 018285142 | 10/21/2012 00:00 | UX | 92 | O | | ███ | APIS | ON BOARD | | | MAD | JFK |
| INOFUENTES | MICHAEL JAMIME | █1980 | P | 018285142 | 01/05/2012 16:09 | CO | 125 | I | A541 | ███ | APIS | ON BOARD | | | IAD | AMS |
| INOFUENTES | MICHAEL J | █1980 | P | | 11/30/2011 00:00 | CO | 124 | O | | ███ | APIS | ON BOARD | | | AMS | IAD |
| INOFUENTES | MICHAEL JAIME | █1980 | PN | 018285142 | 06/20/2011 00:00 | VES | 9128532 | I | AV04 | ███ | CRUISE SHIP | PASSENGER | | | 5201 | 7423 |
| INOFUENTES | MICHAEL JAIME | █1980 | PN | 018285142 | 06/17/2011 00:00 | VES | 9128532 | O | | ███ | CRUISE SHIP | PASSENGER | | | 8015 | AV04 |
| INOFUENTES | MICHAEL | █1980 | P | 018285142 | 08/16/2010 19:06 | NK | 400 | I | A522 | ███ | APIS | REQUEST | | | FLL | BOG |
| INOFUENTES | MICHAEL | █1980 | P | | 08/14/2010 00:00 | NK | 807 | O | | ███ | APIS | ON BOARD | | | BOG | FLL |
| INOFUENTES | MICHAEL JAIME | █1980 | P | 018285142 | 08/06/2010 17:52 | BA | 209 | I | A524 | ███ | APIS | | | MANY | MIA | LHR |
| INOFUENTES | MICHAEL JAIME | █1980 | P | 018285142 | 08/06/2010 00:00 | BA | 209 | I | ABFT | ███ | APIS | | | | MIA | LHR |
| INOFUENTES | MICHAEL JAIME | █1980 | P | 018285142 | 07/30/2010 00:00 | BA | 206 | O | | ███ | APIS | ON BOARD | | | LHR | MIA |
| INOFUENTES | MICHAEL JAIME | █1980 | P | 018285142 | 12/05/2009 00:00 | UA | 946 | O | | ███ | APIS | ON BOARD | | | AMS | IAD |

Total Number of Records: 246

| Legend |
|---|
| Loc |

**For Official Use Only / Law Enforcement Sensitive**

**SA113**

US-00001100



## U.S. Customs and Border Protection
## U.S. Department of Homeland Security
## TECS - Person Encounter List

03/04/2025 14:33 EST                    Generated By: ████████████                    Page 14 of 15

| Codes | Value |
|-------|-------|
| ORD | O'HARE INTERNATIONAL |
| MEX | MEXICO CITY, JUAREZ INTERNATIONAL |
| LAX | LOS ANGELES, CA INTL |
| 5201 | MIAMI |
| 8015 | BAHAMAS |
| FLL | FORT LAUDERDALE, FL |
| YXE | SASKATOON, CANADA |
| CDG | PARIS, CH. DE GAULLE |
| 7423 | NASSAU |
| JFK | JOHN F KENNEDY INTL |
| GDL | GUADALAJARA, MIGUEL HIDAL,MX |
| MDE | MEDELLIN, JOSE MARIE CORDOVA |
| PTY | PANAMA, OMAR TORRIJOS H |
| DFW | DALLAS/FT WORTH INTL |
| YVR | VANCOUVER INTL |
| LHR | LONDON / HEATHROW INTL |
| BOG | BOGOTA, ELDORADO |
| EWR | NEWARK INTERNATIONAL |
| PHX | SKY HARBOR INTL, PHOENIX |
| YYC | CALGARY |
| DCA | NATIONAL |
| MIA | MIAMI INTL, FL |
| AMS | AMSTERDAM-SCHIPHOL |
| AV04 | UNKNOWN |
| MSP | ST PAUL INTL |
| DEN | DENVER INTERNATIONAL AIRPORT |
| IAD | DULLES INTL |
| SEA | SEATTLE/TACOMA INTL |
| IAH | HOUSTON INTERCONTINENTAL |
| MAD | MADRID, BARAJAS |
| GVA | GENEVA, SWITZERLAND |
| FRA | FRANKFURT INT'L |
| CTG | RAFAEL NUNEZ |
| MCO | ORLANDO |
| ATL | WILLIAM B HARTSFIELD |
| YYZ | TORONTO, PEARSON INTERNATIONAL |
| HAV | JOSE MARTI INTL |
| SAL | SAN SALVADOR, EL SALVADOR INTL |

**For Official Use Only / Law Enforcement Sensitive**

**SA114**

US-00001101



## U.S. Customs and Border Protection
## U.S. Department of Homeland Security
## TECS - Person Encounter List

03/04/2025 14:33 EST　　　　　　Generated By: ████████　　　　　　Page 15 of 15

| Doc Type | |
|---|---|
| Codes | Value |
| P | P - PASSPORT |
| PN | PN - PASSPORT |

| Site Code | |
|---|---|
| Codes | Value |
| AV04 | AV04 - MIAMI, CRUISE TERMS 3, 4 AND 5 |
| A557 | A557 - DALLAS, FT WORTH AP, NEW FIS |
| A524 | A524 - CBP-MIAMI, AIRPORT CNTRL TERML |
| L237 | L237 - WATER ST  PROCESSING  & TRNING |
| A338 | A338 - CBP-VANCOUVER, INTL APT PRE-CL |
| A522 | A522 - CBP-FT LAUDERDALE, INTL APT T4 |
| L335 | L335 - CBP-SWEETGRASS, BORDER LANE |
| A534 | A534 - CBP-HOUSTON, BUSH INTL AIRPORT |
| A105 | A105 - NEWARK, INTL AP  TERMINAL C |
| A520 | A520 - CBP-MIAMI, AIRPORT N TERMINAL |
| A334 | A334 - CBP-CALGARY, PRECLEARANCE AP |
| A541 | A541 - CBP-WASH DC, DULLES INTL AP |
| A354 | A354 - CBP-MINNEAPOLIS, LINDBERGH TERMINAL T1 |
| A473 | A473 - NEW YORK, JFK AIRPORT, TERM 8 |
| ABFT | ABFT - INS-MIAMI OGC *HIST* |
| A471 | A471 - NEW YORK, JFK AIRPORT, TERM 4 |
| A185 | A185 - CBP-ORLANDO, INTL AP AIRSIDE 1 |
| A171 | A171 - CBP-ATLANTA, HARTSFIELD INTLAP |
| A392 | A392 - CBP-CHICAGO, OHARE AIRPORT |
| A52G | A52G - CBP-MIAMI, AIRPORT SO TERMINAL |
| L092 | L092 - CBP-NIAGARA FALLS, RAINBOW BR |

**For Official Use Only / Law Enforcement Sensitive**

**SA115**

# EXHIBIT 3
# FILED UNDER SEAL
# PURSUANT TO
# 18 U.S.C. § 3509(d)(2)

# EXHIBIT 4
# FILED UNDER SEAL
# PURSUANT TO
# 18 U.S.C. § 3509(d)(2)

# EXHIBIT 5
# FILED UNDER SEAL
# PURSUANT TO
# 18 U.S.C. § 3509(d)(2)

22

like.  But I'm not trying to badger.  I'm really just trying to understand.

MR. INOFUENTES:  Okay.  And then the word "romantic" is not a good word.  But okay.  The thing is, I was talking to her kind of like -- this is -- this is like somewhat like a -- like a girlfriend but not really serious.

SA LISS:  Okay.

MR. INOFUENTES:  And I don't know her age, exactly.  Okay?  I just can't.  We can go investigate this.  And I haven't had sex with her.  And I was talking --

SA FISHER:  You haven't had sex with her?  But then how is she potentially pregnant with your child?

MR. INOFUENTES:  She's not potentially -- she's not.  She's not.  But she was --

SA FISHER:  You said that.

MR. INOFUENTES:  I -- okay.  The thing is on this, I don't know if this was on the question, but there was a thing, the last time I spoke with her, she was telling me -- she was telling me that she's pregnant.  But I haven't had sex with her.

Okay, whatever -- whatever's necessary for -- I know this just doesn't make any sense.  Okay?  It doesn't make any sense.

Either way, I had sex with her or didn't have sex

**SA119**

US-00003762

36

Attraction.  Physical attraction.

SA FISHER:  Okay, so you're physically attracted to --

MR. INOFUENTES:  To minors.

SA FISHER:  -- a younger looking female.

MR. INOFUENTES:  But this is not like -- sure, sure.  But this is not an intentional, under 18, looking for minors.  But, yes, attracted -- physically attracted to the appearance of -- but not -- of underage women.

SA FISHER:  Okay.

MR. INOFUENTES:  But I'm not really happy with that answer.  I know that's where we have to go with this.

SA FISHER:  We don't have to go anywhere on this.

OFFICER BARONE:  You've just got to tell us what it is.  You don't have to keep trying to analyze it like that.  Just say what it is.

MR. INOFUENTES:  I haven't analyzed it enough, but I should.  Why?  Physical attraction to -- but not specifically to but including younger women.  But this is not like my objective, specifically, with women, or in Colombia specifically, but obviously the result.

SA FISHER:  Okay.  So with this -- you don't -- you said it's more of a relationship kind of, it's a romantic kind of relationship?

MR. INOFUENTES:  We're like on a friend basis

**SA120**

US-00003776

USCA4 Appeal: 26-4150    Doc: 41    Filed: 08/07/2026    Pg: 124 of 133

her at night.  Also we ate.  And then they also asked me, did you have sex with her?  That night, I didn't have sex with her.  I do know that.

So --

SA FISHER:  That night, you didn't.  But you have in the past?

MR. INOFUENTES:  No, I've had -- this is afterwards.  This is the first time that we were -- we were kind of like together.  Actually this picture --

SA FISHER:  I'm not asking about a specific time.  I am asking in general.

MR. INOFUENTES:  In general.

SA FISHER:  You told the Miami agents that you have.  You told the Miami agents that you know that San Diego is known for sex --

MR. INOFUENTES:  I do, yes.

SA FISHER:  -- and you can find young girls there.

MR. INOFUENTES:  But also other things.  But, yes, for that, too, as well.

SA FISHER:  Yes.  And I'm pretty positive, based on the recording, that you also said that you knew that ███████ sells herself for sex.  And --

MR. INOFUENTES:  I told her -- I told her that she needs to -- not specifically -- or I might have said

**SA121**

USCA4 Appeal: 26-4150    Doc: 41    Filed: 08/07/2026    Pg: 125 of 133

that.  I don't know.  I could have said that.  But --

SA FISHER:  Is it true or not?

MR. INOFUENTES:  That she does?

SA FISHER:  Yeah.

MR. INOFUENTES:  I don't have -- I don't know personally of what she -- if she has, if she is doing that.  But I was telling her at one point that she shouldn't be like, you know, staying out and, you know.  Her mother is also telling me this, too.  So -- but anyway, I don't know specifically about her other relationships.

SA FISHER:  Okay.

MR. INOFUENTES:  But anyway, about me and her, paying her for sex -- and this is what I told them in Miami that I had a -- you say sexual relationship or sexual relations.  That's what I did.

SA FISHER:  Okay, let's look through some text messages together.  Maybe this will help.  Okay?

All right, this is your phone.  Tell me what you see here.

MR. INOFUENTES:  Okay.  (In Spanish.)  This amount, 100,000 to 200,000.  Was this good?  And she said (in Spanish), I don't want to go alone to someplace nice, ciao.  So she said goodbye.  I'm just reading this word for word.

SA FISHER:  Um-humm.

**SA122**

US-00003824

85

MR. INOFUENTES:  (In Spanish), this is like I say things like this, "como" -- like a little bit like playing around.  I throw things out.  I said, so you want to go with someone else, it's fine.  (In Spanish.)  I said, this is another example of this, too.  In San Diego, there is a hotel.

SA FISHER:  Um-humm.

MR. INOFUENTES:  (In Spanish.)  Are you going to -- do you want to work?  (In Spanish), "but only a moment".  (In Spanish,) "for the reason you understand me".  I'm not sure what I'm talking to.  Oh, "if you want to meet up with me".  (In Spanish,) "and tell me how much you're going to give me".

So this is – this whole time, I'm giving her money to go for her to --

SA FISHER:  You're going to meet up at a hotel in San Diego?

MR. INOFUENTES:  Exactly.  And I'm saying this amount of money.

SA FISHER:  Okay.

MR. INOFUENTES:  But the thing is -- okay, yeah, go ahead.  Yes.

(In Spanish.)  That's the same conversation.

SA FISHER:  So this picked up right here.

MR. INOFUENTES:  "Por el palo y el huevo," I'd

**SA123**

US-00003825

USCA4 Appeal: 26-4150    Doc: 41    Filed: 08/07/2026    Pg: 127 of 133

say that's a neighborhood.  Yes, (in Spanish) 80,000.  She wants to know how much money I'm going to give her.  And I'm saying 80,000.

SA FISHER:  Um-humm.

MR. INOFUENTES:  (In Spanish), obviously, that's so little money.  Do you charge more to someone else?  Right, saying that she charges money for sex.  You shouldn't charge so little.

Okay, so the thing is, I know what she -- okay, this is self-explanatory.  I know that she -- she -- she takes money from guys.  I don't know exactly.  And it's as if I'm -- well, it is, that I'm offering her money to meet up with me.  Okay.  And I've given her money and I've met up with her -- but my relationship -- okay, she's there and I don't -- okay, let's go ahead.

Oh, this is a different -- different part of the conversation.

SA FISHER:  Um-humm.

MR. INOFUENTES:  Okay.  Are you -- this is -- I think -- I'm probably suffering more than you three, hopefully, okay?  I don't want to make this tedious for everyone, but definitely for me.

And so she -- some other guy, but I called people -- some other guy like -- okay -- like, what is the word, I can't think -- I don't go with anybody -- and then this is

**SA124**

US-00003826

something, no, please, no.

The thing is, she's trying to say that we're not going to meet up. And then I said, please go charge.

The thing is, I'm telling her that -- basically that -- that we're going to meet up or we're not going to meet up and I'm going to give you money or no, and it's there, and we can do this. This is exactly what it is.

And the idea is that she would be charging money for sex with someone, yes. And if not with me, with someone else. That's exactly right.

Okay, so I have an understanding of that. And that's true. That's true.

SA FISHER: So she says she's charging somebody. And you're paying --

MR. INOFUENTES: Oh, but me, specifically. Yeah, I was offering her money. But the thing is -- sounds really ridiculous.

So let me also look at the times of day here. This is like midnight. I don't charge 80 and I'm saying -- the thing is, I did not say you are worth more than gold, question mark, question mark. How much do you charge? And then I deleted some messages, I don't know why. And then it says, but you always (in Spanish), I always give you a lot of -- not a lot of money, but I always give you money.

So the thing is, I've been giving her money.

**SA125**

88

Okay?  At this time -- at this time, I'm not in -- I don't have -- I was thinking about meeting up with her again.

SA FISHER:  Can you just tell what is --

MR. INOFUENTES:  Explain this?

SA FISHER:  Yes.  Like it's -- she's charging you for something and you're paying for it.

MR. INOFUENTES:  Um-humm.

SA FISHER:  So what -- what is -- like what is that?  You're going to a hotel --

MR. INOFUENTES:  Um-humm.  And also I can tell you that I've never been to a hotel with her.  But the plan was, on more than one occasion, or at least on this one, to go to a hotel.

SA FISHER:  Right.  More than one occasion, you were talking about going to a hotel and paying her money.

MR. INOFUENTES:  Um-humm.  And for what?  Okay. It is -- it would be for like sex.  But I did not -- and I don't know if this matters to you or maybe it does matter to you.  The thing is, I've been giving her money.  And then after we stopped -- this is like when we're not talking anymore, I was thinking about meeting -- she wanted -- I was -- I was considering meeting up with her.  And this is -- these are the messages that we were going to meet up --

SA FISHER:  Um-humm.

**SA126**

US-00003828

USCA4 Appeal: 26-4150    Doc: 41    Filed: 08/07/2026    Pg: 130 of 133

MR. INOFUENTES:  -- and go to a hotel and give her money.  And -- and the assumption is for sex.

SA FISHER:  But I mean, you're not just going and meeting up with her just to give her money because you're a kind guy.

MR. INOFUENTES:  No, no.

SA FISHER:  I'm sure you are, but --

MR. INOFUENTES:  Whatever, I would.  But in this, I wouldn't give her money for sex.  But the thing is -- the thing is, I know I haven't been to a hotel with her.  She's always been to my house or public places.

But that's what this message is about, honestly, it is.  I was going to meet her at San Diego and go -- I don't know if it's believable to you that I didn't pay her at this time for sex for this exact amount of money.  I don't know if it's important to you or not, either.

SA FISHER:  No, I'm just trying to figure out --

MR. INOFUENTES:  The thing is the pattern.  The pattern is important.

SA FISHER:  The pattern's important.  And like, obviously, there's an exchange of money for something, because you're talking about a rate.

MR. INOFUENTES:  Um-humm.  Sex.  It sounds like sex.  But the thing is --

SA FISHER:  What else would there be a rate for?

**SA127**

US-00003829

Like explain to me what a rate --

MR. INOFUENTES:  No, there's no rate for something like -- basically --

SA FISHER:  She -- but you talk about a rate.

MR. INOFUENTES:  Exactly.  That -- I'm trying to agree with you and --

SA LISS:  I think he is.  He's agreeing that it's for sex.

MR. INOFUENTES:  I'm not saying not rate -- oh, yeah.  I'm going back to what I said just like a couple -- 30 seconds ago.  Yes, that's what the idea is here, to pay for sex.  And that is the rate.  But the thing is, it was not a real rate, because I was just kind of like joshing with her --

SA FISHER:  Okay, if it's a real rate or not, that was the intent?

MR. INOFUENTES:  That was the intent, yes.  Yes.  That's bad, but that's what was happening there, yes.  If that's maybe illegal, that's fine and whatever.  But the thing is, that's what -- that is what we're talking about, if you want to be precise.  Yes.

And my -- my knowledge or my understanding of her as what she does, at that time, that's what I was saying that she was going to do.  That's not always the circumstances --

**SA128**

US-00003830

91

SA FISHER:  Um-humm.

MR. INOFUENTES:  -- under which I meet with her. And that's what she's doing all her life.  But I know at that point in time, she was out with friends and she was out in this public place and she would be doing -- I know -- I mean, I can't tell you specifically, but I -- I believe that she does -- now, this doesn't make any sense to you.

Is she a prostitute?  That's what you want to know, right?  Is she a prostitute?  And I'm saying that I believe she --

SA FISHER:  Is she?

MR. INOFUENTES:  But the thing is, I know she has -- I mean, it seems to me that she has worked but as a prostitute.  And so at this time, a prostitute, yes.

SA FISHER:  She was working as a prostitute at this time you were paying her?

MR. INOFUENTES:  This is like really unusual for -- for -- like here in the U.S., I guess like -- I've never seen a prostitute in the U.S. before in my life.  And I was like, what are they, like, I'd be scared to -- even, I settlement a prostitute?  Or is that a transvestite?  I'm talking like when I was a little kid.  I'm like, what is that?  What is this going -- I'd be scared to talk to people like online.  It sounds really crazy.

**SA129**

US-00003831

92

But the thing is, I know -- this is like a socioeconomic thing there.  I know that -- that girls that are younger that are not home -- and she hasn't specifically told me, because she denies it actually when I ask her about it.  She says that she needs money and then I said -- I said, you're probably getting money from someone else.  And it's for sex in exchange for money.  She has denied it.  But I believe that's what she's doing, because it's kind of common.  It would be common for her to do that.

And so at this point in time, I'm offering her money to go and have sex with her at a hotel.  And did I give her money for sex in a hotel?  I don't even know if that part matters to you.  And I'm saying it didn't happen.

But the thing is, she has stayed with me, or her family has been over to my house and all that.

SA FISHER:  Right.  You've already said that you've had sex with her before.

MR. INOFUENTES:  Sex is penetration of vagina.

SA FISHER:  Yes.

MR. INOFUENTES:  And I'm saying I haven't.  I'm saying that specifically, I haven't.

OFFICER BARONE:  What about oral sex?  There's different ways --

MR. INOFUENTES:  No, oral sex, I don't do that

**SA130**

US-00003832