**No. 26-4150**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

UNITED STATES OF AMERICA
Plaintiff-Appellee,

v.

MICHAEL JAIME INOFUENTES,
Defendant-Appellant.

_____

Appeal from the United States District Court for the
Eastern District of Virginia

_____

**APPELLANT'S REPLY BRIEF**

_____

Brent Evan Newton
Attorney at Law
19 Treworthy Road
Gaithersburg, Maryland 20878
(202) 975-9105
brentevannewton@gmail.com

**Attorney for Appellant**
**Michael Jaime Inofuentes**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................iv

ARGUMENT…..........................................................................................................1

    Introduction.……………………………………………………………………1

I.   The Government Fails to Overcome Appellant's Hearsay Objection to the Admission of Exhibit 205A ...................................................................................2

    A.   The Threshold Question Whether Exhibit 205A Was Hearsay Requires *De Novo* Review .......................................................................................2

    B.   The Prosecutor Repeatedly Emphasized to the Jury that Exhibit 205A Was Individual-1's "Own Voice," Using it as Proof of the Matter Asserted Rather than for Any Non-Hearsay Purpose ...................................5

    C.   The Hearsay Error Was Not Harmless...........................................................9

II.   Appellant Preserved the Jury Unanimity Instruction Error, and the Error Was Not Harmless .......................................................................................................11

    A.   Appellant Repeatedly Argued that the District Court's Jury Instructions Should Require Jury Unanimity......................................................................11

    B.   The Jury Instructions Were Erroneous .......................................................14

    C.   The Jury Instruction Error Was Not Harmless ............................................16

III.  Appellant's Statements to the Agents in Miami Were Involuntary, and the Government Has Not Shown Beyond a Reasonable Doubt that the Admission of Those Statements at Trial Was Harmless......................................................18

    A.   Appellant's Incriminating Statements Were Involuntary ...........................18

    B.   The Admission of Appellant's Involuntary Statements Was Not Harmless .....................................................................................................20

IV.  Appellant's Fourth Amendment Claim Is Supported, Not Foreclosed, by this Court's Decision in *United States v. Belmonte Cardozo* ....................................22

    A. *Belmonte Cardozo* Indicated that Extensive Manual Searches (Such as What Occurred in Appellant's Case) Are Unconstitutional. ....................................22

    B. The Agents' Use of the WhatsApp Search Function in Order to Search the Massive Number of Texts Between Appellant and Individual-1 Went Beyond a "Manual" Search. ...................................................................................24

CONCLUSION .........................................................................................................26

CERTIFICATE OF COMPLIANCE ......................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. United States*,
 417 U.S. 211 (1974) ...............................................................................3
*Commonwealth v. Conefrey*,
 650 N.E.2d 1268 (Mass. 1995)..............................................................15
*Kotteakos v. United States*,
 328 U.S. 750 (1946) .............................................................................10
*Miller v. State*,
 16 P.3d 937 (Idaho 2000) .....................................................................13
*Ornelas v. United States*,
 517 U.S. 690 (1996) ...............................................................................3
*Ramos v. Louisiana*,
 590 U.S. 83 (2020) ...............................................................................16
*Riley v. California*,
 573 U.S. 373 (2014) .............................................................................25
*Sansing v. Ryan*,
 41 F.4th 1039 (9th Cir. 2022)...............................................................16
*Satterwhite v. Texas*,
 486 U.S. 249 (1988) .............................................................................17
*Smith v. Arizona*,
 602 U.S. 779 (2024) ...............................................................................3
*State v. Huerta*,
 947 P.2d 483 (Mont. 1997).....................................................................3
*Streetman v. Lynaugh*,
 812 F.2d 950 (5th Cir.) .........................................................................19
*Sullivan v. Louisiana*,
 508 U.S. 275 (1993) .............................................................................20
*Terry v. Ohio*,
 392 U.S. 1, (1968) ................................................................................23
*United States v. Aigbekaen*,
 943 F.3d 713 (4th Cir. 2019).................................................................25
*United States v. Bayer*,
 331 U.S. 532 (1947) .............................................................................21
*United States v. Belmonte Cardozo*,
 181 F.4th 461 (4th Cir. 2026).....................................................1, 22, 23, 24

*United States v. Brown*,
  202 F.3d 691 (4th Cir. 2000)...............................................................17

*United States v. Contreras*,
  149 F.4th 349 (4th Cir. 2025)..............................................................4

*United States v. Cunningham*,
  761 Fed. Appx. 203 (4th Cir. 2019) ...................................................4

*United States v. Edelen*,
  561 Fed. Appx. 226 (4th Cir. 2014) ...................................................5

*United States v. Elsheikh*,
  103 F.4th 1006 (4th Cir. 2024)............................................................4

*United States v. Ferguson*,
  140 F.4th 538 (4th Cir. 2025)..............................................................5

*United States v. Ferguson*,
  676 F.3d 260 (2d Cir. 2011)............................................................3, 4

*United States v. Giddins*,
  858 F.3d 870 (4th Cir. 2017)..............................................................19

*United States v. Gilbert*,
  57 F.3d 709 (9th Cir. 1995)............................................................3, 4

*United States v. Hands*,
  184 F.3d 1322 (11th Cir. 1999) ..........................................................9

*United States v. Jordan*,
  No. 22-40519, 2023 WL 6878907 (5th Cir. Oct. 18, 2023) ...............16

*United States v. Lall*,
  607 F.3d 1277 (11th Cir. 2010) ........................................................19

*United States v. McGlory*,
  968 F.2d 309 (3d Cir. 1992) ...............................................................2

*United States v. Nkongho*,
  107 F.4th 373 (4th Cir. 2024)............................................................25

*United States v. Olano*,
  507 U.S. 725 (1993) ...........................................................................14

*United States v. Patane*,
  542 U.S. 630 (2004) ...........................................................................21

*United States v. Pelton*,
  835 F.2d 1067 (4th Cir. 1987).............................................................19

*United States v. Reed*,
  908 F.3d 102 (5th Cir. 2018)...............................................................2

*United States v. Richardson*,
  526 U.S. 813 (1999) ...........................................................................16

*United States v. Rivera*,
  412 F.3d 562 (4th Cir. 2005)...............................................................2

*United States v. Robinson*,
  275 F.3d 371 (4th Cir. 2001) ...................................................................6, 8
*United States v. Rodriguez-Lopez*,
  565 F.3d 312 (6th Cir. 2009) .......................................................................3
*United States v. Santiful*,
  701 Fed. Appx. 242 (4th Cir. 2017) ..........................................................19
*United States v. Shears*,
  762 F.2d 397 (4th Cir. 1985) .....................................................................19
*United States v. Takhalov*,
  827 F.3d (11th Cir. 2016) ..........................................................................16
*United States v. Taylor*,
  745 F.3d 15 (2d Cir. 2014) ........................................................................21
*United States v. Taylor*,
  900 F.2d 779 (4th Cir. 1990) .....................................................................10
*United States v. Torcasio*,
  959 F.2d 503 (4th Cir. 1992) .....................................................................14
*United States v. Vonn*,
  535 U.S. 55 (2002) ......................................................................................9
*United States v. Walton*,
  10 F.3d 1024 (3d Cir. 1993) ......................................................................19
*United States v. Williams*,
  445 F.3d 724 (4th Cir. 2006) .......................................................................9
*Weiler v. United States*,
  323 U.S. 606 (1945) ...................................................................................10

**Statutes**

18 U.S.C. § 1591 ...........................................................................................15
18 U.S.C. § 2423 ...........................................................................................15

**Rules**

Fed. R. Crim. P. 30(d) ...................................................................................14
Fed. R. Crim. P. 51(b) ...................................................................................14
Fed. R. App. P. 32(f) .....................................................................................27
Fed. R. Evid. 801(c)(2)..........................................................................2, 3, 4

## ARGUMENT

### Introduction

None the government's arguments is persuasive.  First, Individual-1's voice-note (Government's Exhibit 205A) was inadmissible hearsay – a legal question reviewed *de novo* – and that error was not harmless.  Second, Appellant preserved his objection that, because the jury instructions failed to require unanimity as to a specific occasion, the instructions were erroneous; the error was not harmless.  Third, Appellant's statements to agents in Miami were involuntary in light of the agents' false assurances that honesty would spare him from legal "trouble;" the statements' admission was not harmless.  Fourth, the multi-hour search of appellant's iPhone, including the agents' targeted use of WhatsApp's search function, was not the kind of "routine" manual search permitted under *United States v. Belmonte Cardozo*, 181 F.4th 461 (4th Cir. 2026) – but, instead, was an unreasonable search unsupported by reasonable suspicion.  For these reasons, and those set forth in Appellant's opening brief, this Court should reverse Appellant's convictions and remand for a new trial.[1]

---

[1] Although irrelevant to any legal issue raised in Appellant's opening brief, the government erroneously describes Individual-1 as having been "homeless."  Gov't Br. 1, 5.  As Appellant's opening brief noted, Individual-1 lived with her mother, and Appellant encouraged her to return home.  Appellant's Opening Br. 24-25.

1

I.    **The Government Fails to Overcome Appellant's Hearsay Objection to the Admission of Exhibit 205A.**

The government's response to Appellant's hearsay objection to Exhibit 205A, Individual-1's voice-note, is meritless because: (1) the standard of review governing whether an out-of-court statement is hearsay or non-hearsay is *de novo*, not abuse-of-discretion; (2) Individual-1's voice-note was offered for the truth of the matter asserted and not for "context," nor was it adopted by Appellant; and (3) the harmless error standard places the burden on the *government* to show that the error was not harmless, which the government has failed to do in view of its repeated references to the voice-note in closing arguments and the jury's consideration of the voice-note.

**A. The Threshold Question of Whether Exhibit 205A Is Hearsay Requires *De Novo* Review.**

Whether an out-of-court statement must be excluded as hearsay under Federal Rule of Evidence 801(c)(2) is a legal issue that is reviewed *de novo*. *United States v. Rivera*, 412 F.3d 562, 566 (4th Cir. 2005) ("[W]e review evidentiary decisions for an abuse of discretion, but legal conclusions concerning the Rules of Evidence … *de novo*."); *see also United States v. Reed*, 908 F.3d 102, 120 (5th Cir. 2018) ("We review *de novo* the district court's legal conclusion about whether a statement is hearsay."); *United States v. McGlory*, 968 F.2d 309, 331-32 (3d Cir. 1992) ("'Hearsay' is a statement, other than one made by the declarant

while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.' FED. R. EVID. 801(c)(2) ….  Whether documents are hearsay is an issue of law subject to our plenary review."); *accord United States v. Ferguson*, 676 F.3d 260, 285 (2d Cir. 2011); *United States v. Rodriguez-Lopez*, 565 F.3d 312, 314 (6th Cir. 2009); *United States v. Gilbert*, 57 F.3d 709, 711 (9th Cir. 1995).

The Supreme Court does not defer to a trial court's threshold decision about whether an out-of-court statement is hearsay.  *See Anderson v. United States*, 417 U.S. 211, 219-20 (1974); *see also Smith v. Arizona*, 602 U.S. 779, 794-96 (2024) (engaging in *de novo* review of the threshold question whether an out-of-court statement was "offered for the truth of the matter asserted" for purposes of a Confrontation Clause analysis).  Just as an appellate court's deference to a trial court's determination of whether probable cause or reasonable suspicion existed would be improper, deference to a trial court's decision that an out-of-court statement is non-hearsay would lead to "[s]uch varied results [as] would be inconsistent with the idea of a unitary system of law." *Ornelas v. United States*, 517 U.S. 690, 697 (1996).  Unlike most other evidentiary issues, there is but one correct answer in deciding the threshold legal question of whether an out-of-court statement in a specific case qualifies as hearsay; for that reason, abuse-of-discretion review would be improper.  *See State v. Huerta*, 947 P.2d 483, 489 (Mont. 1997) (noting that an abuse-of-discretion standard "presumes that there

3

may be more than one correct answer to [a specific] evidentiary issue" and that "[o]therwise, there would be no basis for discretion").

None of the three cases cited by the government[2] addressed the threshold question whether an out-of-court statement is within the definition of hearsay under Rule 801(c)(2).  Instead, all three cases addressed the distinct issue of whether a hearsay exception in Rule 803, 804, or 807 applied.  Whether an out-of-court-statement was offered for the truth of the matter asserted is a threshold legal ruling – as opposed to an ordinary discretionary application of the rules of evidence (such as Rules 803, 804, and 807).  *See Gilbert*, 57 F.3d at 711 ("Whether the district court correctly construed the hearsay rule is a question of law reviewable *de novo*. …  We review a district court's decisions to admit evidence under exceptions to the hearsay rule for an abuse of discretion.") (citations and internal quotation marks omitted); *Ferguson*, 676 F.3d at 285 (same).

---

[2] *United States v. Contreras*, 149 F.4th 349, 372 (4th Cir. 2025) (applying abuse-of-discretion review to issue of whether hearsay was admissible under a hearsay exception in Rule 803); *United States v. Elsheikh*, 103 F.4th 1006, 1025 (4th Cir. 2024) (same); *United States v. Cunningham*, 761 Fed. Appx. 203, 206 (4th Cir. 2019) (same).

**B. The Prosecutor Repeatedly Emphasized to the Jury that Exhibit 205A Was Individual-1's "Own Voice," Using it as Proof of the Matter Asserted Rather than for Any Non-Hearsay Purpose.**

The government seeks to justify, for the first time on appeal (Gov't Br. 25), its misuse of Individual-1's voice-note for the truth of the matter asserted. The government contends that the voice-note was offered to show "context" and how Appellant reacted to it during negotiations for sex with Individual-1. Gov't Br. 23. Alternatively, the government argues that, even if it were offered for the truth of the matter asserted, it was admissible because Appellant "adopted" it. Gov't Br. 25-27. Both contentions are wrong.

An out-of-court statement offered to show its effect on the listener or for "context" is not hearsay when the statement's relevance turns on the fact that it was heard and acted on – *not on whether what was said was true*. *See United States v. Edelen*, 561 Fed. Appx. 226, 235 (4th Cir. 2014) (holding that an out-of-court statement was not hearsay in view of the "***non-truth-dependent purposes* for which the statement] was ultimately introduced**") (emphasis added); *see also United States v. Ferguson*, 140 F.4th 538, 545 (4th Cir. 2025) ("[W]hether a statement is hearsay *depends on the purpose for which it is offered*.") *see also id.* at 545 ("[W]hy a piece of evidence is offered matters.").

The government affirmatively offered Individual-1's voice-note at trial for "truth-dependent purposes" and not for the other purported reasons. In closing

arguments, the government made four references to Individual-1's words in the voice-note – each time for the truth of the matter asserted. The first time the prosecutor quoted pertinent parts to the jury – emphasizing that the jurors had heard that Individual-1 had not "charged" Appellant "cheaply" for sex in "her own words." JA2221. The prosecutor mentioned the voice-note three more times – each time using the hearsay statement as substantive evidence of a "commercial" sexual relationship. JA2231, JA2225, JA2248. Nowhere in its closing arguments did the government argue that the voice-note was offered for a limited purpose that was non-truth-dependent.

The government's fallback theory – that Appellant "adopted" Individual-1's voice-note (Gov't Br. 25-27) – is not supported by either the record or applicable law. An adoptive admission requires circumstances in which "an innocent defendant would normally be induced to respond" by denying the out-of-court accusation, supported by "sufficient foundational facts" that the defendant "heard, understood, and acquiesced" in the accusation's truth. *United States v. Robinson*, 275 F.3d 371, 382-83 (4th Cir. 2001).

The record is unclear regarding when Appellant heard the voice-note and how he responded to it. Appellant's iPhone shows that he received Individual-1's

6

voice-note at 4:03:59 a.m. UTC (11:03 p.m. local time)[3] on March 26, 2024. JA1711 (Gov't Exh. 201A).  The voice-note is 20 seconds long, *see* Gov't Exh. 205 (audio exhibit) – meaning that, assuming Appellant immediately listened to it upon receiving it, he would have finished *around 4:04:19.*  Appellant's WhatsApp texts sent immediately after the voice-note was received on his iPhone – a frowning emoji and the statement, "You're worth more than gold" – occurred at 4:04:02 and 4:04:11.  JA1712.[4]  Appellant's next text, sent at 4:04:24, was three question marks ("???").  JA1712.  He then sent another text, at 4:04:29, asking "How much do you charge?"  JA1712.

At trial, Appellant testified that the frowning emoji that he sent at 4:04:02 was in response to Individual-1's 20-second voice-note that he received at 4:03:59. JA2134.  Even assuming Appellant's memory was correct and the time data recorded on Government Exhibit 201A is incorrect, his text response still was not an "adoptive admission."   That is because Individual-1's voice-note had two different statements in it: (1) she first recounted that she had not "charged"

---

[3] The time-stamps on the texts are in Coordinated Universal Time (UTC), Gov't Exh. 201A (page 1), so that they are five hours ahead of the local time (Colombia Time) in Medellin.  (Thus, the text exchanges occurred a little after 11:00 p.m. local time on March 26, 2024, which is a little after 4:00 a.m. UTC on March 27, 2024.)  In the time-stamps in the texts, the first digits refer to the hour, the second digits refer to the minute, and the third digits refer to the seconds.

[4] Further calling into doubt the possibility that Appellant's texts sent a few seconds later were in response to the voice-note was the fact that Appellant was riding on his motorcycle when he was texting her.  JA1713-1714, JA2185, JA2205.

7

Appellant "cheaply" when they first met in February 2024; and (2) she then told Appellant not to look for her or talk to her in the San Diego neighborhood (the late night/early morning hours of March 26-27).[5]  Assuming Appellant actually did send the frowning emoji in response to the voice-note – which seems highly implausible in view of the time-stamps on the voice-note and subsequent texts – the emoji logically was a response to the latter statement rather than the former.  At the very least, Appellant's response was ambiguous.

The confused state of the record – in particular, the flurry of WhatsApp texts around the time that Individual-1 sent the voice-note (including one with three question marks, which clearly did not "adopt" the voice-note) – does not present "sufficient foundational facts from which the jury could infer that the defendant heard, understood, and acquiesced in the statement."  *Robinson*, 275 F.3d at 383 (citation and internal quotation marks omitted).

---

[5] Her voice-note stated in full:

> Michael, look, when we met you know that I did not charge you cheaply.  Sorry about that. And if you're expecting that because she told you at 80 I will go with you, no, you are very mistaken in life. ***And now, now I'm off to San Diego.  Don't talk to me when you see me, I don't want you to talk to me because I'm going to be working, don't look for me at all.  You didn't want to go with me and my girlfriends, fine, no big deal.  Fine, but I hope and expect that you won't be looking for me in San Diego.  Thank you***.

Gov't Exh. 205A (emphasis added).

8

Finally, even assuming *arguendo* that Appellant did hear, understand, and acquiesce in Individual-1's voice-note, his response would not qualify as an "adoptive admission." That is because there is no evidence that, when Appellant first had sex with Individual-1 in February 2024, he knew that she was a minor. The government's evidence was that Appellant learned that Individual-1 was a minor in March 2024. JA1632, JA2222-2223; *see also* Gov't Exhs. 219, 220, 225 & 226. To qualify as an adoptive admission, the proponent of the evidence must offer proof that the listener was presented with an *incriminating* statement directed to the listened and adopted it. *See United States v. Williams*, 445 F.3d 724, 735 (4th Cir. 2006). Individual-1's statement that she charged Appellant for sex in February (before Appellant knew that she was a minor) thus does not support the government's "adoptive admission" argument because commercial sex with a person 18 years or older is not a crime under the statutes charged in the indictment (or Colombian law). Appellant's Opening Br. 3 n.4.

## C. The Hearsay Error Was Not Harmless.

Finally, the government's argument that any error is harmless (Gov't Br. 27-30) is erroneous because it misstates the burden of persuasion and also considers the evidence in a light most favorable to the government. *See United States v. Vonn*, 535 U.S. 55, 62 (2002) (noting that it is the government's "burden of showing that any error was harmless"). The government's arguments about the

9

"overwhelming" evidence of Appellant's guilt erroneously considers the testimony and evidence in a light most favorable to the government rather than, as required, in the light most favorable to the defense. *See United States v. Hands*, 184 F.3d 1322, 1330 n.23 (11th Cir. 1999), *corrected on other grounds on reh'g*, 194 F.3d 1186 (11th Cir. 1999); *see also Weiler v. United States*, 323 U.S. 606, 611 (1945) ("We are not authorized to look at the printed record, resolve conflicting evidence, and reach the conclusion that the error was harmless because we think the defendant was guilty. That would be to substitute our judgment for that of the jury and, under our system of justice, juries alone have been entrusted with that responsibility.").

Appellant presented a defense at trial – supported by his own testimony – that he did not intend to pay Individual-1 for commercial sex at any point and never did so. Jurors clearly took that defense seriously by deliberating for several hours, and we know from their note during deliberations that they considered Individual-1's voice-note in rejecting that defense. The government's four references to Individual-1's voice-note in closing arguments and the jury's consideration of the voice-note foreclose the conclusion that the error did not "influence the jury, or had but very slight effect … [or that] the judgment was not substantially swayed by the error." *Kotteakos v. United States*, 328 U.S. 750, 764-65 (1946); *see also United States v. Taylor*, 900 F.2d 779, 783 (4th Cir. 1990).

10

**II.    Appellant Preserved the Jury Unanimity Instruction Error, and the Error Was Not Harmless.**

Contrary to the government's assertion (Gov't Br. 30-41), Appellant preserved his objection to the district court's jury instructions for failing to require jury unanimity and, therefore, did not waive his right to raise that issue on appeal. In addition, the government's arguments that the error was harmless lack merit.

**A. Appellant Repeatedly Argued that the District Court's Jury Instructions Should Require Jury Unanimity.**

In the district court proceedings, Appellant preserved the jury instruction error that he has raised in his opening brief on appeal. His trial counsel repeatedly argued that the district court should instruct the jurors that they needed to be unanimous about at least one specific occasion on which Appellant's *mens rea* and *actus reus* concurrently occurred in soliciting, attempting to engage in, or actually engaging in "commercial" sex with Individual-1. JA0657-0658,[6] JA0669-0671,[7] JA0022-0033.[8]

---

[6] Trial counsel's September 4, 2025 pretrial "Memorandum on Jury Instructions" argued that:

> Instructing the jury that the alleged offense occurred "between on or about" permits – or even encourages – the jury to consider actions and mental states of the defendant across a ten-month time period and return a guilty verdict without unanimously deciding, as required, that the actions and mental state concurred at the same time on some date

11

reasonably near the date alleged by the government.  The jury should not be permitted to consider and cherry-pick from any and all actions and mental states of the defendant that may have occurred on any and all dates within a ten-month time frame.

JA0658.

[7] At the final pretrial conference on September 8, 2025, trial counsel argued that:

[T]here should be an instruction to the jury that they have to be unanimous as to the specific date that he allegedly committed this offense. … There should be an instruction … that since there are now going to be evidence and allegations that he committed not one, not two, not three, maybe even four specific acts of attempted commercial sex or commercial sex that there has to be an instruction to the jury that they must be unanimous as to what specifically they are being charged to render a verdict on.

JA0669-0670.

[8] At the September 10, 2025 jury charge conference, trial counsel argued that:

The defense position is that [the proposed jury instructions] impermissibly would consider or allow the jury to consider … such a broad range of conduct that they may not find a concurrence between guilty mind and guilty act.  And, so that permits them to consider just – cherry-pick among – … an ill-meaning mind here and a wrongful act here, and then lump those things together, whereas, the law is clear those things have to occur at the same time. …  [W]ithin that [broad date] range [charged] those things have to coalesce on some date on or about what the government charged. The guilty act and the guilty mind.  And so, the need to not include that language is to emphasize, essentially, to the jury without – specifically emphasizing that sort of by omission that those things have to line up on the same day while it could be a particular day within that range, but they have to all line up.  They can't just cherry-pick from we think there was an ill-meaning intent here and there was a bad act somewhere else.

JA0022-0023.

12

The government's waiver argument is erroneous for multiple reasons. First, the government faults Appellant for not moving to dismiss the superseding indictment as "duplicitous." Gov't Br. 31. The issue on appeal is about the jury instructions – not the indictment. Second, the government asserts waiver based on Appellant's proposing a jury verdict form that itself did not require unanimity about a specific occasion. Gov't Br. 33-34. But the error alleged is in the district court's jury instructions – not in the verdict form. And, third, the government conflates two related positions that Appellant's trial counsel took at two different points in the proceedings. When trial counsel told the court – "We're not saying they have to allege a specific date [as opposed to 'on or about' a date] …. It's the 'between on or about' that we have an issue with," JA0024 – counsel was addressing whether Instruction 26 should track the indictment's "*between* on or about" language. Counsel was not disclaiming the closely related argument that the jury had to be unanimous that Appellant committed each offense on at least one specific occasion. JA0668-0671.[9] Declining to insist that the government allege and prove each charged offense occurred on a precise calendar date is not the same as abandoning the requirement that all twelve jurors agree that the *mens rea* and *actus reus* elements of each charged offense converged on the same occasion,

---

[9] In trial counsel's prior objection (on September 8, 2025), counsel's reference to a "specific date" (JA0669-0670) clearly meant a specific occasion on which Appellant and Individual-1 had sex.

13

whatever that occasion's exact date. *See Miller v. State*, 16 P.3d 937, 942-944 (Idaho 2000) (distinguishing the requirement of a specific date alleged in the indictment from the requirement of jury agreement on "a single agreed upon incident").

"Waiver is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993). Nothing in the record shows that Appellant intentionally abandoned the unanimity objection. To the contrary, Appellant sufficiently called the alleged error to the district court's attention, thus preserving the issue for *de novo* review. FED. R. CRIM. P. 51(b) ("A party may preserve a claim of error by informing the court – when the court ruling or order is made or sought – of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection."); FED. R. CRIM. P. 30(d) ("A party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate.").

**B. The Jury Instructions Were Erroneous.**

This is not, as the government contends, a case like *Torcasio*, which involved "an ongoing set of dealings" in which the precise timing of any act was immaterial to guilt. Gov't Br. 36 (citing *United States v. Torcasio*, 959 F.2d 503, 508 (4th Cir. 1992)). The fact genuinely disputed at trial was not simply when

14

Appellant and Individual-1 engaged in sex, but whether any given interaction was "commercial." Appellant specifically denied that the February 25, March 3-4, and April 1, 2024 interactions were commercial, while offering an innocent, non-commercial explanation for the one exchange – March 26-27, 2024 – that most resembled a solicitation (but was not, in fact, actually intended to be one). JA2088, JA2126-2144. That is precisely the special circumstance distinguishing this case from *Torcasio*: a genuine risk existed that some jurors convicted based on one occasion they believed commercial while others convicted based on an entirely different occasion, with no twelve-person agreement as to any single one. *See Commonwealth v. Conefrey*, 650 N.E.2d 1268, 1272 (Mass. 1995) ("Some jurors may have convicted the defendant on the basis of one alleged incident, while others may have convicted him based upon any of the seven other alleged incidents."). The jury's own note asking about the date of a single exhibit – evincing real-time uncertainty about which occasion corresponded to the evidence – corroborates that this was not the "little, if any, chance of jury confusion" scenario the government invokes. Gov't Br. 36.

The government is correct that no published decision of this Court has addressed a specific unanimity instruction under 18 U.S.C. §§ 1591 or 2423 charged across a multi-month range. But the absence of a case squarely on point does not immunize an error resting on the clearly established constitutional

15

principle that a jury must unanimously agree on which act supports a conviction where the evidence permits jurors to convict based on materially different underlying conduct. *See Ramos v. Louisiana*, 590 U.S. 83, 89-93 (2020); *United States v. Richardson*, 526 U.S. 813, 817-20 (1999). That Sixth Amendment principle of jury unanimity applies across the board to all statutes. That the Supreme Court's interpretation of the Constitution did not happen to involve these precise statutes is irrelevant. The jury instructions were erroneous under the Sixth Amendment.

### C. The Jury Instruction Error Was Not Harmless.

The government's harmlessness argument assumes that the evidence of "commercial" intent was so overwhelming as to every occasion that no reasonable juror could have found otherwise. The government errs by viewing the evidence in a light most favorable to the government. In conducting harmless error analysis, an appellate court must view the evidence in a light most favorable to the defendant-appellant.[10]

---

[10] *See Sansing v. Ryan*, 41 F.4th 1039, 1054-55 (9th Cir. 2022) (agreeing with the dissent's legal statement about how *Chapman* harmless-error analysis must be conducted but disagreeing with the dissent's position about how the state supreme court conducted it); *id.* at 1064 (Berzon, J., dissenting) ("The question is not what a court believes a reasonable jury *would* have found, but what a reasonable jury *could* have found, given the evidence in the record. … Critically, … the Arizona Supreme Court was required, but failed, to view the evidence in the light most favorable to Sansing [in conducting harmless-error analysis]."); *see also United*

16

Viewing the evidence in a light most favorable to Appellant, he offered a competing, non-commercial account of his relationship with Individual-1 corroborated by WhatsApp texts the government's brief does not address – declarations of love, discussions of Individual-1 living with Appellant, and a text from Individual-1 that her mother wanted to meet him. *See, e.g.*, JA0952, JA0959, JA0969, JA0976-0977. Jurors who credited that account as to some, but not all, of the charged occasions is not a fanciful possibility on this record; it is exactly what the absence of a specific unanimity instruction permitted, without any assurance of a unanimous verdict on a single occasion for either count. Therefore, the government has failed to meet its burden to prove beyond a reasonable doubt that the error is harmless. *See United States v. Brown*, 202 F.3d 691, 699-703 (4th Cir. 2000).

---

*States v. Jordan*, No. 22-40519, 2023 WL 6878907 (5th Cir. Oct. 18, 2023) (unpublished) (noting that, when conducting harmless-error analysis, an appellate court must "construe the evidence and make inferences in the light most favorable to the defendant") (citation and internal quotation marks omitted); *cf. United States v. Takhalov*, 827 F.3d at 1307, 1322 (11th Cir. 2016) (noting, in applying harmless-error analysis, that the "evidence against the defendants here was not so overwhelming that an acquittal would have been irrational."). The Supreme Court has noted the difference between insufficient-evidence review (where the evidence must be assessed in a light most favorable to the prosecution) and harmless-error review (where the evidence is not assessed in that manner). *See Satterwhite v. Texas*, 486 U.S. 249, 258-59 (1988).

17

**III.  Appellant's Statements to the Agents in Miami Were Involuntary, and the Government Has Not Shown Beyond a Reasonable Doubt that the Admission of Those Statements at Trial Was Harmless.**

Appellant has shown that his incriminating statements made to law enforcement agents in Miami were involuntary as a result of the government's deception and false promise that Appellant would not be in legal "trouble" if he made incriminating statements.  Appellant's Opening Br. 40-44.  The government's arguments are contrary to precedents in this Circuit and others holding that a false promise that a suspect's incriminating statements will not be held against him render subsequent incriminating statements involuntary and subject to suppression.  Alternatively, the government contends that, even if the statements were involuntary, their admission was harmless.  Gov't Br. 41-50.  The government is wrong.

**A. Appellant's Incriminating Statements Were Involuntary.**

The government has not accurately described what occurred during the interrogation of Appellant in Miami.  Gov't Br. 42-44.  The agents did not merely warn Appellant of the consequences of lying to them or merely promise "leniency" if Appellant told them "the truth" about having sex with Individual-1.  They falsely told him that, if he told them the truth about having sex with Individual-1, he would not be in legal trouble.

18

To lower Appellant's guard, the agents began with their "box-checking" spiel (*see* Appellant's Opening Br. 9-11), concluding with one agent stating that Appellant needed to be truthful, and then the other stating "this is honestly our last checkbox and then we can wrap up this interview." JA0296-0297. The agents then explicitly told Appellant that he would not be in legal "trouble" if he admitted to having had sex with Individual-1 (as opposed to lying to the agents about it). *See* Appellant's Opening Br. 11-14. The two agents went back and forth – continuing to badger Appellant to "Just say it"; "Please be honest"; "You just have to say it. Plain English"; and "Just spit it out so we can wrap this interview up, honestly. I know you have another flight to catch." JA0298-0300.

Significantly, the government's brief not only fails adequately to address these very specific improper statements but also fails to address the well-established precedent of this Court and other circuit courts that have held that a false promise to a suspect that incriminating statements will not be used against him renders subsequent incriminating statements involuntary. *See* Appellant's Br.41-43 (citing *United States v. Giddins*, 858 F.3d 870, 883-84 (4th Cir. 2017); *United States v. Santiful*, 701 Fed. Appx. 242, 244 n.1 (4th Cir. 2017); *United States v. Pelton*, 835 F.2d 1067, 1073 (4th Cir. 1987); *United States v. Shears*, 762 F.2d 397, 401-02 & n.5 (4th Cir. 1985); *United States v. Lall*, 607 F.3d 1277, 1286 (11th Cir. 2010); *United States v. Walton*, 10 F.3d 1024, 1030 (3d Cir. 1993); and

19

*Streetman v. Lynaugh*, 812 F.2d 950, 957 (5th Cir.), *reh'g denied*, 818 F.2d 865 (5th Cir. 1987)).[11]

The district court erred by failing to suppress Appellant's incriminating statements in Miami and also by failing to consider the effect of those involuntary statements on Appellant's later statements at Dulles Airport and other evidence derived from the Miami statements (as discussed *infra*).

**B. The Admission of Appellant's Involuntary Statements Was Not Harmless.**

The government alternatively argues that, even if the district court erred by failing to suppress the statements, the error was harmless because the other evidence at trial was "overwhelming." Gov't Br. 49-50. Again, the government errs.

As an initial matter, even only considering Appellant's incriminating statements in Miami, the government cannot show that that "the guilty verdict actually rendered in this trial was *surely unattributable to the error*." *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993) (emphasis added). Yet, even assuming *arguendo* that the admission of Appellant's statements in Miami by themselves was harmless beyond a reasonable doubt, the government has failed to account for the other evidence derived from those involuntary statements – including

---

[11] The government cites two of these cases – *Pelton* and *Giddins* – but for distinct propositions of law. Gov't Br. 42, 44.

20

Appellant's subsequent incriminating statements to agents at Dulles Airport. *See*
*United States v. Patane*, 542 U.S. 630, 640 (2004) ("Those subjected to coercive
police interrogations have an automatic protection from the use of their involuntary
statements (*or evidence derived from their statements*) in any subsequent criminal
trial.") (citation and internal quotation marks omitted; emphasis added); *United
States v. Taylor*, 745 F.3d 15, 25-26 (2d Cir. 2014) ("[T]he use of coercive and
improper tactics in obtaining an initial confession may warrant a presumption of
compulsion as to a second one, even if the latter was obtained after properly
administered *Miranda* warnings. . . . That is so because, 'after an accused has once
let the cat out of the bag by confessing, no matter what the inducement, he is never
thereafter free of the psychological and practical disadvantages of having
confessed.'") (quoting *United States v. Bayer*, 331 U.S. 532, 540 (1947)).

If this Court determines that Appellant's statements to agents in Miami were
involuntary, this Court should remand to the district court to address whether those
statements tainted other evidence later obtained by Government. In the district
court, Appellant moved to suppress not only his statements at the Miami airport
but also all "evidence that was obtained as a direct result of the impermissibly-
obtained statements during the Miami Interview, including the electronic evidence
obtained from search warrants that are based on those same statements as well as
his interview at Dulles International Airport." JA0348. Yet the district court did

not address that issue because it found, as a threshold matter, that Appellant's statements in Miami were voluntary. JA0253, JA0270. At the very least, this Court should remand to the district court to address that issue before this Court engages in a harmless error analysis.

## IV.  Appellant's Fourth Amendment Claim Is Supported, Not Foreclosed, by this Court's Decision in *United States v. Belmonte Cardozo*.

The government erroneously contends that this Court's decision in *United States v. Belmonte Cardozo*, 181 F.4th 461 (4th Cir. 2026), forecloses Appellant's Fourth Amendment claim because, according to the government, that decision holds that all "manual" searches of smartphones at the border are "routine" searches (and, thus, do not require even reasonable suspicion). Gov't Br. 50-52. Contrary to the government's position, *Belmonte Cardozo* supports, rather than forecloses, Appellant's Fourth Amendment claim.

### A. *Belmonte Cardozo* Indicated that Extensive Manual Searches (Such as What Occurred in Appellant's Case) Are Unconstitutional.

In *Belmonte Cardozo*, this Court, although it stated that generally "manual" searches of smartphones at the international border are "routine," specifically only rejected *that defendant's* argument that a warrantless manual search of *his* smartphone violated the Fourth Amendment. *Id.* at 471. This Court was careful to say that its holding was not categorical for all "manual" searches:

22

*None of this is to say that there aren't limits to manual searches.* Were the government to devote the manpower and time needed to conduct lengthy manual searches in a way that would deprive an individual of their phone for extended periods of time, other Fourth Amendment principles may come into play. For example, "a search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope." *Terry v. Ohio*, 392 U.S. 1, 18, (1968). *But the facts of this case do not test those limits.*

*Id.* at 472 (emphasis added).

The search of Appellant's iPhone was qualitatively different from the one at issue in *Belmonte Cardozo*; the facts of Appellant's case *do* test those limits. As explained in Appellant's opening brief, multiple agents at the Miami airport seized and searched Appellant's smartphones – including searching the many hundreds of private WhatsApp texts on his iPhone – for over three hours (originally for 30 minutes before confronting Appellant and then continuing the manual searching of Appellant's iPhone during the three-hour interrogation of Appellant). Appellant's Opening Br. 7.[12]   Those extended searches by multiple agents stand in stark

---

[12] As Agent Ballard testified at the pretrial suppression hearing:

Q. [defense counsel:] Agent Vargas had Mr. Inofuentes' phone in his hand during the interview?

A. Yes.

Q. And Agent Vargas is continuing to review messages and content on Mr. Inofuentes' phone during the interview, right?

A. Yes.

23

contrast to the brief manual search in *Belmonte Cardozo*. *See* 181 F.4th at 465 ("In total, only about two minutes passed between Officer Oliphant taking possession of the phones and her discovering the illicit images [which led to the defendant's arrest].").

**B. The Agents' Use of the WhatsApp Search Function in Order to Search the Massive Number of Texts Between Appellant and Individual-1 Went Beyond a "Manual" Search.**

Moreover, the agents' search of Appellant's iPhone was not a mere "manual" search because it involved the agents' use of the WhatsApp search function. "In a manual search, an officer opens the device, scrolls through it and reads what any user would see." *Belmonte Cardozo*, 181 F.4th at 471. That is not what occurred in Appellant's case. Using the WhatsApp search function permitted the agents efficiently to search the massive amount of texts – totaling 761 pages of texts between Appellant and Individual-1 between February and April 2024, *see* Gov't Exh. 201A – in a way that a person "scrolling" could not have done. The agents also searched other private matters on Appellant's iPhone, including his photographs.

---

Q. So the review of Mr. Inofuentes' phone did not stop once the interview started, right?

A. Yes. We went back to things we had seen previously to show him and ask him about.

JA0523-0524.

The agents' warrantless searches of Appellant's iPhone for over three hours and use of the WhatsApp search function (as opposed to merely "scrolling") was an unconstitutional "non-routine" intrusion into the "montage of [Appellant's] life." *Riley v. California*, 573 U.S. 373, 397 (2014).  Because the agents lacked reasonable suspicion of the types of border-related offenses justifying a warrantless border search[13] when they searched Appellant's iPhone – a point that the government does not dispute in its brief – this Court should reverse Appellant's convictions and remand for a new trial.  On remand, before conducting a new trial, the district court should hold a hearing to determine what other evidence was derived from the unconstitutional search of Appellant's iPhone at the Miami airport and suppress that derivative evidence as well as all of the evidence from the iPhone itself.

---

[13] *See United States v. Aigbekaen*, 943 F.3d 713, 721 (4th Cir. 2019) (holding that, for a non-routine search of the data on an entrant's smartphone "under the border search exception," the government must have "individualized suspicion of an offense that bears some nexus to the border search exception's purposes of protecting national security, collecting duties, blocking the entry of unwanted persons, or disrupting efforts to export or import contraband."); *accord United States v. Nkongho*, 107 F.4th 373, 382 (4th Cir. 2024).

## **CONCLUSION**

For the foregoing reasons and the reasons in Appellant's opening brief, this

Court should reverse Appellant's convictions and remand for a new trial.

Dated:  August 14, 2026                    Respectfully submitted,

                                           */s/ Brent Evan Newton*
                                           Brent Evan Newton
                                           Attorney at Law
                                           19 Treworthy Road
                                           Gaithersburg, MD 20878
                                           (202) 975-9105
                                           brentevannewton@gmail.com

                                           **Attorney for Appellant**
                                           **Michael Jaime Inofuentes**

26

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with type-volume limits because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this reply brief contains 6,053 words. This brief complies with the typeface and type-style requirements because it has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point Times New Roman font.


*/s/ Brent Evan Newton*
Brent Evan Newton

27